IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERMEC IP CORP., a Delaware
corporation,

        Plaintiff,

    v.                              C. A. No. 06-411-GMS

ALIEN TECHNOLOGY CORP., a
Delaware corporation,

        Defendant.

**OPENING BRIEF IN SUPPORT OF ALIEN TECHNOLOGY CORPORATION'S
MOTION TO DISMISS OR STAY, OR, IN THE ALTERNATIVE, TRANSFER**

|  |  |
|---|---|
| | Frederick L. Cottrell, III (#2555) |
| | cottrell@rlf.com |
| | Chad M. Shandler (#3796) |
| Of Counsel: | shandler@rlf.com |
| Gregory P. Stone | Alyssa M. Schwartz (#4351) |
| Charles D. Siegal | schwartz@rlf.com |
| Megan M. LaBelle | Richards Layton & Finger, P.A. |
| Munger, Tolles & Olson LLP | One Rodney Square |
| 355 South Grand Avenue, 35th Floor | P.O. Box 551 |
| Los Angeles, California 90071-1560 | Wilmington, Delaware 19899 |
| Telephone: (213) 683-9100 | Telephone: (302) 651-7700 |
| Facsimile: (213) 687-3702 | Facsimile: (302) 651-7701 |

Attorneys for Defendant Alien
Technology Corporation

August 18, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.    INTRODUCTION ......................................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

III.  SUMMARY OF THE ARGUMENT ............................................................................ 2

IV.   STATEMENT OF THE FACTS .................................................................................... 3

    A.    The Technology At Issue - RFID ....................................................................... 3

    B.    The Parties .......................................................................................................... 3

    C.    Litigation Background ........................................................................................ 4

        1.    The two actions ....................................................................................... 4

        2.    Intermec's motion to dismiss the North Dakota Action ......................... 4

    D.    Overlap Between The Suits ................................................................................. 5

V.    ARGUMENT ................................................................................................................. 6

    A.    The "First-Filed" Rule Requires That The
        Delaware Action Should Be Dismissed Or Stayed ............................................ 6

    B.    In the Alternative, If The Delaware Action Is Not Dismissed
        Or Stayed, It Should Be Transferred To The District Of North Dakota ............ 9

        1.    Section 1404(a) requires consideration
            of both private and public interests ......................................................... 9

        2.    The public interests weigh strongly in favor
            of transferring the Delaware Action ...................................................... 10

            a.    The enforceability of the judgment ............................................ 11

            b.    Practical considerations that could make the trial easy,
                expeditious, or inexpensive ......................................................... 11

            c.    The relative administrative difficulty in the two fora
                resulting from court congestion ................................................... 12

            d.    The local interest in deciding local controversies at home ........ 12

        3.    The private interests weigh in favor of transferring
            the Delaware Action ............................................................................. 13

            a.    The convenience of the parties as indicated by their relative
                physical and financial condition ................................................. 13

            b.    The convenience of the witnesses – but only to the
                extent that the witnesses may actually be unavailable
                for trial in one of the fora ........................................................... 14

**TABLE OF CONTENTS**
(continued)

**Page**

        c.     The location of books and records (similarly limited
to the extent that the files could not be produced
in the alternative forum)......................................................... 14

VI.    CONCLUSION........................................................................................ 15

RLF1-3049035-1

# TABLE OF AUTHORITIES

## CASES

*3Com Corp. v. D-Link Sys., Inc.*,
2003 U.S. Dist. LEXIS 7120 (D. Del. Apr. 25, 2003)............................................................10

*Affymetrix, Inc. v. Synteni, Inc.*,
28 F. Supp. 2d 192 (D. Del. 1998)........................................................................10, 13, 14

*Airport Investors Ltd. P'ship, Inc. v. Neatrour*,
2004 WL. 225060 (D. Del. Feb. 3, 2004)...................................................................7

*Bayer Bioscience N V. v. Monsanto Co.*,
2003 WL. 1565864 (D. Del. Mar. 25, 2003) ...............................................................11

*Brunswick Corp. v. Precor Inc.*,
2000 WL. 1876477 (D. Del. Dec. 12, 2000).................................................................11

*Cashedge, Inc. v. Yodlee, Inc.*,
2006 WL. 2038504 (D. Del. July 19, 2006) ...............................................................11

*Chase Manhattan Bank, U.S.A., N.A. v. Freedom Card, Inc.*,
265 F. Supp. 2d 445 (D. Del. 2003)..........................................................................8

*Corixa Corp. v. Idec Pharm. Corp.*,
2002 WL. 265094 (D. Del. Feb. 25, 2002)...................................................................8

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3d Cir. 1941).....................................................................................6

*EEOC v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988)..................................................................................6, 8

*Genentech v. Eli Lilly & Co.*,
998 F.2d 931 (Fed. Cir. 1993)...........................................................................2, 6, 8

*Genfoot, Inc. v. Payless Shoesource, Inc.*,
2003 WL. 22953183 (D. Del. Dec. 3, 2003).................................................................8

*Guidant Corp. v. St. Jude Medical, Inc.*,
2004 WL. 1925466 (D. Del. Aug. 27, 2004)................................................................7

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)............................................................................................13

iii

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995) ............................................................................................3

*Miteq, Inc. v. Comtech Telecomms. Corp.,*
2003 WL. 179991 (D. Del. Jan. 22, 2003) ...................................................................8

*Nilssen v. Osram Sylvania, Inc.,*
2001 WL. 34368395 (D. Del. May 1, 2001) ...............................................................11

*Pacesetter, Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982) ..........................................................................................7

*Sony Elecs., Inc. v. Orion IP, LLC,*
2006 WL. 680657 (D. Del. Mar. 14, 2006) ..................................................................7

*Sumito Mitsubishi Silicone Corp. v. MEMC Elec. Materials, Inc.,*
2005 U.S. Dist. LEXIS 5174 (D. Del. Mar. 30, 2005) ................................................7

*Supreme Int'l Corp. v. Anheuser-Busch, Inc.,*
972 F. Supp. 604 (S.D. Fla. 1997) ...............................................................................7

*Wilton v. Seven Falls Co.*
515 U.S. 277 (1995) ......................................................................................................2

## STATUTES

28 U.S.C. § 1400(b) .....................................................................................................10

28 U.S.C. § 1404(a) ...................................................................................................3, 9

## I.    INTRODUCTION

By its Motion, Defendant Alien Technology Corporation ("Alien") requests the Court to dismiss Plaintiff Intermec IP Corporation's ("Intermec IP") complaint or transfer it to the United States District Court for the District of North Dakota. Alien filed an action for declaratory relief against Intermec and related corporations in North Dakota almost a month before Intermec IP filed this infringement action. Both cases address the same technology and many of the same patents. Cases from the Third Circuit going back more than fifty years demonstrate that in such circumstances the first-filed case takes precedence, so that the follow-on case must be dismissed or stayed, or, if necessary, transferred to the other jurisdiction.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On June 1, 2006, Alien filed an action in the United States District Court for the District of North Dakota against Intermec IP and Intermec, Inc. ("Intermec") (the "North Dakota Action"). Declaration of Charles D. Siegal, filed simultaneously herewith ("Siegal Decl."), ¶ 2 and Ex. A thereto. The case was assigned to the Honorable Rodney S. Webb. Siegal Decl., ¶ 2. In the North Dakota Action, Alien seeks a declaration that it is not infringing ten Intermec IP patents and that those patents are invalid. On June 20, 2006, it amended its Complaint to add Intermec Technologies Corporation ("Intermec Technologies"), which is Intermec IP's parent and a subsidiary of Intermec, Inc.. Siegal Decl., ¶ 3 and Ex. B. (Collectively, Intermec IP, Intermec, Inc. and Intermec Technologies will be referred to as the "Intermec Defendants.")

On June 29, 2006, the Intermec Defendants moved to dismiss the North Dakota Action, arguing that Alien had no reasonable apprehension of suit and that the North Dakota court lacks personal jurisdiction over them. As discussed below, the parties are engaging in jurisdictional discovery and anticipate a ruling in late October or early November. Simultaneously with filing the motion to dismiss, Intermec IP filed this case (the "Delaware Action") against Alien, alleging

that Alien infringed ten Intermec IP patents – six of those in suit in the North Dakota Action and

four others. (D. 1.) All of the patents in both actions relate to the manufacturing or technology

used in Radio Frequency IDentification ("RFID") devices.

Alien now moves this Court to dismiss or stay the Delaware Action in favor of the North

Dakota Action, in which all of the issues involved in this action have either already been raised

or can certainly be adjudicated, or, in the alternative, to transfer the Delaware Action to the

District of North Dakota.

### III.    SUMMARY OF THE ARGUMENT

A.    The North Dakota Action was filed first, has all of the parties in the Delaware
Action and puts in suit the same patents or patents that involve the same
technology.

B.    Under the "first-filed" rule, the Delaware Action should be dismissed or stayed.
*Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir.1993), *overruled in part
on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).

C.    Other than being the state of incorporation of the parties, this action has no
connection to Delaware.  Neither Alien nor Intermec IP is headquartered here or
conducts business here.  None of the inventors or other potential witnesses resides
in Delaware.  Alien has a plant and conducts significant operations in North
Dakota; the Intermec IP patents are used in many products Intermec Technologies
sells in North Dakota (and elsewhere).  The district court in North Dakota will
consider six of the patents-in-suit here and Intermec IP can counterclaim on the
other four, if it so chooses.  It would be a waste of judicial resources for two
courts to deal with the complex technology of the patents-in-suit.

D.    Accordingly, and in the alternative, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," transfer to the United States District Court for the District of North Dakota is appropriate *Jumara v. State Farm Ins. Co*, 55 F.3d 873, 879-80 (3d Cir. 1995).

## IV.    STATEMENT OF THE FACTS

### A.    The Technology At Issue - RFID

Both Alien and the Intermec Defendants manufacture and sell RFID devices. The dispute in both the North Dakota and Delaware actions focuses on patents relating to RFIDs. RFID systems typically consist of at least one "tag," which can transmit information, and a "reader," which can receive a signal from the tag that contains information. Declaration of Glenn W. Gengel, filed simultaneously herewith ("Gengel Decl."), ¶ 2. The tag is placed on an object, such as a piece of merchandise. The information can identify the object to which the tag is affixed. RFID devices may be used for inventory control, to identify animals, for credit cards or drivers' licenses, or a myriad of other uses. Gengel Decl. ¶ 2.

### B.    The Parties

Alien is incorporated in Delaware, but has its principal office in Morgan Hill, California. Gengel Decl., ¶ 3. It has a major production facility in Fargo, North Dakota, where tag products likely to be challenged by Intermec IP are manufactured. Gengel Decl., ¶ 4.

The plaintiff in this case, Intermec IP, is a Delaware corporation, whose only business appears to be to own and assert patents. However, Intermec IP does not allege that it conducts any business in Delaware. Intermec Technologies is the corporate parent of Intermec IP. Intermec Technologies manufactures the Intermec products. Intermec, Inc.'s most recent annual report on Form 10-K stated that 2,467 of Intermec, Inc.'s 2,497 employees work for Intermec

- 3 -

Technologies.  Siegal Decl., Ex. C at 11.  The latter's principal place of business and state of incorporation is Washington.

### C.    Litigation Background

#### 1.    The two actions

In May 2006, the Intermec Defendants threatened to sue Alien for patent infringement. Based on this and other facts, Alien feared a lawsuit by the Intermec Defendants.  Siegal Decl., Ex. B at ¶¶ 20, 26, 32, 38, 44, 50, 56, 62, 68 and 74.  Alien therefore filed the North Dakota Action, seeking declarations of non-infringement and invalidity of ten Intermec IP patents that it anticipated the Intermec Defendants would claim were infringed.  The patents-in-suit in the North Dakota Action are patent Nos. 5,030,807; 5,828,693; 5,912,632; 6,812,841; 5,777,561; 5,995,019; 6,288,629; 5,850,181; 6,400,274; and 6,429,775.

Alien filed its action in the federal court in Fargo, because Alien has a 45,558  square foot facility in Fargo, North Dakota, which serves as Alien's manufacturing facility for its tag products.  Tag products manufactured at that facility are likely to be challenged by Intermec IP. Gengel Decl., ¶ 4.  In addition, it sued in North Dakota because the Intermec Defendants do business there.

A month later, Intermec IP filed the Delaware Action, which alleges that Alien infringes ten of Intermec IP's patents.  Those patents include six of the ten alleged by Alien in the North Dakota Action ('561, '181, '632, '019, '274 and '841), plus patent Nos. 5,528,222; 6,286,762; 5,828,318; and 6,812,852.

#### 2.    Intermec's motion to dismiss the North Dakota Action

Simultaneously with filing the Delaware action, Intermec filed a motion to dismiss in the North Dakota Action.  Siegal Decl. ¶ 5 and Ex. D.  The motion, which is presently pending, argues that the North Dakota court lacks both subject matter and personal jurisdiction over the

- 4 -

Intermec Defendants. Subject matter jurisdiction is supposedly absent because Alien lacked a "reasonable apprehension" of an infringement suit against it. Siegal Decl. Ex. D at 4-11. The Intermec Defendants dispute personal jurisdiction, arguing they lack minimum contacts with North Dakota. Siegal Decl. Ex. D at 11-15. Without going into detail, Alien believes the Intermec Defendants' arguments lack merit. First, Intermec's statement to a meeting of investors that it was preparing lawsuits against various entities, explicitly naming Alien, gave it a reasonable apprehension of suit. Second, the Intermec Defendants conduct substantial business in North Dakota – certainly enough to establish constitutional minimum contacts.

The parties have agreed to some limited discovery in the North Dakota Action. Siegal Decl. ¶ 7. At this time, Alien anticipates that, if discovery disputes do not impede the schedule, the motion likely will be heard in late October or early November.

### D.    Overlap Between The Suits

Each of the patents-in-suit in the North Dakota and Delaware Actions involves technology that is used in or to manufacture RFID devices. Gengel Decl. ¶ 2. Thirteen of the 14 patents-at-issue in those two cases (all, except the '222 Patent) relate to the reader-tag air interface protocol. Declaration of John Stephen Smith, filed simultaneously herewith ("Smith Decl."), ¶ 2. That is to say, to understand the patents-in-suit in the two cases (other than the '222 patent), one will need to know the operation and communication (the interoperability) between tags and readers properly to understand the technology, the patents' claims, and Alien's products. That would include, for example, understand the (i) reader commands for selection and identification, (ii) tag selection states and functions, and (iii) the powering of the tag by the reader and loss of that power during "frequency hopping." Smith Decl. ¶ 3. Finally, the '222 patent describes the manufacture and structure of a flexible RFID tag. Gengel Decl. ¶ 5.

- 5 -

The overlap between the suits reaches to the individual patents-in-suit. Six of the patents, of course, are identified in both actions.[1] Intermec raises only four additional patents in the Delaware Action.[2] Three of those patents[3] relate to selecting a subset of tags from a larger group, which is in the same general technology as patents '561 and '019, relating to selection of tags based on physical attributes, which appear in both cases. Smith Decl., ¶ 4. The last Delaware-only patent, '222, is admittedly slightly different, in that it relates to manufacturing, but, it involves manufacturing "flexible" RFID tags. Gengel Decl., ¶ 5.

On June 29, 2006, Intermec tried to remove the four North Dakota-only patents[4] from the dispute, by writing a letter to Alien stating that it has no "present intent" to sue on them. Siegal Decl. ¶ 6. Such noncommittal language is insufficient either to eliminate Alien's reasonable apprehension of suit or to persuade Alien not to pursue its declaratory relief action with respect to those patents.

## V.     ARGUMENT

### A.     The "First-Filed" Rule Requires That The Delaware Action Should Be Dismissed Or Stayed.

Since *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941), the Third Circuit has followed the rule that if two cases between the same parties address similar subject matter, the court with the "first-filed" case must decide it and order that the second-filed case be enjoined. "[I]n all cases of Federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Id.* at 929-930). As the Third Circuit put it 47 years after *Crosley*, the first-filed rule "encourages sound judicial administration and promotes comity among Federal courts of equal rank." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). "There

---

[1] Numbers '561, '181, '632, '019, '274 and '841.

[2] Numbers '222, '318, '672 and '852.

[3] Numbers '318, '672 and '852.

[4] Numbers '807, '693, '629 and '775.

RLF1-3049035-1

is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The Federal Circuit, which now has jurisdiction over appeals in patent cases, follows the same rule. *Genentech*, 998 F.2d at 937-38 (reversing dismissal of first-filed case).

In *Sony Elecs., Inc. v. Orion IP, LLC*, 2006 WL 680657, at *1 (D. Del. Mar. 14, 2006)[5], this Court severed the only plaintiff in a declaratory judgment suit that had been named earlier in a patent infringement suit in Texas. It then dismissed the case against that defendant, in view of the prior suit. In *Pacesetter*, the Ninth Circuit affirmed the dismissal of a case against a patentee, where the patentee had sued the plaintiff in another district. *See also Supreme Int'l Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 607-08 (S.D. Fla. 1997) (case stayed under first filed rule).

This Court has followed the first-filed rule in a procession of other cases. *See Sumito Mitsubishi Silicone Corp. v. MEMC Elec. Materials, Inc.* 2005 U.S. Dist. LEXIS 5174, at *9-*11 (D. Del. Mar. 30, 2005) (court transferred action to United States District Court for the Northern District of California, where another action that involved a "similar" patent was first filed); *Guidant Corp. v. St. Jude Medical, Inc.*, 2004 WL 1925466, at *3 (D. Del. Aug. 27, 2004) (where first-filed suit was in Delaware, and the first and second-filed suits "involve essentially the same parties and patents and involved the same legal theories," court refused to transfer case pursuant to 28 U.S.C. § 1404(a)); *Airport Investors Ltd. P'ship, Inc. v. Neatrour*, 2004 WL 225060, at *2 (D. Del. Feb. 3, 2004) ("Unfortunately for Snyder, his choice to file an action in the Middle District of Pennsylvania against the same parties over the same contract before filing

---

[5] All unreported cases are attached alphabetically as Exhibit A hereto.

the present action has bound him to that venue in the present dispute"); *Chase Manhattan Bank, U.S.A., N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445 (D. Del. 2003) (court refused to transfer case first filed in District of Delaware); *Genfoot, Inc. v. Payless Shoesource, Inc.*, 2003 WL 22953183, at *1 (D. Del. Dec. 3, 2003) (court transferred infringement action to District of Kansas, where prior declaratory relief action was pending); *Miteq, Inc. v. Comtech Telecomms Corp.*, 2003 WL 179991, at *1 (D. Del. Jan. 22, 2003) (court ordered transfer to District of Arizona, where first filed case was pending)

Nor does it matter that the first-filed action is for declaratory relief and the later action is for infringement.

> Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed.Cir 1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id.* at 937. This doctrine applies equally well where the first-filed action is one for a declaratory judgment. *See id.* at 938 (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

*Corixa Corp. v. Idec Pharm. Corp.*, 2002 WL 265094, at *1 (D. Del. Feb. 25, 2002).

The foregoing cases demonstrate that absent "exceptional circumstances," none of which is present here, a court will dismiss, stay or transfer a second-filed action in deference to a first-filed action that involves the same parties and related claims, as is the case here. *EEOC*, 850 F.2d at 979. As demonstrated above, the claims in the North Dakota and Delaware Actions are "related" under any standard. Indeed, sixty percent assert the same patents. Each of the two cases will require an understanding of a complex and multifaceted technology and of products that utilize that technology. Adhering to the first-filed doctrine will avoid having two courts

- 8 -

learn the same technology and will "achieve resolution in a single lawsuit of all disputes arising

from common matters." *Genentech*, 998 F.2d at 938 (quoting *So. Constr. Co. v. Pickard*, 371

U.S. 57, 60 (1962)). Here, the two cases are "disputes arising from the common matters" and

Intermec IP may bring its claims as counterclaims in North Dakota. Accordingly, Alien

respectfully requests the Court to dismiss or stay this action.

**B.    In the Alternative, If The Delaware Action Is Not Dismissed Or Stayed, It
Should Be Transferred To The District Of North Dakota.**

Section 1404(a) of 28 U.S.C. provides:

> For the convenience of parties and witnesses, in the interest of
> justice, a district court may transfer any civil action to any other
> district or division where it might have been brought.

If the Delaware Action is not dismissed or stayed, the interest of justice, as well as the

convenience of parties and witnesses, requires transfer to the District of North Dakota. Transfer

is appropriate even if there is a motion to dismiss pending in the transferee court. In *Genfoot*,

this Court transferred an action under Section 1404(a), even though there was motion to dismiss

for lack of personal jurisdiction pending in the transferee court.

**1.    Section 1404(a) requires consideration of both private and public
interests.**

In *Jumara*, the Third Circuit pointed out that courts consider a spectrum of private and

public interests in determining whether to transfer a case pursuant to Section 1404(a). 55 F.3d

879-80. The private interests identified in *Jumara* and decisions that rest on it are: (1) the

plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference;

(3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their

relative physical and financial condition; (5) the convenience of the witnesses-but only to the

extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the

- 9 -

location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Sony Elecs., Inc.*, 2006 WL 680657, at *2.

However, courts in this district have followed *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197-202 (D. Del. 1998), noting that the first three private factors result in double-counting, if, as the statutory language specifies, the Court must perform the convenience balance for parties and witnesses. Accordingly, those three factors are not explicitly considered.

The public interests are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Sony Elecs.*, at *2.

As discussed below, an analysis of this case under the standards articulated by the Third Circuit and by many decisions of this Court demonstrates that the balance strongly favors transfer to North Dakota.[6]

### 2. The public interests weigh strongly in favor of transferring the Delaware Action.

In this case, the public interest factors have somewhat more significance than the private interest factors and weigh strongly in favor of Alien. Of the public interests, several are irrelevant, such as the familiarity with local law and the familiarity of the trial judge with the applicable state law. All relevant factors point directly toward North Dakota.

---

[6] North Dakota is a district in which Intermec IP could have brought this action. Alien maintains a major production facility there. 28 U.S.C. § 1400(b); *3Com Corp. v. D-Link Sys., Inc.*, 2003 U.S. Dist. LEXIS 7120, at *4 (D. Del. Apr. 25, 2003).

- 10 -

### a.    The enforceability of the judgment

Allowing or permitting two cases addressing the same patents to proceed virtually simultaneously obviously increases the possibility of conflicting judgments. Such a conflict will impede the enforceability of either judgment. *See Nilssen v. Osram Sylvania, Inc.*, 2001 WL 34368395, at *4 n. 10 (D. Del. May 1, 2001) ("If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.") Here, the Court can obviate the possibility of conflicting judgments by transferring this case to North Dakota.

### b.    Practical considerations that could make the trial easy, expeditious, or inexpensive

Courts transfer matters to other jurisdictions precisely because those cases have "the same parties, and the same, or related, patent or patents." *Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, at *2 (D. Del. Mar. 25, 2003). *See also Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504, at *2 (D. Del. July 19, 2006). That is the case here.

"Where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'" *Brunswick Corp. v. Precor Inc.*, 2000 WL 1876477, at *3 (D. Del. Dec. 12, 2000) (quoting *Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518 (D. N.J. 2000)) All practical considerations militate in favor of one trial, before one judge. The fourteen patents-in-suit all deal with aspects of RFID technology. Those patents range from one dealing with manufacturing to several dealing with tag selection to others dealing with the tag-reader interface. Each of the patents is complex; together, they will

take substantial time for judge or jury to understand. It would be a colossal waste of judicial resources to ask two courts to climb that learning curve.

**c.    The relative administrative difficulty in the two fora resulting from court congestion**

One of the obvious reasons in favor transferring this case to North Dakota is that there is a substantially lighter docket in that court. As of September 30, 2005, the number of pending cases per judge in Delaware was 463; it was 180 in North Dakota. U.S. District Court - Judicial Caseload Profile, http://www.uscourts.gov/cgi-bin/cmsd2005.pl (last visited August 14, 2006; relevant pages attached as Exhibits G and H to the Siegal Declaration). As of September 30, 2005, the median times to trial and civil disposition in Delaware were 10.9 and 23.4 months, respectively. *Id.* In North Dakota, they were 7.3 months and an unstated time. As of September 30, 2005, the percentage of cases over 3 years old in Delaware and North Dakota was 9.1 and 2.6, respectively. *Id.*

In sum, it seems quite possible that the time to resolve this matter will be significantly less in North Dakota than in Delaware, based purely on the fact that North Dakota has fewer cases.

**d.    The local interest in deciding local controversies at home**

Otherwise the patents-in-suit have national interest, Delaware has no unique interest in this controversy. North Dakota does. Nearly 60 years ago, Justice Jackson wrote in a *forum non conveniens* case:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.

- 12 -

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

Justice Jackson's words precisely describe this situation. There is no valid reason to bring yet another case to this Court and, assuming the case goes to trial, force the citizens of Delaware to sit jury duty on a case that does not affect the State of Delaware. On the other hand, people who live in Fargo, where Alien's primary manufacturing facility is located, have an undeniable interest in the outcome of the case.

> **3.    The private interests weigh in favor of transferring the Delaware Action.**
>
> **a.    The convenience of the parties as indicated by their relative physical and financial condition**

Delaware is inconvenient for <u>both</u> parties. Neither party has any presence in Delaware -- no office, no personnel, no documents. Intermec IP is located in Everett, Washington. Its business appears to consist solely of owning and asserting patents. Thus, as a physical matter, location would seem to be a matter of complete indifference to Intermec IP. Alien has its headquarters in Morgan Hill, California, and has a large manufacturing facility in Fargo, North Dakota. Thus, North Dakota is more convenient for Alien and no less convenient for Intermec IP than Delaware.

It is impossible to know Intermec IP's economic condition at this stage, since its financials are consolidated with its parents, Intermec and Intermec Technologies. The former reported 2005 net earnings of $61 million and total assets of $904 million. Intermec employs approximately 2500 people full-time. Intermec is sufficiently substantial that litigating in North Dakota will not pose an undue burden. *See Affymetrix*, 28 F. Supp. 2d at 208 (noting that "parties are multi-million dollar corporations that can afford to litigate in a distant forum"). In contrast, as of April 1, 2006, Alien had negative net earnings and total assets of about $84 million. Gengel Decl., ¶ 6. It employs approximately 240 people. Gengel Decl., ¶ 6.

- 13 -

This is not a case of two relatively equal-sized, established businesses litigating against each other, so that this factor is neutralized. While both parties will be forced to transport witnesses and counsel to a distant destination, litigating this case in Delaware would clearly burden Alien more than Intermec IP. Permitting Intermec IP to pursue a second case in Delaware concurrently with the case in North Dakota would impose an unjustified burden on Alien. As such, the Delaware action should be transferred to North Dakota.

      **b.      The convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**

The location of witnesses weighs against Delaware. Although Alien cannot speculate as to who Intermec IP's witnesses will be, it is likely that none of the witnesses for either of the parties resides in Delaware. As set forth in the Siegal Declaration, Alien is informed and believes that none of the inventors of the patents-in-suit in the North Dakota Action or the Delaware Action resides in Delaware. Even if they say they would appear, as this Court has noted, "despite [such] assurances, the Court cannot guarantee that they will appear for trial." *Affymetrix*, 28 F. Supp. 2d at 208.

      **c.      The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).**

Alien does not contend that it could not produce books and records in Delaware, if necessary. However, it would be an undue expense to require it to do so, if it must also produce them in North Dakota.

RLF1-3049035-1

## VI.    CONCLUSION

For each of the foregoing reasons, Defendant Alien Technology Corporation respectfully requests this Court to dismiss or stay this case. Alternatively, it requests the Court to transfer this case to the United States District Court for the District of North Dakota.

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Of Counsel:
Gregory P. Stone
Charles D. Siegal
Megan M. La Belle
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendant
Alien Technology Corporation

Dated: August 18, 2006

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2006, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and

which has also been served as noted:

### BY HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19801


I hereby certify that on August 18, 2006, I have caused the foregoing to be sent by

Federal Express to the following non-registered participants:


Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

Alyssa M. Schwartz (#4351)
schwartz@rlf.com

# EXHIBIT A

1 of 1 DOCUMENT

**3COM CORPORATION, Plaintiff v. D-LINK SYSTEMS, INC., Defendant.**

**C.A. No. 03-014 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 7120*

**April 25, 2003, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer case to United States District Court for Northern District of California granted.

**COUNSEL:** For 3COM Corporation, PLAINTIFF: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

For D-Link Systems Inc, DEFENDANT: John G Day, Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For D-Link Systems Inc, COUNTER-CLAIMANT: John G Day, Steven J Balick, Ashby & Geddes, Wilmington, DE USA.

For 3COM Corporation, COUNTER-DEFENDANT: John W Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On January 7, 2003, the plaintiff, 3Com Corporation ("3Com") filed the instant action alleging infringement of three patents relating to network interface adapters. The defendant, D-Link Systems, Inc. ("D-Link"), moves to transfer this case to the United States District Court for the Northern District of California pursuant to *28 U.S.C. § 1404(a)* (D.I. 11). For the following reasons, the court will grant the defendant's motion.

**II. DISCUSSION**

D-Link moves to [*2] transfer this action to the District Court for the Northern District of California pursuant to *28 U.S.C. § 1404(a)*. Section 1404(a) provides that "for convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." *28 U.S.C. § 1404(a)*. It is the movant's burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)* (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id. at 875, 879*. These private interests include the plaintiff's choice of forum; the [*3] defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. n1 *Id. at 879*. Among the relevant public interests are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id. at 879-80* (citations omitted).

> N1 The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F. Supp. 2d 192 (D.*

2003 U.S. Dist. LEXIS 7120, *

*Del. 1998)*.

Upon consideration of these factors, the court finds that D-Link has met its burden of demonstrating that transfer [*4] is appropriate. First, it is clear that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those at issue in the present action. *28 U.S.C. § § 1331and 1338* Further, venue is proper in the Northern District of California because the defendant is a California corporation with its sole place of business in that state. *28 U.S.C. § 1400(b)* ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides …..").

Having determined that the case could be properly heard in the Northern District of California, the court now considers whether it would more conveniently proceed in that forum and whether the interest of justice supports a transfer to that district. Again, the court finds that these criteria are met. First, the court notes that although 3Com is a Delaware corporation, its principal place of business is in Santa Clara, California. D-Link is a California corporation with its sole place of business in Irvine, California. Although some of D-Link's products, including [*5] the accused products, are sold in Delaware, the connection to this forum ends there. Neither 3Com nor D-link maintains or owns any facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D-Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, [*6] Realtek Semiconductor Corp. ("Realtek")

and Via Technologies, Inc. ("Via"). Realtek and Via are Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

### III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these [*7] parties, while justice, convenience, cost, and expediency favor a forum in California. The court recognizes that the Northern District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. *Jumara, 55 F.3d at 879* (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:

> 1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I. 11) is GRANTED.

Dated: April 25, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 225060 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

AIRPORT INVESTORS LIMITED
PARTNERSHIP, INC. and Richard Snyder,
General Partner, Plaintiff

v.

Douglas J. NEATROUR Dalila E. Neatrour and
Latino American Media Organization of
Pennsylvania Defendants.

**No. Civ.A. 03-831 GMS.**

Feb. 3, 2004.

Richard Snyder, pro se, Rehoboth, DE, for Plaintiff.
Bruce C. Herron, Akin & Herron, P.A.,
Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

## I. INTRODUCTION

*1 On August 25, 2003, the plaintiffs, Richard Snyder ("Snyder") and Airport Investors Limited Partnership, Inc. (collectively, "Airport"), filed the above-captioned contract action against the defendants Douglas Neatrour, Dalila Neatrour and Latino American Media Organization of Pennsylvania ("LAMO") (collectively, the " Neatrours"). Attempting to invoke the court's diversity jurisdiction, Airport's complaint seeks specific performance of an alleged agreement between the parties. On December 29, 2003, Airport filed an amended complaint which included an alternative prayer for breach of contract and a damages remedy in the amount of $750,000.00.

Presently before the court is the defendants' motion to dismiss this action for lack of subject matter jurisdiction, or, in the alternative, to transfer this

action to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404. For the following reasons, the court will grant the Neatrours' motion to transfer.

## II. BACKGROUND

This case revolves around an alleged contract between Airport and the Neatrours regarding ownership and control of a Pennsylvania radio station. Airport Investors Limited Partnership, Inc. is a Maryland corporation, and its general partner, Snyder, claims to have been a Delaware resident at the time of the filing of the present action. Douglas and Dalila Neatrour are residents of Lebanon, Pennsylvania, and LAMO is a Pennsylvania corporation.

On August 7, 2003, three weeks before the filing of the present action, Airport filed a complaint in the United States District Court for the Middle District of Pennsylvania against the same three defendants, alleging a breach of the same contract. In that complaint, Snyder claims to be a citizen of Maryland.

The Neatrours contend that the court should dismiss the instant action for lack of subject matter jurisdiction because Airport's initial complaint prayed only for specific performance of the alleged contract and not for any damages, let alone the minimum $75,000.00 required for the court to exercise its diversity jurisdiction. Alternatively, the Neatrours move the court to transfer this action to the Middle District of Pennsylvania where Airport first initiated a parallel action to this case. Because Airport subsequently filed an amended complaint as a matter of right,[FN1] the court finds the Neatrours' motion to dismiss the initial complaint moot. With regard to the Neatrours' motion to transfer, however, the court is persuaded that the convenience of the parties and witnesses and interests of justice weigh heavily in favor of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 225060 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

transferring the present action to the Middle District of Pennsylvania.

> FN1. Federal Rule of Civil Procedure 15(a) permits a party to file an amended complaint once as a matter of course at any time before a responsive pleading is served. Fed.R.Civ.P. 15(a). Because the Neatrours' motion to dismiss is not a responsive pleading within the meaning of Rule 15(a), *See, e.g., Kelly v. Del River Joint Commission,* 187 F.2d 93, 95 (3d Cir.1951), Airport's amended complaint now governs this action.

### III. DISCUSSION

Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movants' burden to establish the need for transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

**\*2** When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including "practical considerations that could make the trial easy, expeditious, or inexpensive ... and the local interest in deciding local controversies at home." *Id.* at 875, 879-80.

Weighing all the factors involved, it is clear that the present case would be most appropriately litigated in the Middle District of Pennsylvania. In this action, a Maryland corporation seeks specific performance of its contract with a Pennsylvania corporation regarding a Pennsylvania radio station. The litigation has virtually no connection to Delaware. No acts relating to the present dispute

took place in Delaware, nor do the parties appear to maintain any facilities or documents in Delaware. In addition, both the present case and the case in the Middle District of Pennsylvania are in the relatively early stages of litigation. Finally, any disparity in court congestion, to the extent there is any, is not so great as to weigh against transfer due to the action currently pending in the Middle District of Pennsylvania.

Snyder's only credible argument in favor of this court retaining jurisdiction over this action is that he is a resident of Delaware.[FN2] Had Snyder not filed an action against the same three defendants regarding the same contract just three weeks earlier in the Middle District of Pennsylvania, the court might have been persuaded by his argument. Nonetheless, because he chose to file a separate action in the Middle District of Pennsylvania, Snyder inevitably will have to travel to that forum to pursue his claims anyway.

> FN2. Interestingly, three weeks before the filing of this action, Snyder claimed to be a resident of Maryland in the complaint he filed in the Middle District of Pennsylvania.

Moreover, although not an issue raised or briefed by either of the parties, the court notes that the "first-filed" rule of this Circuit likely dictates transfer of this case to the Middle District of Pennsylvania. Specifically, "in cases of federal concurrent jurisdiction involving the same parties and issues, the court of first-filing must proceed to decide the matter." *Zelenkofske Axlerod Consulting, L.L.C. v. Stevenson,* No. 99-CV-3508, 1999 WL 592399, at \*2 (E.D.Pa. Aug. 5, 1999) (citing *EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988)). Unfortunately for Snyder, his choice to file an action in the Middle District of Pennsylvania against the same parties over the same contract before filing the present action has bound him to that venue in the present dispute.

### IV. CONCLUSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 225060 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Upon consideration of the Section 1404 criteria and all other relevant factors, the court concludes that the balance of justice and convenience tips heavily in favor of transfer.

## ORDER

**\*3** For the reasons set forth in the court's memorandum issued contemporaneously herewith, IT IS HEREBY ORDERED that:
1. The Defendants' Motion to Dismiss (D.I.3, paras.1-2) is MOOT;
2. The Defendants' Motion to Transfer (D.I.3, paras.3-5) is GRANTED; and
3. The above-captioned case is TRANSFERRED to the United States District Court for the Middle District of Pennsylvania.

D.Del.,2004.
Airport Investors Ltd. Partnership, Inc. v. Neatrour
Not Reported in F.Supp.2d, 2004 WL 225060 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00831 (Docket) (Aug. 25, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
BAYER BIOSCIENCE N.V., Plaintiff,
v.
MONSANTO COMPANY, Defendant.
**No. C.A. 03-023 GMS.**

March 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

### I. INTRODUCTION

*1 On January 10, 2003, the plaintiff, Bayer
Bioscience, N.V. ("Bayer"), filed the
above-captioned action alleging that Monsanto
Company ("Monsanto") is engaging in activity that
infringes Bayer's U.S. Patent No. 5,659,123 ("the
'123 patent").

Presently before the court is Monsanto's motion to
transfer the case to the United States District Court
for the Eastern District of Missouri pursuant to 28
U.S.C. § 1404(a). For the following reasons, the
court will grant this motion.

### II. BACKGROUND

Bayer is a foreign corporation headquartered in
Ghent, Belgium. Monsanto is a Delaware
corporation, with its headquarters in St. Louis,
Missouri.

The patent at issue involves a corn product that has
been genetically modified to express a particular "Bt
" gene that makes the corn resistant to a type of
Coleopteran insect known as the corn rootworm.
For the past two years, Monsanto and Bayer have

been engaged in litigation in the Eastern District of
Missouri regarding four other patents assigned to
Bayer. Those four patents all generally relate to
crops genetically engineered with a "Bt gene,"
purportedly rendering the crops toxic to a class of
insects known as Lepidopteran insects.

On December 27, 2002, the Missouri District Court
issued a summary judgment order finding that all
four of the patents-in-suit in that case were
unenforceable due to inequitable conduct. On
January 10, 2003, Bayer filed the present action.
Also on January 10, 2003, Monsanto filed a
declaratory judgment action for noninfringement in
the Missouri District Court.

### III. DISCUSSION

#### A. The "First-Filed" Rule

Where two patent lawsuits involving the same
claims are filed in different jurisdictions, the
Federal Circuit requires that the first-filed action be
given preference absent special circumstances. *See
Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937
(Fed.Cir.1993). The first-filed doctrine also serves
to prevent a multiplicity of actions and to achieve
resolution in a single lawsuit of all disputes arising
from common matters. *See id.* at 937.

Applying the first-filed rule, Bayer now argues that
it would be improper for the court to transfer this
first-filed action to the Eastern District of Missouri.
While the court does not dispute that this action is
first-filed, albeit only by several hours, for the
following reasons, the court concludes that the
1404(a) factors nevertheless weigh in favor of
litigating this dispute in Missouri. *See id.* at 937-38
(noting that "the trial court's discretion tempers the
preference for the first-filed suit, when such
preference should yield to the forum in which all
interests are best served.")

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

### B. Section 1404(a)

Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). Bayer suggests that the Eastern District of Missouri may not have personal jurisdiction over it.[FN1] Importantly, however, Bayer fails to suggest that it could not have originally brought this action in Missouri, rather than in Delaware. Thus, because Bayer could have brought this action in the proposed transferee district, the court will move on with the inquiry as directed by the Third Circuit. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995).

> FN1. As it is not the court's province to determine the question of another court's personal jurisdiction, the court expresses no opinion on this issue.

**\*2** When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.' Id. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. Id. at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and records, to the extent that they could not be produced in the alternative forum.[FN2] Id. at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." Id. at 879-80 (citations omitted).

> FN2. The first three of these private

interest collapse into other portions of the Jumara analysis. The court, therefore, will consider them in the context of the entire inquiry only. See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that Monsanto has met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the defendant is a Delaware entity, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties; (2) no party maintains operations in Delaware; (3) the parties are large and international organizations with substantial assets; (4) because the parties are litigating apparently related issues in Missouri, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the "mirror image" action currently pending in the Eastern District of Missouri. Thus, given the on-going relationship that the Eastern District of Missouri has with the same parties, and the same, or related, patent or patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of transfer.

### IV. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. Bayer's Motion for Leave to File a Sur-Reply (D.I.10) is GRANTED as unopposed.
2. Monsanto's Motion to Transfer this case (D.I.5) is GRANTED.
3. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Eastern District of Missouri.

D.Del.,2003.
Bayer Bioscience N.V. v. Monsanto Co.
Not Reported in F.Supp.2d, 2003 WL 1565864

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 1565864 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


(D.Del.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 24197925 (Trial Pleading) Complaint
for Patent Infringement (Jan. 10, 2003) Original
Image of this Document (PDF)
• 2003 WL 24207834 (Trial Pleading) Complaint
for Patent Infringement (Jan. 10, 2003) Original
Image of this Document (PDF)
• 1:03CV00023 (Docket) (Jan. 10, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                      Page 1

Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
   United States District Court, D. Delaware.
   BRUNSWICK CORPORATION Plaintiff,
             v.
   PRECOR INCORPORATED , Defendant.
       **No. 00-691-GMS.**

Dec. 12, 2000.

Robert W. Whetzel, Richards Layton & Finger, of
Wilmington, DE, Stephen C. Neal, Linda F. Callison
, Jonathan H. Takei and Ricardo Rodriguez of
Cooley Godward LLP, Palo Alto, CA, for Plaintiff,
of counsel.
Samuel David Brickley, II, Connolly, Bove, Lodge
& Hutz of Wilmington, DE, James R. Uhlir,
Stephen P. Fricke, Steven V. Gibbons, F. Ross
Boundy of Christensen O'ConnorJohnson Kindness,
Seattle, WA, for Defendants, of counsel.

*MEMORANDUM AND ORDER*

SLEET, J.
**\*1** On August 1, 2000, the plaintiff, Brunswick
Corporation, and its division Life Fitness ("Life
Fitness") brought this patent infringement action
against Precor Incorporated ("Precor"). Life Fitness
alleges that Precor is infringing its U.S. Patent No.
6,095,951 (" '951 patent") relating to exercise
treadmills. Presently before this court is Precor's
motion to transfer this case to the United States
District Court for the Western District of
Washington, pursuant to 28 U.S.C. § 1404(a).
Because the court finds that a transfer would
convenience the parties and the witnesses while
serving the interests of justice, Precor's motion to
transfer is granted.

I. BACKGROUND

A. The parties

Life Fitness and Precor both design, manufacture,
and sell exercise equipment and both directly
compete with one another in the exercise fitness
market. Although both parties are incorporated in
Delaware, neither party maintains a physical
presence (e.g., offices or facilities) in this state. Life
Fitness has its principal place of business in
Franklin Park, Illinois and Precor has its principal
place of business in Bothell, Washington.

B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each
other, nor to patent litigation." D.I. 7, at 2. In 1994,
Precor filed a patent infringement suit against Life
Fitness in the United States District Court for the
Western District of Washington ("1994 litigation").
At issue in the 1994 litigation were U.S. Patent Nos.
5,599,259, 5,752,897 and certain Claims of U.S.
Patent No. 5,382,207 (respectively the " '259, '897,
and '207 patents"). The '207 patent is the parent of
the '951 patent currently at issue in the case before
the court.

In the 1994 litigation, Claims 1-36 of '207 patent
were dismissed on summary judgment in February
1996 leaving only claims 37, 38, and 39 at issue. In
early September 1999, Life Fitness voluntarily
stipulated to the dismissal of the claims for
infringement of the '259 and '897 patents as well as
Claims 38-39 of the '207 patent. As a result of this
stipulation, these claims were dismissed with
prejudice in an order dated September 23, 1999.
*See Precor Inc. v. Life Fitness,* No. C94-1586C
(W.D.Wash. Sept. 23, 1999) (stipulation and order
of dismissal). Thus, the only infringement claim
remaining for trial related to Claim 37 of the '207
patent. In October 1999, Life Fitness lost at trial as
to this one patent claim. The judgment from the
1994 litigation is currently on appeal to the Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 2

Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Circuit.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), the court may transfer this action to "any other district where it might have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." 28 U.S.C. § 1404(a) (1993). The parties here agree that Life Fitness could have brought this action in the Western District of Washington. *See* 28 U.S.C S 1391(b)(1) (1993). Moreover, this lawsuit could have initially been filed in Washington because it is a patent infringement matter. *See* 28 U.S.C. § 1400(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in *Jumara v. State Farm Ins Co.*, 55 F.3d 873, 879 (3d Cir.1995).

**\*2** In *Jumara*, the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. 55 F.3d at 879-80; *see also Affymetrix, Inc v. Synteni, Inc.*, 28 F.Supp.2d 192, 196-97 (D.Del.1998). These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara*, 55 F.3d at 879-80 . FN1 The court should apply these factors to determine, "on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id* at 883 (citing *Stewart Org., Inc v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)). The burden on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara*, at 879.

> FN1. The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses-but only to the extent that the

witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara*, 55 F.3d at 879-880. The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

### A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of forum is a " paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970); *see also Jumara v. State Farm Ins Co.*, 55 F.3d 873, 879-80 (3d Cir.1995). In this case, however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc v. Wallace*, 56 F.Supp.2d 542, 545

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3

Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

(E.D.Pa.1999). "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen ... a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

### B. Public Factors and the Interest of Justice

**\*3** Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make trial " easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington.[FN2] Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.,* 102 F.Supp.2d 518, (D.N.J.2000) (citations omitted). Thus, the court finds that transferring this case would promote the interests of justice.

> FN2. The parties disagree as to whether this is a directly related matter.

### III. CONCLUSION.

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

D.Del.,2000.
Brunswick Corp. v. Precor Inc.
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00691 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy

Slip Copy, 2006 WL 2038504 (D.Del.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
CASHEDGE, INC., Plaintiff,
v.
YODLEE, INC., Defendant.
No. Civ.A.06-170 JJF.

July 19, 2006.

Arthur G. Connolly, III, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, Drew M. Wintringham, III, and Mark W. Rueh, of Clifford Chance Rogers & Wells LLP, New York City, New York, for Plaintiff, of Counsel.
William J. Marsden, Jr., and Kyle Wagner Compton, of Fish & Richardson, P.C., Wilmington, Delaware, David M. Barken, and Craig R. Compton, of Fish & Richardson, P.C., Redwood City, California, for Defendant, of Counsel.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Pending before the Court is Defendant's Motion To Transfer (D.I.12). For the reasons discussed, the Motion will be granted.

## I. BACKGROUND

Plaintiff was issued United States Patent No. 7,013,310 ("the '310 patent"), entitled "Method And Apparatus For Retrieving And Processing Data " on March 14, 2006. That same day, Plaintiff filed its Complaint in this Court, alleging infringement of the '310 patent. (D.I.1). Defendant filed its Answer and Counterclaim on April 4, 2006, and stated its intent to file a motion to transfer. (D.I.5). On May 4, 2006, Defendant filed its Motion to Transfer. (D .I. 12).

Defendant's Motion to Transfer is based on a

pending action in the Northern District of California, Case No. C-05-1550-SI. On April 14, 2005, Defendant filed a patent infringement action in the Northern District of California, alleging that Plaintiff infringed several of its U.S. Patents. In response, Plaintiff filed an action in the same court, seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of the patents asserted in Defendant's case and additional patents. Those two actions were consolidated into one nine-patent case ("the California action"). The California court conducted a Markman hearing on April 26, 2006.

## II. PARTIES' CONTENTIONS

By its Motion, Defendant contends that, pursuant to 28 U.S.C. § 1404(a), the Court should transfer this action to the Northern District of California. In support of this contention, Defendant argues that Plaintiff's allegations of infringement of the '310 patent are related to the allegations in the California action. Further, Defendant contends that certain patents in the California action are prior art to Plaintiff's '310 patent and form the basis of Defendant's inequitable conduct defense.[FN1] In response, Plaintiff contends that the Court should deny the Motion because Plaintiff chose Delaware, the California action is unrelated, and judicial economy would not be served by transfer.

> FN1. Defendant alleges that, at a minimum, United States Patent Nos. 6,317,783 ("the '783 patent"), 6,199,077 (" the '077 patent"), and 6,412,073 ("the '073 patent") are material prior art to Plaintiff's '310 patent. (D.I. 5 at ¶ 23).

## III. DISCUSSION

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2038504 (D Del )
**(Cite as: Slip Copy)**

justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiff could have brought the instant action in the Northern District of California, the Court's only task is to determine whether the factors enumerated in Section 1404(a) warrant a transfer under the circumstances.

The Third Circuit has set forth a list of factors for district courts to consider when deciding whether or not to transfer venue. *Jumara v State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir.1995). These factors include six private interests: (1) the plaintiff's forum preference as evidenced by his or her original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial condition, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (6) the location of books and records, to the extent that the books and records could not be produced in a certain forum. *Id* at 879. The factors also include six public interests for courts to consider: (1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Id* at 879-80. District courts must balance all of the relevant factors and determine whether a transfer of venue would best serve all the aforementioned interests. *Id* at 883. The burden is on the movant to establish that the balance of the interests weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *Continental Cas Co v. Am. Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999).

## A. PRIVATE INTERESTS

**\*2** Although the plaintiff's choice of forum is entitled to substantial deference and should not be

lightly disturbed, *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1920), when the plaintiff lacks a rational and legitimate reason to litigate in the forum, the transfer of a case to a more appropriate forum is less inconvenient. *Brunswick Corp v Precor Inc.*, 2000 U.S. Dist. LEXIS 22222, at \*7 (D.Del. Dec. 12, 2000); *See Waste Distillation Tech, Inc v. Pan Am Res., Inc.*, 775 F.Supp. 759, 764 (D.Del.1991). A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc v E2O Communs., Inc.*, 2002 U.S. Dist. LEXIS 5653, C.A. No. 01-309 JJF, at \*7 (D.Del. March 26, 2002). Accordingly, the first factor weighs against transfer, and Defendant must demonstrate that the other *Jumara* factors strongly favor a transfer to California.

The Court concludes that the other private interest factors weigh in favor of transfer. Here, both parties are Delaware corporations with principal places of business outside Delaware. Plaintiff is headquartered in New York City, and Defendant is headquartered in Redwood City, California. Both parties maintain offices in the Northern District of California. Also, there are likely witnesses, such as former employees, that still reside in the Northern District of California. The location of books and records is neutral as neither party has argued that it would be unable to produce documents in either forum.

Importantly, the same parties are currently litigating in the Northern District of California. Although the Court understands that the California action and this action are different,[FN2] the technologies at issue all relate to data extraction, retrieval, or presentation through Internet technologies, such as web sites and web pages. The Northern District of California is more convenient for the parties because the parties and potential witnesses are located in that district, the parties have proven capable to litigate there, and the court is already familiar with the parties and their technologies.

FN2. This action requires claim construction of the claim language of the '310 patent, which is not part of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 3

Slip Copy, 2006 WL 2038504 (D.Del.)
**(Cite as: Slip Copy)**

California action. However, Defendant's patents-in-suit in the California action are relevant to its defenses and counterclaim in this action.

### B. *PUBLIC INTERESTS*

The Court also concludes that the public interest factors weigh in favor of transfer. Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *Brunswick,* 2000 U.S. Dist. LEXIS 22222, at *8. Factors supporting a decision to transfer include whether the litigation in the target forum involves: (1) the same parties, (2) related or similar technologies for the judge to become familiar with, and (3) a common field of prior art.

In this case, judicial efficiency regarding the ease, speed, or expense of trial strongly weigh in favor of transfer. The California action involves the same parties, similar technologies, and related patents-in-suit. The parties in the California action have already conducted a two-hour technology tutorial on April 19, 2006, argued Markman issues in nine patents on April 26, 2006, and commenced discovery on seemingly related products and technologies. Additionally, the Court concludes that public interests such as enforceability of the judgment, familiarity with state law in diversity actions, local interests in deciding local controversies, and court congestion are neutral or non-applicable factors in this case. *Jumara,* 55 F.3d at 879-880. Accordingly, the interests of judicial efficiency and justice are best served by transferring this case to the Northern District of California.

### IV. CONCLUSION

*\*3 In sum, for the reasons discussed, the Court concludes that the balance of the private and public interest factors support transferring this case to the Northern District of California where related litigation is pending. Accordingly, the Court will grant Defendant's Motion To Transfer (D.I.12).

An appropriate Order will be entered.

### *ORDER*

At Wilmington, the *19* day of July 2006, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Defendant's Motion To Transfer (D.I.12) is *GRANTED.*

D.Del.,2006.
Cashedge, Inc. v. Yodlee, Inc.
Slip Copy, 2006 WL 2038504 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 850651 (Trial Pleading) Complaint for Patent Infringement (Mar. 14, 2006) Original Image of this Document (PDF)
• 1:06cv00170 (Docket) (Mar. 14, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
CORIXA CORPORATION, a Delaware
corporation, et al., Plaintiffs,
v.
IDEC PHARMACEUTICALS CORPORATION, a
Delaware corporation, Defendant.
**No. CIV.A.01-615-GMS.**

Feb. 25, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On September 10, 2001, IDEC Pharmaceutical Corporation ("IDEC") filed a complaint in the Southern District of California against Coulter Pharmaceutical Inc. ("Coulter"), Corixa Corporation ("Corixa"), and the Regents of the University of Michigan ("Michigan"). In its complaint, IDEC seeks a declaratory judgment of non-infringement and/or invalidity of five patents. On September 11, 2001, the Oncologic Drugs Advisory Committee ("ODAC") indicated that it would recommend a limited FDA approval of IDEC's drug Zevalin. On September 12, 2001, at approximately 8:33 A.M. PST, IDEC filed a first amended complaint which included a sixth patent.

On September 12, 2001, at 12:07 P.M. EST, Corixa, Coulter, and GlaxoSmithKline (GSK) (collectively "Corixa") filed the above-captioned action against IDEC.[FN1] Corixa alleges that IDEC is infringing U.S. Patent Nos. 6,015,542, ("the '542 patent"), 6,090,365 ("the '365 patent"), and 5,595,721 ("the '721 patent"). These patents are three of the patents involved in the California declaratory judgment action.

FN1. On September 28, 2001, Michigan was added as a plaintiff in this action.

Presently before the court is IDEC's motion to stay the proceedings, or alternatively, to dismiss or transfer this action to the Southern District of California.[FN2] For the reasons that follow, the court will grant IDEC's motion to transfer.

FN2. IDEC sought to stay the proceedings pending a ruling from the California court on a motion to dismiss. On January 30, 2002, the California court denied the motion to dismiss. IDEC's current motion to stay is therefore moot.

II. BACKGROUND

IDEC is a Delaware corporation with its sole place of business in the San Diego area. Coulter is a Delaware corporation with its principle place of business in the San Francisco Bay area. Corixa is a Delaware corporation based in Seattle, Washington. GSK is a Pennsylvania corporation with its principle place of business in Philadelphia, Pennsylvania. The University of Michigan is a constitutional corporation of the State of Michigan, located in Ann Arbor, Michigan.

The patents at issue involve technology for the treatment of lymphoma using targeted radioimmunotherapy. Coulter and Michigan are co-owners of the '542, '365, and '721 patents. Corixa and GSK are the licensees of these patents. Both IDEC and Corixa are currently seeking FDA approval for a commercial embodiment of their respective inventions for the treatment of lymphoma using radioimmunotherapy.

With these facts in mind, the court will now turn to the motion presently before it.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### III. DISCUSSION

#### A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed.Cir.1993).* The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising from common matters. *See id.* at 937. This doctrine applies equally well where the first-filed action is one for a declaratory judgment. *See id.* at 938 (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

**\*2** Applying the first-filed rule, IDEC argues that the present case should be transferred to the Southern District of California. Notwithstanding that the cases at issue are "mirror image" cases where the court is asked to construe the same patents, Corixa argues that the first-filed rule is inapplicable to the present situation.

Corixa first argues that GSK has not been joined in the California litigation. The record before the court indicates that GSK is Coulter's licensee. It is unclear whether GSK is an exclusive licensee. However, even were the court to accept Corixa's argument that GSK is an exclusive licensee, that alone does not indicate that GSK is a necessary party to this litigation. Corixa concedes that GSK is a licensee with fewer than all substantial rights. As such, GSK, while likely a proper party to the California lawsuit, is not a necessary party. *See Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.,* 248 F.3d 1333, 1348 (Fed.Cir.2001) (holding that an exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.) Finally, to the extent that the parties believe that GSK is a necessary party, GSK may request permission to join the California litigation.[FN3]

> FN3. Corixa expresses concern over whether the California court has subject-matter jurisdiction over an action between IDEC and GSK. As it is not the court's province to determine another court's subject matter jurisdiction, the court expresses no opinion on this.

Corixa next argues that the first-filed rule is inapplicable to the present situation because IDEC improperly "raced to the courthouse" in order to file its motion in California. In support of this contention, Corixa points out that its right to file an infringement suit against IDEC did not ripen until after ODAC recommended that the FDA approve Zevalin. However, before ODAC publicly recommended approval, but after IDEC had reason to believe they would do so, IDEC "raced" to file its declaratory judgment action.

The court acknowledges that IDEC's filing seems providential since ODAC's recommendation became public the day after IDEC filed its suit. In its November 6, 2001 Order, however, the California court specifically found that IDEC possessed a reasonable apprehension of suit when it filed its declaratory judgment action. The California court continued by stating that, "an actual controversy existed when IDEC filed the complaint under consideration. Consequently the [c]ourt finds that IDEC's filing suit was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgment Act ...." This court sees no reason to disagree with the California court's findings.

Given the information presently before it, the court concludes that having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. *See EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). Accordingly, the court finds that the application of the rule weighs heavily in favor of transferring this case to the Southern District of California.

#### B. Section 1404(a)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*3** Transfer to the Southern District of California is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). There is no dispute that this action could have been filed in the Southern District of California. The court will, therefore, move on with inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

In *Jumara*, the Third Circuit provided a list of factors to assist the district courts in determining " whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

### 1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum.[FN4]

> FN4. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 197-201 (D.Del.1998). In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District

of California is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See* 28 U.S.C. § 1404(a).

#### a. The Convenience of the Parties

Geographically, California is not more inconvenient for the parties than Delaware. Michigan must travel whether the suit is in California or Delaware. GSK is one of the world's largest pharmaceutical companies, and cannot complain about location. The remainder of the parties are based on the West Coast. Furthermore, transfer to California would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case currently pending in the Southern District of California. Bringing witnesses and relevant documents to only one location, here California, minimizes the level of disruption caused to all parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

#### b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience " analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix,* 28 F.Supp.2d at 203. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are " usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. " *See id.* (internalcitations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

**\*4** There is no evidence on the record that would

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

indicate that Delaware would be an inconvenient forum for potential non-party witnesses. However, the court notes that all the material witnesses in this dispute, party or otherwise, will be in California already to litigate the related matter now pending in the Southern District of California. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

#### c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. There is no indication that either party would be unable to produce the relevant records and documents in Delaware. Thus, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in California for the litigation of that case. The court sees no need to require that the parties move the same documents across the country. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra*.

#### 2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the factors most relevant to the pending case.

#### a. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by IDEC, and accepted by the court, in Section III .A, *supra.* As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

#### b. Delaware's Interest in this Controversy

Three of the parties in this action are Delaware corporations. However, while the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the patents as a local controversy unique to Delaware. *See Affymetrix,* 28 F.Supp.2d at 207. Instead, the patents deal with the treatment of lymphoma. This clearly has far-reaching implications. Accordingly, this factor does not weigh against transferring this case to California.

#### c. Collective Travel Time and Cost

A mirror image action is currently pending in California. Thus, to require the parties to simultaneously litigate virtually the same case on different coasts would certainly increase the collective travel time and cost. Thus, this factor weighs in favor of transfer.

#### IV. CONCLUSION

**\*5** The court concludes that the "balance of convenience" tips strongly in favor of transferring this action to the Southern District of California.

For these reasons, IT IS HEREBY ORDERED that:
1. IDEC's alternative motion to transfer this action to the Southern District of California (D.1.8) is GRANTED.
2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of California.

D.Del.,2002.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


Corixa Corp. v. IDEC Pharmaceuticals Corp.
Not Reported in F.Supp.2d, 2002 WL 265094
(D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:01CV00615 (Docket) (Sep. 12, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2003 WL 22953183 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
GENFOOT, INC., Plaintiff,
v.
PAYLESS SHOESOURCE, INC. Defendant.
**No. Civ. 03-398-SLR.**

Dec. 3, 2003

Warren Thomas Pratt, Drinker, Biddle & Reath, LLP, Wilmington, DE, for Plaintiff.
Tanya E. Pino, Prickett, Jones & Elliott, Wilmington, DE, for Defendant.

MEMORANDUM ORDER

ROBINSON, J.

### I. INTRODUCTION

**\*1** Plaintiff filed suit against defendant on April 17, 2003 alleging infringement of U.S. Patent No. 6,237,252 ("the '252 patent") pursuant to 35 U.S.C. §§ 271, 281, 283, 284 and 285. (D.I.1) On July 9, 2003, defendant moved, pursuant to 28 U.S.C. § 1404(a),[FN1] to transfer venue to the District of Kansas, and to consolidate the case with *Payless Shoesource, Inc v. Genfoot,* Civil Action No. 02-4160-SAR. (D.I.6) The matter is fully briefed. (D.I.7, 8) For the reasons that follow the motion to transfer will be granted.

> FN1. Title 28, Section § 1404(a) provides: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

### II. BACKGROUND

Plaintiff is Canadian corporation with its principal place of business in Montreal, Quebec, Canada. (D.I.1) Plaintiff is the owner of the '252 patent which, essentially, protects technology related to a draw cord closure on the upper part of a shoe boot. Plaintiff alleges defendant has sold and continues to sell a boot that includes technology protected by the '252 patent. In the complaint, plaintiff describes defendant as the operator of retail stores selling footwear in all fifty states. In the motion to transfer, however, defendant explains that there are two distinct entities denominated "Payless ShoeSource, Inc." (D.I.7, Ex. B) Defendant, a Delaware corporation, "functions solely as a holding company" and "conducts no activities relating to creating, manufacturing, buying of selling footwear or other merchandise of any type." (D.I.7, Ex. B) The second entity, Payless ShoeSource, Inc., is a Missouri corporation and "an indirect, wholly-owned subsidiary of the Delaware holding company whose sole function is to conduct retail sales of Payless merchandise in the United States, the Virgin Islands and Puerto Rico." (*Id*) A third entity, Payless ShoeSource Worldwide, is a Kansas corporation and is an "indirect, wholly-owned subsidiary of Delaware Holding Company." (*Id*)

On October 18, 2002, the second entity, Payless ShoeSource, Inc, filed a complaint for declaratory judgment against Genfoot, Inc. in the United States District Court for the District of Kansas. (D.I.7, Ex. A) Payless seeks judgment of patent invalidity, unenforceability and noninfringement on the '252 patent. (*Id*) On April 16, 2003, Genfoot moved to dismiss based on lack of personal jurisdiction (D.I.8) Genfoot's motion remains pending

### III. DISCUSSION

More than fifty years ago, the Third Circuit Court of Appeals adopted the "first-filed rule" where "[i]n all cases of federal concurrent jurisdiction the court which first had possession of the subject must

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22953183 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824) ). Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc.*, 769 F.Supp. 169, 171 (E.D.Pa.1991); *Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.*, Civil Action No. 01-532-GMS, 2001 WL 1414868 (D.Del.2001). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. *Id.*, at 972, 977. However,

**\*2** invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule.

*Id.* at 979.

The court finds this case involves the same parties, the same patent and same legal theories as the first filed action in the District of Kansas. A transfer of the subsequently filed Delaware action will promote judicial administration and consistency of results.

### IV. CONCLUSION

For the reasons stated, at Wilmington, this 2d day of December, 2003,

IT IS ORDERED that:

1. The motion to transfer is granted. (D.I.6)

2. The above-captioned action shall be transferred to the United States District Court for the District of Kansas.

D.Del.,2003.
Genfoot, Inc. v. Payless Shoesource, Inc
Not Reported in F.Supp.2d, 2003 WL 22953183 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00398 (Docket) (Apr. 17, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
GUIDANT CORPORATION, Cardiac Pacemakers,
Inc., Guidant Sales Corporation and Mirowski
Family Ventures, L.L.C., Plaintiffs,
v.
ST. JUDE MEDICAL, INC. and Pacesetter, Inc.,
Defendants.
**No. Civ. 04-067-SLR.**

Aug. 27, 2004.

Frederick L. Cottrell, III, Richards, Layton &
Finger, Wilmington, DE, for Plaintiffs and
Counter-Defendants.
John W. Shaw, Young, Conaway, Stargatt &
Taylor, Wilmington, DE, for Defendants and
Counter-Claimants.

MEMORANDUM ORDER

ROBINSON, J.
*1 At Wilmington this 27th day of August, 2004,
having reviewed defendants' motion to transfer and
the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer
(D.I.27) is denied, for the reasons that follow:

1. Introduction. On February 2, 2004, Guidant
Corporation, Cardiac Pacemakers, Inc., Guidant
Sales Corporation and Mirowski Family Ventures,
L.L.C. (collectively, "plaintiffs"), filed this action
for declaratory judgment of patent infringement
against St. Jude Medical, Inc. and Pacesetter, Inc.
(collectively, "defendants"). (D.I.1) The
patent-in-suit is United States Patent Number
RE38,119 ("the '119 patent").[FN1] This patent is "
directed to a new way to treat congestive heart
failure ("CHF"), which occurs when the heart
muscle is too weak to pump blood effectively

through the body." (D.I. 34 at p. 3) Plaintiffs allege
that defendants infringe the '119 patent by making
and selling congestive therapy products that provide
cardiac resynchronization therapy ("CRT") to treat
CHF.[FN2] (D.I.28)

> FN1. The '119 patent is the subject of
> litigation presently before the court in
> *Medtronic v. Guidant,* Civ. No.
> 03-848-SLR (D.Del.). Although both sides
> expend much energy arguing the relevance
> of the *Medtronic* case to the issue of
> transfer at bar, the court is unimpressed by
> these considerations.

> FN2. The accused devices are St. Jude's
> Epic0 HF implantable cardioverter
> defibrillator, Atlas0 HF implantable
> cardioverter defibrillator, and Frontier0
> pacemaker device. (D.I.28)

On February 24, 2004, Cardiac Pacemakers, Inc.
filed a second patent infringement action in the
District of Minnesota against defendants St. Jude
Medical, Inc. and Pacesetter, Inc. ("the Minnesota
Action"). (D.I. 29, Ex. 5, *Cardiac Pacemakers, Inc.
v. St. Jude Medical, Inc.,* C.A. No. 04-1016
JMR/FLN) The patent-in-suit is United States
Patent No. 5,755,766 ("the '766 patent").[FN3] The
'766 patent is directed to cardiac leads that travel
though veins to the heart. (D.I.34)

> FN3. The accused products are St. Jude's
> QUICKSITE0 1056 K pacing lead used
> with St. Jude's Epic HF, Atlas HF and
> Frontier devices. (D.I. 28)

Defendants moved to transfer this case to the
United States District Court for the Southern
District of Indiana on March 9, 2004. (D.I.11)
Defendants argued that the interests of justice
strongly favored having all cases relating to the

Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

accused products heard before the United States District Judge David F. Hamilton. Defendants argued that Judge Hamilton was "particularly well-suited to fill that role because he had recently presided over the lengthy trial of a prior suit brought by plaintiff Guidant involving four other patents issued to Dr. Morton Mower, the alleged inventor of the '119 patent in suit." [FN4] (D.I. 28 at 8)

> FN4. According to defendants:
> The judgment of invalidity as to one of the four patents is the subject of an appeal currently pending before the Federal Circuit. With respect to the other three patents, one was voluntarily dismissed before trial, Judge Hamilton's finding as to the invalidity of one has been conceded, and Judge Hamilton's summary judgment holding of invalidity of the third was affirmed by the Federal Circuit.
> (D.I. 28, fn.2)

On April 7, 2004, plaintiffs filed their first amended complaint. (D.I.22) Defendants' withdrew their motion to transfer to the Southern District of Indiana on April 13, 2004.[FN5] (D.I.23) Defendants filed their answer to the amended complaint along with counterclaims on April 21, 2004. (D.I.25) Defendants filed a second motion to transfer this case to the District of Minnesota on May 6, 2004. (D.I.27, 28, 29) The matter is fully briefed. (D.I.34, 35, 36, 38, 39)

> FN5. Apparently, under the Southern District of Indiana local rules, defendants' case was not considered a related case, thereby assignment to Judge Hamilton was not possible.

2. Background. Plaintiff Guidant Corporation ("GC") is an Indiana corporation having its principal place of business in Indianapolis, Indiana. GC has an exclusive license to the '119 patent. Plaintiff Cardiac Pacemakers, Inc. ("CPI") is organized under the laws of Minnesota and has a principal place of business in St. Paul, Minnesota. Guidant

Sales Corporation ("GSC") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. GS and its subsidiaries CPI and GSC make and sell cardiac rhythm management devices. (D.I.22) Mirowski Family Ventures, L.L.C. is a Maryland limited liability corporation that has been assigned title to the '119 patent. (Id.)

*2 3. Defendant St. Jude Medical, Inc. ("SJM") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Defendant Pacesetter, Inc. ("Pacesetter") is a Delaware corporation with its principal place of business in Sylmar, California. (Id.) Pacesetter is a subsidiary of SJM.

4. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 208 (D.Del.1998).

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin*, 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). " Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.*, 138 F.Supp.2d 565, 567 (D.Del 2001); *Shutte*, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

. Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.*, the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

**\*3** The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

5. Discussion. Defendants assert that this case and the Minnesota Action belong together. Both actions involve cardiac rhythm management (CRM) products used to provide cardiac resynchronization therapy (CRT). According to defendants, judicial resources would be conserved by adjudicating the cases in the same forum. Since both sides have

corporate headquarters in Minnesota, it would be convenient to litigate there. Defendants, also, advise that the District of Minnesota is considered to have special expertise in the technology at issue.[FN6]

> FN6. In support, defendants reference this court's 1996 memorandum order in *Pacesetter, Inc. v. Cardiac Pacemakers*, Civ. No. 96-232-SLR (D.Del.1996). In addressing a motion to transfer in the case between some of the same litigants at bar, the court granted the motion:
> The court, however is persuaded that transfer of this case to the District of Minnesota is warranted because of Minnesota's familiarity with the technology at issue through past and pending litigation. It is the court's understanding that the District of Minnesota is in a posture to accept such a complex case without prejudice to plaintiffs' interest in a prompt resolution of the matter. Under these unusual circumstances, the court finds that transfer will conserve judicial resources and, therefore, further the interest of justice.
> (*Id.*, emphasis added)

6. Plaintiffs argue that defendants are forum shopping and clearly do not wish to be before this court. (D.I.34) Its first motion was to move this case before a particular judge and, when that was not possible, they withdrew the motion. Plaintiffs assert that defendants have failed to present legitimate reasons to transfer from its choice of forum. Plaintiffs also request that fees and costs associated with the preparation of its response to the motions be awarded.

7. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted public and public advantages of moving the case to the District of Minnesota are insufficient. Although two of the parties are headquartered in Minnesota, there is also evidence that all parties conduct business on a nationwide basis and are not restricted in any way from traveling to Delaware. Defendants argue that the public and private factors favor

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

transfer yet offer nothing particularly burdensome or fact specific. Instead, they contend that their concern for conserving judicial resources is the most compelling factor. In the absence of any particular or unusual circumstances, the concern for judicial economy does not warrant a transfer of the case.

Moreover, defendants' concern for judicial economy actually operates against a transfer. Assuming, *arguendo,* that the technology at issue in the Minnesota and the Delaware actions involve essentially the same parties and patents and involve the same legal theories, under the "first filed rule", this court, where the first case was filed, would not be compelled to transfer the case. Instead, the second filed Minnesota Action would be ripe for transfer to this court.

More than fifty years ago, the Third Circuit adopted the "first-filed rule" where "[i]n all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver,* 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)). Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. *Peregrine Corp. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991); *Genfoot, Inc. v. Payless Shoesource, Inc.,* Civ. No. 03-398-SLR, 2003 WL 22953183 (D.Del.2003). The rule " encourages sound judicial administration and promotes comity among federal courts of equal rank. " *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. *Id.* at 972, 977. While the issue of transfer of the Minnesota Action is obviously not before the court, the caselaw reflects the overwhelming preference toward the first-filed case.

*4 Plaintiffs, however, have not succeeded on all issues. Specifically, plaintiffs have failed to demonstrate to the court's satisfaction that an award of attorney's fees and costs is warranted at this time. Although defendants' strategic filing of motions is suspect, it does not rise to the conduct necessitating a fee award, especially when plaintiffs' own

conduct, wherein the Minnesota Action was filed within weeks of this filing, suggests similar posturing.

8. Conclusion. For the reasons stated, defendants' motion to transfer (D.I.27) is denied.

D.Del.,2004.
Guidant Corp. v. St. Jude Medical, Inc.
Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2603767 (Trial Pleading) Answer to Second Amended Complaint and Counterclaims (Aug. 18, 2005) Original Image of this Document (PDF)
• 2005 WL 3676522 (Trial Motion, Memorandum and Affidavit) Defendants' Opening Brief in Support of their Motion for Summary Judgment of Invalidity Based on Recapture (May. 10, 2005)
• 1:04cv00067 (Docket) (Feb. 02, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
MITEQ, INC., Plaintiff,
v.
COMTECH TELECOMMUNICATIONS CORP.,
Defendant.
**No. Civ.A. 02-1336-SLR.**

Jan. 23, 2003.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On July 29, 2002, plaintiff Miteq, Inc. filed this action against defendant Comtech Telecommunications, Corp. seeking a declaratory judgment that it does not infringe U.S. Patent No. 5,666,646 ("the '646 patent") owned by a subsidiary of defendant, or that the '646 patent is invalid. (D.I.1) Presently before the court is defendant's motion to dismiss, stay, or transfer this action. (D.I.6) This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. For the reasons that follow, the motion shall be granted.

II. BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in Hauppauge, New York. (D.I. 14 at 5) Plaintiff designs and manufactures satellite communications equipment, including the accused infringing products. (*Id.* at 7) Defendant is a Delaware corporation with its principal place of business in Melville, New York. (D.I.8) Comtech EF Data ("EF Data") is a wholly owned subsidiary of defendant with its principal place of business in Tempe, Arizona. (*Id.*) EF Data is the assignee of the

'646 patent entitled "Radio Frequency (RF) Converter System with Distributed Protection Switching and Method Transfer." (*Id.*) Defendant and EF Data design and manufacture satellite communications equipment utilizing the technology of the '646 patent.

On April 10, 2002, defendant filed a complaint against plaintiff in the United States District Court for the District of Arizona alleging infringement of the '646 patent. (D.I. 7 at 3) However, defendant asserts that it did not serve plaintiff in the Arizona case until August 1, 2002, in order to "permit a dialogue between the parties." (*Id.*) Prior to being served in the Arizona case, plaintiff filed this action and served defendant on July 29, 2002, seeking declaratory judgment of non-infringement and invalidity of the '646 patent. (D.I.1) Defendant now seeks to either dismiss this action, stay this case until resolution of the Arizona litigation, or transfer this case to the District of Arizona. (D.I.7)

III. DISCUSSION

More than fifty years ago, the Third Circuit Court of Appeals adopted the "first-filed rule" where "in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. M'Iver,* 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824) ). Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. *Peregrine Corp. v. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991); *Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc.,* 2001 U.S. Dist. LEXIS 18547, Civil Action No. 01-532-GMS, 2001 WL 1414868 (D.Del.2001). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 2

Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

within the discretion of the trial court. *Id* at 972, 977. However, invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule. *Id* at 979.

**\*2** In this case, it is undisputed that the first-filed case in Arizona and the present case involve the same patent and the same issues. Therefore, the burden is on plaintiff to present some exceptional circumstances why the court should depart from the first-filed rule. In support of its argument opposing transfer, plaintiff states that all of its relevant witnesses reside in New York, all the documents and records related to the accused product are in New York, and the "center of gravity" of the case is New York. (D.I. 14 at 6-7) None of these arguments show that there are any exceptional circumstances requiring the court to depart from the first-filed rule.

Furthermore, defendant makes the same arguments in favor of transferring the case to Arizona. It argues that all of its relevant witness, documents, and products are either in or near Arizona. Therefore, by not allowing a transfer, the court would simply be transferring the inconvenience of traveling from plaintiff to defendant. Mere inconvenience to one party does not rise to the level of exceptional circumstances that would require the court to depart from the well-established principles of the first-filed rule. Since the patent litigation action in Arizona was filed first, transfer of the subsequently filed Delaware action will promote judicial administration and consistency of results.

## IV. CONCLUSION

For the reasons stated, at Wilmington, this 23rd day of January, 2003, IT IS ORDERED that:

1. Defendant's motion to transfer (D.I.6) is granted.

2. Defendant's motions to dismiss and stay (D.I.6) are denied as moot.

3. The above-captioned action shall be transferred to the United States District Court for the District of

Arizona.

D.Del.,2003.
Miteq, Inc. v. Comtech Telecommunications Corp.
Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:02CV01336 (Docket) (Jul. 29, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                Page 1

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Ole K. NILSSEN and Geo Foundation, Ltd.,
Plaintiffs,
v.
OSRAM SYLVANIA, INC. and Osram Sylvania
Products, Inc., Defendants.
**No. Civ.A. 00-695-JJF.**

May 1, 2001.

Donald F. Parsons, Jr., and Mona A. Lee, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Harry J. Roper, Raymond N. Nimrod, John E. Titus, and Jonathon Hill, of Roper & Quigg, Chicago, Illinois, for Plaintiffs, of counsel.
Richard K. Herrmann, of Blank Rome Comisky & Mccauley LLP, Wilmington, Delaware, Brian D. Sieve, Thomas G. Pasternak, Andrew M. Johnstone, and Kevin J. O'Shea, of Kirkland & Ellis, Chicago, Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.
**\*1** Presently before the Court is Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15). For the reasons stated below, the Court will grant the motion.

BACKGROUND

Ole K. Nilssen ("Mr.Nilssen") is a Florida resident with his principal place of business in Chicago, Illinois.[FN1] (D.I. 1 at ¶ 4). Mr. Nilssen is engaged in the business of "identifying, formulating plans for, developing know-how and technology for, and implementing (via licensing agreements) promising new business opportunities in the field of electronics, including electronic ballasts." (D.I. 1 at

¶ 8). Geo Foundation ("Geo") is a non-profit corporation incorporated in the Cayman Islands, British West Indies. (D.I. 1 at ¶ 5)(Mr. Nilssen and Geo collectively referred to as "Plaintiffs").

> FN1. Mr. Nilssen contends that his ongoing business in Illinois, Innovations Center, "is now defunct." (D.I. 24, Exh. 1 at ¶ 8). However, Plaintiffs' Complaint alleges that Mr. Nilssen is currently engaged in "business opportunities." (D.I. 1 at ¶ 4). Further, Mr. Nilssen admits that he still travels to Illinois regularly to " bring closure to [his] other business dealings that take place in Illinois." (D.I. 24, Exh. 1 at ¶ 8). The Court concludes that, for purposes of the instant motion, this record sufficiently establishes that Mr. Nilssen's principal place of business is in Illinois.

OSRAM Sylvania, Inc. and OSRAM Sylvania Products, Inc. (collectively "Defendants") are Delaware corporations with their principal places of business in Danvers, Massachusetts. (D.I. 13 at ¶ 6-7). Defendants are engaged in the business of making and selling electronic ballasts. (D.I. 13 at ¶ 11).

Plaintiffs filed the instant action against Defendants on August 1, 2000. In their Complaint, Plaintiffs contend that Defendants wilfully infringe twenty-six patents that were invented and are owned by Mr. Nilssen and of which Geo holds exclusive licenses.[FN2] (D.I. 1 at ¶¶ 9, 10, 13). On January 24, 2001, Defendants filed the instant motion to transfer the case to the United States District Court for the Northern District of Illinois. (D.I.15).

> FN2. These patents include U.S. Patent No. B1 4,667,345; U.S. Patent No. 4,857,806; U.S. Patent No. 4,954,754;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                                          Page 2

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

U.S. Patent No. 4,983,887; U.S. Patent No. 5,013,974; U.S. Patent No. 5,047,690; U.S. Patent No. 5,164,637; U.S. Patent No. 5,185,560; U.S. Patent No. 5,189,342; U.S. Patent No. 5,191,262; U.S. Patent No. 5,214,356; U.S. Patent No. 5,233,270; U.S. Patent No. 5,341,067; U.S. Patent No. 5,343,123; U.S. Patent No. 5,402,043; U.S. Patent No. 5,416,386; U.S. Patent No. 5,432,409; U.S. Patent No. 5,446,347; U.S. Patent No. 5,471,118; U.S. Patent No. 5,479,074; U.S. Patent No. 5,481,160; U.S. Patent No. 5,510,680; U.S. Patent No. 5,510,681; U.S. Patent No. 5,621,279; U.S. Patent No. 5,736,819 and U.S. Patent No. 6,002,210. (D.I. 1 at ¶ 9).

DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiffs could have brought the instant action in the Northern District of Illinois, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors. These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. *Memminger v. InfoCure Corp.*, C.A. No. 00-707-JJF, slip op. at 4 (D.Del. Nov. 14, 2000)(citing *Jumara v. State Farm Ins Co.*, 55 F.3d 873, 879 (3d Cir 1995)).[FN3] These factors also include several public interests:

FN3. *Jumara* also listed the following

private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other *Jumara* factors. *Memminger,* slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not considered them separately. *Id*

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.
**\*2** *Id.* (citing *Jumara,* 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. *Jumara,* 55 F.3d at 883. "The burden is upon the [moving party] to establish that the balance of the [factors] strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Memminger,* slip op. at 4-5. Below, the Court will analyze the factors relevant to the instant motion.

A. Convenience of the Parties

The Court concludes that the convenience of the parties due to their relative physical and financial conditions weighs slightly in favor of transfer. Defendants' principal places of business are located in Danvers, Massachusetts. (D.I. 16 at 5). Many of Defendants' accused products are manufactured in Lake Zurich, Illinois, which is within the Northern District of Illinois. (D.I. 16 at 5). Defendants' contacts with Delaware, on the other hand, are minimal: Defendants are incorporated under Delaware law, Defendants have one salesperson who works out of a home office in Delaware, and some of Defendants' accused products are sold in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Delaware.[FN4] (D.I. 16 at 5). *See Memminger,* slip op. at 6-7 (recognizing that the mere fact a defendant is incorporated in a given forum does not mean that transfer to another forum is not warranted); *Amersham Pharmacia Biotech, Inc v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730-30 (S.D.N.Y.1998)(holding that the Southern District of New York's connection to the litigation was " tenuous" for purposes of venue transfer analysis when the defendant was incorporated in New York and over 100 of the defendant's allegedly infringing products were sold in New York). Also supporting the requested transfer is the fact that Mr. Nilssen's principal place of business is in Illinois, and that several of his current and former employees reside in Illinois.

> FN4. Plaintiffs' contention that their "claim arose" in Delaware, because some of Defendants' accused products are sold in Delaware, lacks merit. Defendants' products are sold nationwide; therefore, Delaware does not have any special " connection" to the case that would weigh against the requested transfer.

Based on these considerations, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of transfer because both Defendants are large companies that are financially capable of litigating in a distant forum. *Motorola Inc v. PC-Tel Inc.,* 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate " some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505,

510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.,* 2000 WL 1728354, at *4 (D.Del. Feb. 11, 2000)(quoting *Jumara,* 55 F.3d at 879). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics,* 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

*3 In the instant case, Defendants contend that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene-an employee of Mr. Nilssen, (2) Robert Schneider-a former employee of Mr. Nilssen, (3) employees of Defendants, (4) employees of Motorola, Inc., and (5) employees of Advance Transformer, Inc. (" Advance") (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiffs' second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.,* 1997 U.S. Dist. LEXIS 22902, at *11 n. 4 (D.Del. July 30, 1997).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 4

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. [FN5] (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

> FN5. To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of his business contacts in Illinois.

Plaintiffs contend that these potential third party witnesses do not weigh in favor of transfer because Defendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However, Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art. [FN6] (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer analysis. [FN7] Therefore, the Court concludes that the convenience of the witnesses strongly weighs in favor of transfer.

> FN6. Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).

> FN7. The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing *Motorola*, 58 F.Supp.2d at 359; *Sunds Defibrator, Inc. v. Durametal Corp.*, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from *Motorola* and *Sunds Defibrator*.

## C. Practical Considerations

*4 The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.*, 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois. [FN8] In the Illinois cases, *Markman* rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

construe at least six of the same patents, [FN9] and to render *Markman* rulings on each of these patents, is a factor that strongly weighs in favor of transfer. [FN10]

FN8. The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in *Nilssen v. Motorola, Inc.*, Case No. 96-5571, and that three of these patents are also being litigated in *Nilssen v. MagneTek, Inc.*, Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the *Motorola* case and the action presently before the Court. (D.I. 24 at 12 & n. 4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

FN9. Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.

FN10. Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. [FN11] As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

FN11. Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I. 24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I. 16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be resolved more quickly if tried in Delaware. However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.
After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

to one of Plaintiffs' letters, highlights the fact that quick resolution of the lawsuit in this District is unlikely. The Order stated that: "the voluminous documents and arguments involved in the case" and "the legal and factual complexity of the case" would be such a drain on judicial resources that the appointment of a special master is warranted. (D.I.28). The Court concludes that requiring two different courts to duplicate much of the same work would be inefficient and would not produce a more expedient resolution in this forum.

An appropriate Order will be entered.

### ORDER

At Wilmington, this *1* day of May, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15) is *GRANTED*

D.Del.,2001.
Nilssen v. Osram Sylvania, Inc.
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00cv00695 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy, 2006 WL 680657 (D.Del.)
**(Cite as: Slip Copy)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
SONY ELECTRONICS, INC., Sony Computer
Entertainment America, INC., Sony Pictures
Entertainment, Inc., Sony Connect, Inc., Sony
Online Entertainment, Inc., Sony Corporation of
America, Sony BMG Music Entertainment, Inc.,
Sony Ericsson Mobile Communications (USA),
Inc., Plaintiffs,
v.
ORION IP, LLC, Defendant.
No. C.A. 05-255(GMS).

March 14, 2006.

Josy W. Ingersoll, Young, Conaway, Stargatt &
Taylor, Wilmington, DE, for Plaintiffs.
Donald E. Reid, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE, for Defendant.

*MEMORANDUM*
SLEET, J.
*1 On November 23, 2004, Orion IP, LLC ("Orion"
), a Delaware corporation headquartered in Texas,
filed a patent infringement suit in the United States
District Court for the Eastern District of Texas
against fifteen individual defendants, none of whom
are parties to this action. However, on February 10,
2005, Orion amended its complaint to add
additional parties, including Sony Corporation of
America ("SCA"). On April 7, 2005, SCA
responded by filing an answer in the Texas action
asserting the affirmative defenses of
non-infringement and invalidity as to both patents in
suit. Then, on May 2, 2005, SCA and seven other
so-called non-SCA plaintiffs filed an action in this
court seeking a declaratory judgment of
non-infringement and invalidity with respect to the
same patents as those asserted against SCA in the
Texas action. However, although the patents at
issue are the same, the potentially-infringing

products of the non-SCA plaintiffs-their
websites-are allegedly different than the accused
SCA website. Presently before the court is Orion's
motion to either dismiss or stay this case under the
first-filed rule, or alternatively, to transfer it to the
Eastern District of Texas pursuant to 28 U.S.C.A. §
1404(a) (1993). (D.I.11.)

Generally speaking, the first-filed rule is as simple
as its name suggests: "[w]here two patent lawsuits
involving the same claims are filed in different
jurisdictions, the Federal Circuit requires that the
first-filed action be given preference absent special
circumstances." *Corixa Corp. v. IDEC Pharm.
Corp.*, No. 01-615-GMS, 2002 WL 265094, at *1
(D.Del. Feb.25, 2002). The present case presents a
small complication, however, because only one of
the plaintiffs in this action is a defendant in the
Texas action. But, that complication is not too
difficult to overcome because "Civil Procedure
Rule 21 permits any claim against a party to be
severed and proceeded with separately." *Triangle
Conduit & Cable Co. v. Nat'l Elec. Prods Corp.*,
125 F.2d 1008, 1009 (3d Cir.1942). Moreover, "
Rule 21 permits a court to sever claims *sua sponte* "
*United States v. AMTRAK*, No. 86-1094, 2004 U.S.
Dist. LEXIS 10867, at *21 (E.D. Pa. June 15,
2004). That being the case, and there being no
discernable prejudice in severing SCA's claims
against Orion, the court will exercise its power to
do so. As a result, the court is confronted with a
declaratory judgment action by SCA alone, the
inverse of which (i.e., an infringement action) was
filed about three months earlier in Texas. Therefore,
pursuant to the first-filed rule, SCA must be
dismissed from this case. *Cf Triangle Conduit*, 125
F.2d at 1009 (holding that this district was under a
duty to enjoin a patent-holding defendant in a
declaratory judgment action from pursuing an
infringement action in another district against the
declaratory judgment plaintiff, even though the
infringement action in the other district would
proceed against other parties in the absence of the
declaratory judgment plaintiff).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 680657 (D.Del.)
**(Cite as: Slip Copy)**

**\*2** With SCA out of the case, the court must still decide the fate of the non-SCA plaintiffs. Orion first argues that, like SCA itself, the non-SCA plaintiffs are subject to the first-filed rule under the holding of *Corixa,* where this court granted a motion to transfer a patent infringement action, based on the first-filed rule, to a district where a previous declaratory judgment action had been filed, even though one of the plaintiffs in the patent infringement action was not a defendant in the declaratory judgment action. 2002 WL 265094, at \*1-\*2. However, that plaintiff was a licensee of a defendant in the declaratory judgment action, and could therefore request permission to join that action after the transfer. *Id.* at \*2. In this case, the non-SCA plaintiffs cannot be licensees of SCA because SCA is not the patentee. Moreover, the " accused products" in this action are the websites of the non-SCA plaintiffs, which are allegedly different than the SCA website accused in the Texas action. Thus, *Corixa* is distinguishable, and the first-filed rule does not apply to the non-SCA plaintiffs.

Orion's next argument is that the action should be transferred pursuant to § 1404(a). In *Jumara v. State Farm Insurance Co.,* the Third Circuit outlined six private interests and six public interests relevant to such a transfer. The private interests are:
(1) The plaintiff's forum preference as manifested in the original choice;
(2) The defendant's preference;
(3) Whether the claim arose elsewhere;
(4) The convenience of the parties as indicated by their relative physical and financial condition;
(5) The convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
(6) The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

55 F.3d 873, 879 (3d Cir.1995). Aside from Orion's preference for Texas and the non-SCA plaintiffs' preferences for Delaware, none of the other private interests are particularly relevant. Orion disagrees, and argues that convenience weighs in favor of transfer. Although Texas may indeed be more convenient for Orion, all of the non-SCA plaintiffs (and Orion) are incorporated in Delaware-a fact that certainly weighs against transfer. At best, then, the private interests are a wash.

The public interests outlined in *Jumara* include:
(1) The enforceability of the judgment;
(2) Practical considerations that could make the trial easy, expeditious, or inexpensive;
(3) The relative administrative difficulty in the two fora resulting from court congestion;
(4) The local interest in deciding local controversies at home;
(5) The public policies of the fora; and
(6) The familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80. Here, Orion argues that although it and the remaining plaintiffs are all Delaware corporations, the local interest favors Texas because Orion has offices in that state. In *Corixa,* three parties were Delaware corporations, and yet, that fact did not weigh against transferring the case to California because the "patents deal[t] with the treatment of lymphoma, .... [which] has far-reaching implications [beyond Delaware's borders]." 2002 WL 265094, at \*4. By the same token, the fact that Orion has offices in Texas does not weigh in favor of transfer where the patents deal with technology used in internationally-accessible websites. Orion also argues that because litigation involving the same patents is already underway in Texas, judicial resources will be saved granting a transfer. Although there may be some efficiency to be gained by consolidating certain aspects of discovery, Orion ignores the possibility that collateral issues specific to any one of the many unrelated parties involved in both cases may create inefficiencies that would not arise if the proceedings remained separate. *See Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 739 (1st Cir.1977) ("Nor are we fully convinced of the propriety of using another customer suit of another manufacturer, which, incidentally, may have very different collateral issues, as a magnet to draw a suit to a jurisdiction where it otherwise should not be."). Moreover, simply because Orion initiated an action in Texas involving one set of parties, it should not be able to "bootstrap itself into staying there" when subsequent litigation arises involving a different set of parties. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 680657 (D.Del.)
**(Cite as: Slip Copy)**

**\*3** In short, the *Jumara* interests do not weigh in favor of transfer, and therefore, Orion's motion must be denied as to the non-SCA plaintiffs.

## *ORDER*

IT IS HEREBY ORDERED THAT:

1. Orion's motion to dismiss (D.I.11) be GRANTED in part and DENIED in part; and

2. The claims of SCA against Orion be SEVERED and DISMISSED.

D.Del.,2006.
Sony Electronics, Inc. v. Orion IP, LLC
Slip Copy, 2006 WL 680657 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 2385656 (Trial Motion, Memorandum and Affidavit) Orion Ip, Llc'S Reply Brief in Support of its Motion to Dismiss, Stay, or Transfer this Action to the Eastern District of Texas (Jul. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2385533 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, Stay or Transfer This Action to the Eastern District of Texas (Jul. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 1307841 (Trial Pleading) Complaint for Delcaratory Judgment (May 2, 2005) Original Image of this Document (PDF)
• 1:05cv00255 (Docket) (May. 02, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2005 U.S. DIST. LEXIS 5174

**SUMITO MITSUBISHI SILICON CORP., aka SUMCO, and SUMCO USA CORP., Plaintiffs, v. MEMC ELECTRONIC MATERIALS, INC., Defendant.**

**Civ. No. 04-852-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 5174*

**March 30, 2005, Decided**

**COUNSEL:** [*1] Richard D. Kirk, Esquire of Morris, James, Hitchens & Williams LLP, Wilmington, Delaware, for Plaintiffs.; Of Counsel: R. Terrence Rader, Esquire, David T. Nikaido, Esquire and Ellen A. Efros, Esquire of Rader, Rishman & Grauer PLLC, Bloomfield Hills, MI.

Patricia S. Rogowski, Esquire of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, for Defendant.; Of Counsel: Robert M. Evans, Jr., Esquire and Marc Vander Tuig, Esquire of Senniger Powers, St. Louis, Missouri.

**JUDGES:** ROBINSON, Chief Judge.

**OPINIONBY:** SUE L. ROBINSON

**OPINION:**

**MEMORANDUM OPINION**

Dated: March 30, 2005
Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On July 13, 2004, plaintiffs Sumitomo Mitsubishi Silicon Corporation and SUMCO USA Corporation (collectively "plaintiffs") filed the present action against defendant MEMC Electronic Materials, Incorporated. (D.I. 1) In response, defendant filed a motion to dismiss, transfer, or stay plaintiffs' complaint. (D.I. 10) Plaintiffs subsequently filed a first amended complaint. n1 (D.I. 14) Presently before the court is defendant's motion to dismiss, transfer, or stay plaintiffs' amended complaint. n2 (D.I. 19) For the reasons that follow, [*2] the court denies defendant's motion to dismiss or stay plaintiffs' amended complaint, but grants defendant's motion to transfer the case to the United States District Court for the Northern District of California.

n1 The amended complaint alleges defendant monopolized the low defect silicon wafer market in the United States by enforcing or threatening to enforce the "fraudulently-procured" *U.S. Patent No. 5,919,302* ("the *'302 patent*") and *United States Patent No. 6,287,380* ("the *'380 patent*"). Plaintiffs also request declaratory judgment that: (1) none of their products infringe the *'302 patent* or the *'380 patent*; (2) the *'302 patent* and the *'380 patent* are invalid for failure to comply with *35 U.S.C. §§ 101, 102, 103*, and *112*; (3) the *'302 patent* and the *'380 patent* are unenforceable under the doctrine of inequitable conduct; and (4) the *'302 patent* and the *'380 patent* are void and unenforceable because of defendant's patent misuse. (D.I. 14 at 22-26)

n2 Since plaintiff filed an amended complaint, its original complaint and all motions related to that original complaint (i.e., D.I. 10) are moot. The court will only issue a ruling on defendant's motion to dismiss, transfer, or stay plaintiffs' amended complaint. The court will consider arguments in motions related to the originally filed complaint only as they pertain to defendant's motion to dismiss, transfer, or stay the amended complaint.

[*3]

**II. BACKGROUND**

Plaintiff Sumitomo Mitsubishi Silicon Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. (D.I. 14 at 4) Plaintiff SUMCO USA Corporation is a Delaware corporation with its principal place of business in Fremont, California. (Id.)

Defendant MEMC Electronic Materials, Inc. is a Delaware corporation with its principal place of business in St. Peters, Missouri. (Id.) The parties are leading worldwide producers of electronic grade silicon wafers for the semiconductor industries. (Id.)

On December 14, 2001, defendant sued the predecessors in interest of plaintiffs n3 in the Northern District of California ("the Northern District Litigation"). (D.I. 11, ex. 2 at 5; D.I. 14 at 13; D.I. 20 at 3). On July 15, 2002, defendant filed an amended complaint which alleged that plaintiffs directly infringed and induced infringement of the *'302 patent.* n4 (D.I. 11, ex. 1)

> n3 The predecessors in interest to plaintiffs are Mitsubishi Materials Silicon Corporation, Mitsubishi Silicon America Corporation, Sumitomo Mitsubishi Silicon Corporation, SUMCO USA Corporation and SUMCO USA Sales Corporation. (D.I. 11, ex. 6) After a corporate merger in early 2002, the present plaintiffs were formed and defendant amended its complaint accordingly.

[*4]

> n4 In the Northern District Litigation, defendant attempted to expand the scope of the litigation to include another patent, the *'380 patent*, in an effort to preclude plaintiffs from arguing they had a noninfringing alternative to the *'302 patent.* (D.I. 21, ex. 13 at 9-10) Defendant's attempt to introduce the *'380 patent* was denied by the court in the Northern District Litigation. (D.I. 24 at ex. C at 4)

In the Northern District Litigation, plaintiffs asserted in their amended answer that the *'302 patent*: (1) was not infringed; (2) was invalid; and (3) was unenforceable because of alleged inequitable conduct by defendant for failure to disclose material prior art to the United States Patent Office. (D.I. 11, ex. 3 at 3-4)

At the conclusion of discovery in the Northern District Litigation, plaintiffs and defendant filed motions for summary judgment: (1) of zero damages (D.I. 11, ex. 2 at 22); (2) of invalidity of the *'302 patent* (id. at 38); (3) of noninfringement of the *'302 patent* (id. at 45); (4) that the *'302 patent* correctly listed all inventors (id. at 46); (5) that the asserted [*5] claims read on the accused wafers (id. at 47); and (6) that the *'302 patent* met the enablement requirements of *35 U.S.C. § 112* (id.). The court granted plaintiffs' motion for summary judgment of

zero damages and then struck all remaining motions for summary judgment. (Id. at 46, 51) On April 22, 2004, the court entered a final judgment of noninfringment. (Id. at 61) Defendant appealed the decision to the United States Court of Appeals for the Federal Circuit. (D.I. 21, ex. 7)

After the court entered summary judgment, plaintiffs filed a motion for attorneys' fees, claiming that defendant had commenced the Northern District Litigation without conducting an adequate pre-filing investigation and prosecuted the lawsuit without ever asserting an adequate infringement contention. (D.I. 11, ex. 4 at 2, 14, 19, 20) This motion was denied. (Id., ex. 6 at 7-11)

### III. STANDARD OF REVIEW

Under *28 U.S.C. § 1404(a)*, n5 a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended [*6] through *§ 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)*; *Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998)*.

> n5 *Title 28, Section § 1404(a)* provides:
>
>> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*. "Unless the balance is strongly in favor of a transfer, the plaintiff's choice [*7] of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001)*; *Shutte, 431 F.2d at 25.*

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,*

*997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001); Cont'l Cas. Co. v. Am. Home Assurance Co., 61 F. Supp.2d 128, 131 (D. Del. 1999).* Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).*

The Third Circuit Court of Appeals has indicated that the analysis for transfer [*8] is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterizes as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies [*9] of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

## IV. DISCUSSION

The facts of this case balance strongly in favor of transfer to the Northern District of California. The Northern District Litigation was filed before the present action. The court in the Northern District Litigation has considered and ruled on many of the issues presented by plaintiffs' amended complaint. In particular, that court has already considered briefs regarding whether the *'302 patent* was fraudulently obtained, was invalid under the doctrine of inequitable conduct, or was invalid for patent misuse. n6 Furthermore, the court has already considered

whether plaintiffs' Samsung wafer infringed the *'302 patent.* (D.I. 22, exs. 16, 17, 18, 19, 20, 21; D.I. 11, ex. 2 at 46, 61) Finally, the court was presented with several briefs addressing whether the *'302 patent* was invalid. (D.I. 22, exs. 19, 20, 21, 22) Thus, all of plaintiffs' contentions relating the *'302 patent* have already been presented to the court in the Northern District Litigation.

> n6 As plaintiffs stated in its originally filed complaint, "[a] complete discussion of [defendant's] inequitable conduct is set forth in [plaintiffs'] expert reports, which were filed in the [Northern District Litigation]." (D.I. 1 at 10)

[*10]

The *'380 patent* is very similar to the *'302 patent.* Both the *'302 patent* and the *'380 patent* issued from U.S. Patent Application Ser. No. 60/041, 845. (D.I. 14, exs. A, B) The *'302 patent* and the *'380 patent* have similar written descriptions and share many of the same figures. (Id.) Consequently, the court's experience with the *'302 patent* in the Northern District Litigation may well be helpful in resolving many of plaintiffs' arguments regarding the *'380 patent.*

The court in the Northern District Litigation has three years of experience with this litigation and has already issued several orders regarding infringement of the *'302 patent.* Its grasp of the facts and issues in connection with the *'302 patent,* together with the similarity between the *'302 patent* and the *'380 patent,* make that court a more appropriate venue for the present matter. In the interests of judicial economy and of avoiding inconsistent rulings, this court transfers the present matter to the Northern District of California.

## V. CONCLUSION

For the reasons stated above, the court denies defendant's motion to dismiss or stay this matter, but grants defendant's motion to transfer the case. An appropriate [*11] order shall issue.

## ORDER

At Wilmington this 30th day of March, 2005, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendant's motion to dismiss or to stay (D.I. 19) plaintiffs' complaint is denied.

2. Defendant's motion to transfer the present action to the Northern District of California (D.I. 19) is granted.

2005 U S  Dist  LEXIS 5174, *

United States District Judge                    SUE L. ROBINSON