IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| INTERMEC IP CORP., a Delaware corporation, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | C.A. No. 06-411-GMS |
| ALIEN TECHNOLOGY CORP., a Delaware corporation, | ) ) ) |  |
| Defendant. | ) ) |  |

**INTERMEC'S ANSWERING BRIEF IN OPPOSITION TO ALIEN'S MOTION
TO DISMISS OR STAY, OR, IN THE ALTERNATIVE, TRANSFER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  Attorneys for Plaintiff Intermec IP Corp.

OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

October 2, 2006

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                    ii

NATURE AND STAGE OF THE PROCEEDING                                                   1

SUMMARY OF ARGUMENT                                                                   1

STATEMENT OF FACTS                                                                    3

ARGUMENT                                                                             5

I.     THE NORTH DAKOTA ACTION IS NOT ENTITLED TO "FIRST-
       FILED" STATUS BECAUSE THAT COURT LACKS SUBJECT
       MATTER AND PERSONAL JURISDICTION.                                             5

       A.     The North Dakota Court Lacks Subject Matter Jurisdiction.              6

       B.     The North Dakota Court Lacks Personal Jurisdiction.                    9

II.    THE FIRST-FILED PRESUMPTION IS INAPPLICABLE BECAUSE
       THIS CASE INVOLVES DIFFERENT PATENTS THAN THOSE IN
       THE NORTH DAKOTA ACTION.                                                      11

III.   THERE IS NO BASIS FOR TRANSFER TO NORTH DAKOTA.                               13

       A.     The Private Interest Factors Require Denial Of Alien's Motion To
              Transfer.                                                              14

       B.     The Public Interest Factors Require Denial Of Alien's Motion To
              Transfer.                                                              17

CONCLUSION                                                                           20

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

<u>Cases</u>

*American Needle & Novelty, Co. v. Schuessler Knitting Mills*,
    379 F.2d 376 (7th Cir. 1967)            9

*Angiodynamics, Inc. v. Diomed Holdings, Inc.*,
    C.A. No. 06-02-GMS (D. Del. Sept. 7, 2006)       9

*Antonius v. Spalding*,
    275 F.3d 1066 (Fed. Cir. 2002)           9

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
    295 F. Supp. 2d 393 (D. Del. 2002)        14

*BP Chemicals Ltd. v. Union Carbide Corp.*,
    4 F.3d 975 (Fed. Cir. 1993)            7

*Burger King v. Rudzewicz*,
    471 U.S. 462 (1985)              12

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800, 96 S.Ct. 1236,
    47 L.Ed.2d 483 (1976)            13

*Genentech, Inc. v. Eli Lilly and Company*,
    998 F.2d 931 (Fed. Cir. 1993)        5, 6, 10

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
    466 U.S. 408 (1984)              12

*Intermec IP Corp. v. Symbol Technologies, Inc.*,
    C.A. No. 04-357-GMS             7

*Jones Pharma, Inc. v. KV Pharmaceutical Co.*,
    C.A. No. 03-786 JJF, 2004 WL 323109
    (D. Del. Feb. 17, 2004)           24

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)         17, 18

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989)           6

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*,
    342 U.S. 180 (1952)    6, 13

*KVH Indus., Inc. v. Moore*,
    789 F. Supp. 69 (D.R.I. 1992)    13

*Laboratory Corp. of Amer. Hldgs. v. Chiron Corp.*,
    384 F.3d 1326 (Fed. Cir. 2004)    14, 15

*McPherson's Ltd. v. Never Dull, Inc.*,
    960 F.2d 156, 1992 WL 52140
    (Fed. Cir. 1992)    10

*Nilssen v. Osram Sylvania, Inc.*,
    C.A. No. 00-695-JJF, 2001 WL 34368395
    (D. Del. May 1, 2001)    22

*Nobelpharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998)    9

*Northpole US, LLC v. Price*,
    No. 4:06CV0148 TCM, 2006 WL 1520641
    (E.D. Mo. May 31, 2006)    11, 12

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998)    11, 12

*Serco Service Co., L.P. v. Kelley Company, Inc.*,
    51 F.3d 1037 (Fed. Cir. 1995)    7

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)    18

*Smith v. Securities and Exchange Comm'n*,
    129 F.3d 356 (6th Cir. 1997)    14

*SRI Int'l, Inc. v. Internet Security Systems, Inc.*,
    C.A. No. 04-1199-SLR, 2005 WL 851126
    (D. Del. Apr. 13, 2005)    19

*SRU Biosystems, Inc. v. Hobbs*,
    C.A. No. 05-201-SLR, 2005 WL 2216889
    (D. Del. Sept. 13, 2005)    19, 20, 21

*Stratos Lightwave, Inc. v. E20 Communications, Inc.*,
    C.A. No. 01-309-JJF, 2002 WL 500920
    (D. Del. Mar. 26, 2002)    18, 24

*Textron Innovations, Inc. v. The Toro Co.*,
 C.A. No. 05-486-GMS, 2005 WL 2620196, (D. Del. Oct. 14,
 2005)    17, 18, 19

*Thales Airborne Systems S.A.  v. Universal Avionics Systems, Corp.*,
 2006 WL 1749399, C.A. No. 05-853-SLR
 (D. Del. June 21, 2006)    14, 15, 16

*Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.*,
 C.A. No. 05-816-SLR, 2006 WL 1653143
 (D. Del. June 15, 2006)    18, 20, 21, 25

*World-Wide Volkswagen v. Woodson*,
 444 U.S. 286, 100 S.Ct. 559 (1980)    11

<u>Other Authorities</u>

28 U.S.C. § 1404(a)    13

FED. R. CIV. P. 11    8

MCCARTHY ON TRADEMARKS, § 32:46 (4th Ed. 2006)    6

## NATURE AND STAGE OF THE PROCEEDING

Intermec IP Corp. ("IIP") filed this patent infringement action on June 29, 2006 (D.I. 1).  On August 18, 2006, Alien moved to dismiss or transfer. (D.I. 9.)  This is IIP's answering brief in opposition to that motion.

## SUMMARY OF ARGUMENT

Alien's Motion to Dismiss or Stay, or, in the Alternative, Transfer (D.I. 9) is based primarily on the argument that the United States District Court for the District of North Dakota must hear all disputes between the parties – despite its lack of subject matter and personal jurisdiction – because the declaratory judgment action before it was filed first.  The "first-filed" presumption does not apply here, however, because the North Dakota court lacks subject matter and personal jurisdiction.

On June 1, 2006, Alien filed a declaratory judgment action (*Alien Technology Corp. v. Intermec, Inc. and Intermec IP Corp.*, Case No. 3:06-cv-51 (D.N.D. 2006)) (the "North Dakota Action") against IIP and Intermec, Inc. ("Intermec"), asking the court to declare that ten of the hundreds of patents owned by IIP were invalid or, in the alternative, that Alien's products did not infringe those patents.  Alien's Complaint in the North Dakota Action, however, ignored the fact that no statements had been made that could give Alien an objectively reasonable apprehension of suit.  The North Dakota Complaint also ignored the fact that neither IIP nor Intermec did any business in North Dakota (Intermec is a holding company and IIP – a subsidiary of a subsidiary of Intermec – is a company whose sole business is to own, license and enforce patents).

On June 16, 2006, Alien attempted to overcome its personal-jurisdiction defects by amending its North Dakota Complaint to include Intermec Technology Corporation ("ITC")

(Intermec, IIP and ITC are referred to collectively as the "Intermec Companies"). Although ITC manufactures and sells products, the addition of ITC as a defendant in the North Dakota Complaint did not cure the lack of subject matter and personal jurisdiction in North Dakota. On June 29, 2006, the Intermec Companies moved to dismiss the North Dakota Action.[1] That same day, IIP filed its Complaint in this case, alleging that specified Alien products infringe ten IIP patents. Of the ten patents at issue here, only six were the subject of Alien's premature North Dakota Complaint. This case unquestionably is the first-filed action as to the four patents that are only at issue in this case. Thus, the first-filed presumption – even if invoked – would actually produce the result of this Court keeping jurisdiction over, at least, the four additional patents asserted in this case. In any event, because the North Dakota Court lacks subject matter and personal jurisdiction, this Court should not apply the first-filed presumption against IIP.

Alien argues in the alternative that even if the North Dakota Court does lack either subject matter or personal jurisdiction over the Intermec Companies, this case should be transferred there because North Dakota is a more convenient forum. There is simply no basis for that argument. North Dakota is not a more convenient forum. Alien is a Delaware corporation with its principal place of business in Morgan Hill, California. IIP is also a Delaware corporation with its principal place of business in Henderson, Nevada and has no operations in North Dakota.

---

[1]    According to the briefing schedule in place for the Intermec Companies' Motion to Dismiss, all briefing on the Motion should be completed in less than three weeks, and IIP anticipates that the North Dakota court will rule shortly thereafter.

<u>STATEMENT OF FACTS</u>

Defendant, Alien, is incorporated in Delaware and has its principal place of business in Morgan Hill, California.  *See* Alien's First Amended Complaint for Declaratory Judgment ("Alien's North Dakota Compl."), attached to the Declaration of Matthew J. Kramer ("Kramer Decl.") as Exhibit A, at ¶ 2.  Alien "is a manufacturer of Radio Frequency Identification ("RFID") products . . . ."  *Id.*  Plaintiff Intermec IP Corp. ("IIP") is incorporated under the laws of Delaware and has its headquarters in Henderson, Nevada.  *See* Declaration of Kenneth Cohen ("Cohen Decl."), attached to Kramer Decl. as Exhibit B, at ¶¶ 8, 15.  IIP owns the RFID patents-in-suit.  *Id.* at ¶¶ 16, 22.  IIP's sole business is to own patents, enforce them, and collect royalties.  *Id.* at ¶ 16.  IIP has no offices or employees in North Dakota, and it has never paid taxes or filed suit in that state.  *Id.* at ¶¶ 18, 20, 21.

During an Intermec analyst call on May 8, 2006, Intermec's Senior Vice President, Steve Winter, was asked the following question and gave the following answer:

**<u>Question</u>**

\*     \*     \*

One question on RFID and royalty revenues on a go-forward basis. You have a number of non-licensed companies out there selling products, some of which are winning large size contracts.  How long can you wait before needing to step in and enforce the Rapid Start program?

**<u>Answer</u>**

\*     \*     \*

It's obviously disappointing if any customer were to do business with a supplier that is not licensed.  But you know, we have consistently stated we will be pursuing infringers.  We are putting together cases.  We are looking at those who are most disruptive to the industry right now.  And basically, preparations are underway with respect to unlicensed suppliers like Alien and others.  And we

> expect those enforcement actions by the end of the year, or within
> this year.

Transcript of the Intermec, Inc. Earning Conference Call, Dated May 8, 2006 ("Earnings Call

Tr."), attached to Kramer Decl. as Exhibit C, at pp. 11-12.  Later in the call, in response to

another question, Intermec's Chairman and Chief Executive Officer, Larry Brady added:

> ### Question
>
> In terms of the fact that you mentioned on this call that you might
> be taking some legal action against folks that have not been signed
> up so far for Rapid Start at some point during the year, could you
> give us some color as to what potential impact on your SG&A line
> could be of taking such action, or whether similar to the
> (indiscernible) settlements you might have it not impacting your
> expense line in the near-term?
>
> ### Answer
>
> *       *       *
>
> I think given the circumstances that we are currently looking at –
> that is, the amazing propensity of people to take business well
> below cost, and the amazing publicity which such actions receive –
> that we are apt to move in advance of where we would have
> originally intended.  And indeed, the limitation on when we will
> take action now is more related to just the [wickets] that we have
> to go through – that is, [get the] product, and disassemble the
> product and understand that infringement is occurring.  Because
> we've got a certain obligation, before we can just go out and willy
> nilly start filing lawsuits, to demonstrate that there's a cause of
> action.  So that is the path that we are currently on.

*Id.* at pp. 15-16.  The statements of Mr. Winter and Mr. Brady were made in the State of

Washington.  Cohen Decl. (Kramer Decl. Ex. B) at ¶ 7.  As of June 1, 2006, these are the only

public statements of which IIP is aware that were made by any of the Intermec Companies

concerning the investigation of a possible suit for patent infringement against Alien.  *Id.*

On June 1, 2006, Alien filed the North Dakota Complaint seeking a declaratory

judgment that its products do not infringe certain IIP patents.  Alien's North Dakota Compl.

(Kramer Decl. Ex. A) at 1.  Alien's North Dakota Complaint does not indicate which Alien products are purportedly accused to be infringing, nor does it include any allegation that Intermec has accused Alien of infringing any specific patents-in-suit.  *See generally id.*

On June 29, 2006, the Intermec Companies filed a Motion to Dismiss the North Dakota Complaint for lack of subject matter and personal jurisdiction.  *See* Intermec's Motion to Dismiss and supporting Memoranda, attached to Kramer Decl. as Exhibit D.  That same day, IIP filed its Complaint in this case, alleging that Alien's RFID Reader, ALR-9800, and its RFID Tags, ALL-9440 "Gen2 Squiggle™" and ALL-9460 "Omni-Squiggle™" (the "Accused Products") infringe ten patents owned by IIP (D.I. 1).  Of the ten patents at issue here, six were the subject of Alien's premature North Dakota declaratory-judgment action.  The other four patents – U.S. Patent Nos. 5,528,222, 5,828,318, 6,286,762 and 6,812,852 – are only referenced in this action.  *Id.*[2]

On June 29, 2006, Alien filed its motion to dismiss, stay, or transfer this action (D.I. 9).

## ARGUMENT

I.    THE NORTH DAKOTA ACTION IS NOT ENTITLED TO "FIRST-FILED" STATUS BECAUSE THAT COURT LACKS SUBJECT MATTER AND PERSONAL JURISDICTION.

Application of the presumption that the court should favor the first-filed of two co-pending cases between the same parties is entirely discretionary.  *Genentech, Inc. v. Eli Lilly and Company*, 998 F.2d 931, 938 (Fed. Cir. 1993), *citing Kerotest Manufacturing Co. v. C-O-*

---

[2]    Three of the patents asserted here – U.S. Patent Nos. 5,995,019, 5,912,632, and 5,528,222 – were the subject of a previous infringement action in this Court, *Intermec IP Corp. v. Symbol Technologies, Inc.*, C.A. No. 04-357-GMS.

*Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952); *see also* McCarthy on Trademarks, § 32:46 (4th Ed. 2006). The first-filed presumption permits the courts, under certain circumstances, to favor the forum of a first-filed action. *Genentech*, 998 F.2d at 937. "Exceptions, however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Id.*, citing *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-83 (Fed. Cir. 1989).

Here, it would be unjust and inefficient to apply the first-filed presumption and dismiss, stay, or transfer this case because the North Dakota Court lacks both subject matter jurisdiction over Alien's claim and personal jurisdiction over IIP – the plaintiff here. *See id.* (". . . sound reason that would make it unjust or inefficient to continue with the first-filed action . . . [where there is an] absence of jurisdiction over all necessary or desirable parties . . ."). Because Alien lacked an objectively reasonable apprehension of suit sufficient to give it basis for a declaratory judgment action when it filed the North Dakota Complaint, the North Dakota Court lacks subject matter jurisdiction. The North Dakota Court also lacks both general and specific personal jurisdiction over IIP and all of the other Intermec Companies. In contrast to the District of North Dakota, this Court is located in the state where both Alien and IIP are incorporated and it has previously dealt with some of the patents involved in this case. *Intermec IP Corp. v. Symbol Technologies, Inc.*, C.A. No. 04-357-GMS.

A.    The North Dakota Court Lacks Subject Matter Jurisdiction.

The North Dakota Court lacks subject matter jurisdiction because there is no actual case or controversy. In the absence of subject matter jurisdiction, it would be unjust and inefficient to dismiss this case in favor of the North Dakota Action. *See Serco Service Co., L.P. v. Kelley Company, Inc.*, 51 F.3d 1037 (Fed. Cir. 1995) (affirming district court's refusal to

maintain first-filed action where declaratory judgment action was anticipatory of a patent infringement action and convenience of the parties was not served in first-filed venue). For there to be an actual case or controversy, as of the date of the North Dakota Complaint, there must have been an explicit threat or other action by Intermec that created an objectively reasonable apprehension on Alien's part that it was about to be sued for patent infringement. *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993).

Alien argues that "[i]n May 2006, the Intermec Defendants threatened to sue Alien for patent infringement." D.I. 10 at 4, *citing* Siegal Decl., Ex. B (Alien's Amended Complaint in the North Dakota Action). That statement is based on a single, conclusory allegation that Intermec "threaten[ed] to sue Alien for patent infringement . . ." on May 8, 2006 (D.I. 13, Ex. B at ¶¶ 1, 20, 26, 32, 38, 44, 50, 56, 62, 68, and 74). The only possibly-relevant event that occurred in May 2006, however, was an Earnings Call in which Intermec executives gave a statement and answered questions posed by a group of financial analysts. *See generally* Earnings Call Trans. (Kramer Decl. Ex. C). Possible infringers like Alien were mentioned only twice during the Earnings Call, and no reasonable person could conclude from those comments that a patent infringement lawsuit against Alien was imminent.

During the question-and-answer portion of the Earnings Call, Steve Winter, President and COO of Intermec, gave the following answer regarding potential patent infringement actions:

> But you know, we have consistently stated we will be pursuing infringers. We are putting together cases. We are looking at those who are most disruptive to the industry right now. And basically, preparations are underway with respect to unlicensed suppliers like Alien and others. And we expect those enforcement actions by the end of the year, or within this year.

Earnings Call Tr. (Kramer Decl. Ex. C) at p. 12.  Later in the Earnings Call, Larry Brady,

President, Chairman and CEO of Intermec, explained the "preparations" that were underway:

> I think given the circumstances that we are currently looking at –
> that is, the amazing propensity of people to take business well
> below cost, and the amazing publicity which such actions receive –
> that we are apt to move in advance of where we would have
> originally intended.  ***And indeed, the limitation on when we will
> take action now is more related to just the [wickets] that we have
> to go through -- that is, [get the] product, and disassemble the
> product and understand that infringement is occurring.  Because
> we've got a certain obligation, before we just go out and willy
> nilly start filing lawsuits, to demonstrate that there's cause of
> action.***  So that is the path that we are currently on.

*Id.* at p. 16 (emphasis added).

These are not the type of statements that give rise to an objectively reasonable

apprehension of suit.  *See Angiodynamics, Inc. v. Diomed Holdings, Inc.*, C.A. No. 06-02-GMS,

(D.I. 18) at 9-10 (D. Del. Sept. 7, 2006) (Attached to Kramer Decl. as Exhibit I) (holding

statements during an earnings call insufficient to create a reasonable apprehension of suit);

*Cygnus Therapeutics Systems v. Alza Corp.*, 92 F.3d 1153, 1160 (Fed. Cir. 1996), *overruled on*

*other grounds, Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir.

1998) (same).  The only conclusion that could be drawn from those comments is that Intermec

had undertaken an investigation of RFID products sold by Alien and other unlicensed companies.

*See, e.g., Antonius v. Spalding*, 275 F.3d 1066 (Fed. Cir. 2002) (a pre-filing investigation and

determination of infringement is required under FED. R. CIV. P. 11).  Disclosure of an

investigation that is not yet complete and which includes no statement of the results of the

investigation is not a threat of suit sufficient to sustain a declaratory judgment action.  *American*

*Needle & Novelty, Co. v. Schuessler Knitting Mills*, 379 F.2d 376, 379 (7th Cir. 1967) (the

patentee "should have the privilege of making a fair investigation as to the possible infringement

of his patent without calling down on his head . . . [a] declaratory judgment suit . . .").

Interestingly, Alien did not and cannot state in its North Dakota Complaint, or its motion here, that any of the Intermec Companies ever identified any specific patent or product as to which they "threatened" to sue Alien. *See* D.I. 10 at 4. And there can be no actual case or controversy in North Dakota where no specific product or patent was ever identified. *McPherson's Ltd. v. Never Dull, Inc.*, 960 F.2d 156, 1992 WL 52140 (Fed. Cir. 1992) (upholding dismissal of declaratory judgment action for failing to identify specific products supposedly accused of infringement). In the absence of a specific threat of suit in any communication directed to Alien, there cannot be any basis for a declaratory judgment action against IIP. Because the North Dakota Court lacks subject matter jurisdiction, the North Dakota Action is not entitled to "first-filed" status, and its existence cannot support the dismissal, stay, or transfer of this case.

### B.    The North Dakota Court Lacks Personal Jurisdiction.

The North Dakota Action is also not entitled to first-filed status because the North Dakota court lacks personal jurisdiction over the defendants there, including IIP – the plaintiff here and the only Intermec entity involved in this case. *Genentech*, 988 F.2d at 938. Personal jurisdiction requires a showing of constitutionally-sufficient minimum contacts with the chosen jurisdiction. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358-59 (Fed. Cir. 1998), *citing World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980) (jurisdiction in a patent infringement declaratory judgment action is controlled by Federal Circuit precedent; defendant must have sufficient "minimum contacts" "such that [it] should reasonably anticipate being haled into" the particular district court).

The minimum-contacts test is met where there is either general jurisdiction or specific jurisdiction over the defendant. *Northpole US, LLC v. Price*, No. 4:06CV0148 TCM,

2006 WL 1520641, at *3 (E.D. Mo. May 31, 2006), *citing Red Wing Shoe*, 148 F.3d at 1359.

General jurisdiction refers to situations where the defendant purposefully directs activities at

residents of the forum. *Id.* In such cases, a defendant whose contacts with the forum are

continuous and systematic may be subject to jurisdiction even though the cause of action is

unrelated to the defendant's contacts with the forum. *Red Wing Shoe*, 148 F.3d at 1359, *citing*

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Specific

jurisdiction, by contrast, refers to situations where the cause of action arises out of, or is directly

related to, a defendant's activities in the forum. *Red Wing Shoe*, 148 F.3d at 1359, *citing Burger*

*King v. Rudzewicz*, 471 U.S. 462, 476 (1985). Regardless of whether a plaintiff alleges general

or specific jurisdiction, random, fortuitous or attenuated contacts are not properly considered, nor

are contacts resulting from unilateral activity of persons other than the defendant. *Northpole*,

2006 WL 1520641, at *3.

      The North Dakota Court does not have general jurisdiction over IIP because IIP

does not make, sell or provide any products, systems or services to residents of North Dakota or

any other jurisdiction. Cohen Decl. (Kramer Decl. Ex. B) at ¶¶ 16, 17. IIP's only business is

owning patents, enforcing them, and collecting royalties from patent licensees. *Id.* at ¶ 16. IIP

has no offices or other assets, employees or agents in North Dakota, and has never paid taxes or

filed suit in that state. *Id.* at ¶¶ 18, 20, 21.

      The North Dakota Court also does not have specific jurisdiction over IIP. Alien's

North Dakota Action arises out of a threat supposedly made on May 8, 2006 to file a patent

infringement action. Not only was there no threat, but even if there had been one, it could only

give rise to specific jurisdiction in North Dakota if the threat was to file a patent infringement

action in the State of North Dakota. *KVH Indus., Inc. v. Moore*, 789 F. Supp. 69, 71-2 (D.R.I.

1992).  Nothing was said during the May 8, 2006 Earnings Call that could be interpreted as a

threat to file a patent infringement lawsuit against Alien in North Dakota.  *See generally*

Earnings Call Tr. (Kramer Decl. Ex. C).  In fact, there was not a single reference to North

Dakota during the Earnings Call.  *Id.*  Moreover, contrary to Alien's unfounded allegations in its

North Dakota Complaint and again in its Opening Brief here, no Intermec entity has sold or

shipped any RFID product to North Dakota.  Because the North Dakota Court lacks personal

jurisdiction over IIP, the North Dakota Action is not entitled to first-filed status and does not

provide a basis for dismissing, staying, or transferring this suit.

II.    THE  FIRST-FILED  PRESUMPTION  IS  INAPPLICABLE
       BECAUSE  THIS  CASE  INVOLVES  DIFFERENT  PATENTS
       THAN THOSE IN THE NORTH DAKOTA ACTION.

For  the  first-filed  presumption  to  apply,  the  two  co-pending  suits  must  be

"duplicative" or a "single suit."  *Colorado River Water Conservation Dist. v. United States,* 424

U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) ("As between federal district courts

. . . the general principle is to avoid duplicative litigation"), *citing Kerotest*, 324 U.S. at 184

(commenting  that  the  two  actions  were  "a  single  suit").   *See also Smith v. Securities and

Exchange Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997) (the two actions must be "materially on all

fours with the other" and must have an identity of issues such "that a determination in one action

leaves little or nothing to be determined in the other").  This requirement cannot apply where, as

here, the two actions involve different patents-in-suit.

In  patent cases, the first-filed presumption has been held to apply only where the

two actions involve the "same set of facts" and to not apply to cases, like this one, involving

different patents.  *Thales Airborne Systems S.A.  v. Universal Avionics Systems, Corp.*, 2006 WL

1749399, C.A. No. 05-853-SLR (D. Del. June 21, 2006) (refusing to apply the first-filed rule to

patents that were included in a Delaware action and not another co-pending action); *APV North America, Inc. v. Sig Simonazzi North America, Inc.*, 295 F. Supp. 2d 393, 397 (D. Del. 2002). *See also Laboratory Corp. of Amer. Hldgs. v. Chiron Corp.*, 384 F.3d 1326, 1328 (Fed. Cir. 2004) ("For clarity, when we speak of 'parallel actions,' we are referring to co-pending patent infringement and declaratory judgment actions involving the *same patents* and the same parties." (Emphasis added)).

In *Thales*, this Court dealt with a motion to dismiss a second-filed suit that included patents that were not part of the first-filed suit.  Thales sued Universal in this Court for infringement of two patents.  About an hour later, Universal sued Thales for a declaratory judgment in New Jersey on those same two patents, as well as two others.  The patents in both cases involved the same terrain awareness and warning systems ("TAWS") technology. Universal moved to transfer the Delaware action to New Jersey, and Thales moved to enjoin Universal's New Jersey action based on the first-filed rule.  This Court held that it would not apply the first-filed rule with regard to the patents that had been raised only in the New Jersey action, but would enjoin Universal from pursuing the New Jersey action to the extent it involved the patents that were first-filed in Delaware.  The court stated that ". . . while the Federal Circuit has a strong preference for adhering to the first-filed rule, its application seems limited to actions 'involving the *same* patents.'"  *Id.*, *citing Laboratory Corp. of Amer. Hldgs. v. Chiron Corp.*, 384 F.3d 1326, 1328 (Fed. Cir. 2004) (emphasis added).

In its Complaint in this action, IIP alleges that Alien has infringed ten patents (D.I. 1).  Although Alien has sought a declaratory judgment on six of those patents in the North

Dakota Action, four of the patents at issue here were not raised in Alien's complaint.[3]  This Court has held, under strikingly similar circumstances, that, at a minimum, litigation should proceed here with regard to the patents that were first-filed in this Court.  *See Thales*, 2006 WL 1749399 (refusing to apply the first-filed presumption to patents that were included in a Delaware action and not another co-pending action).

In apparent anticipation of this argument, Alien claims only that the patents in both cases pertain to "RFID-related technology."  Critically, Alien admits that the '318, '762 and '852 patents only involve "the same ***general*** technology" as the patents-in-suit in North Dakota, and that the '222 patent is "admittedly slightly different" than the remaining patents.  Such a showing is not good enough.  The patents in *Thales* also involved the same general technology, yet the court ruled in favor of the party in IIP's position here.

Thus, the first-filed presumption is inapplicable in this case because the two actions are different, not duplicative.  This action is the first-filed, at least as to the four IIP patents only asserted in this action.

III.     THERE IS NO BASIS FOR TRANSFER TO NORTH DAKOTA.

In determining whether to transfer pursuant to 28 U.S.C. § 1404(a), district courts in the Third Circuit must consider the following factors:

> [Private interest factors:] (1) plaintiff's forum preference as
> manifested in the original choice; (2) defendant's preference;
> (3) whether the claim arose elsewhere; (4) the convenience to the
> parties as indicated by their relative physical and financial
> condition; (5) the convenience of the witnesses but only to the
> extent that the witnesses may actually be unavailable for trial in

---

[3]     The fact that Alien did not raise these four patents in the North Dakota Action underscores that Alien did not have a reasonable apprehension of being sued by IIP because Alien failed to include the patents that IIP has sued on here.

one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

[Public interest factors:] (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  It is the movant's burden to establish the need to transfer and the plaintiff's choice of venue will not be lightly disturbed.

*Textron Innovations, Inc. v. The Toro Co.*, C.A. No. 05-486-GMS, 2005 WL 2620196, *1 (D. Del. Oct. 14, 2005).  And "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should prevail."  *Id.*, *quoting Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

        A.      The Private Interest Factors Require Denial Of Alien's Motion To Transfer.

           1.      As A Delaware Corporation, Alien Cannot Claim Delaware Is An Inappropriate Forum.

The first private interest factor is the plaintiff's choice of forum.  *Jumara*, 55 F.3d at 879.  Particularly in a case where the plaintiff has sued in its state of incorporation, a court cannot disregard a plaintiff's choice of forum where it has a rational and legitimate reason for its choice.  *Textron*, 2005 WL 2620196, *2.  This Court has consistently held that a defendant's incorporation in Delaware is a rational and legitimate reason for a plaintiff to choose to sue here. *Id.*, *citing Stratos Lightwave, Inc. v. E20 Communications, Inc.*, C.A. No. 01-309-JJF, 2002 WL 500920, at *2 (D. Del. Mar. 26, 2002); *see also Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.*, C.A. No. 05-816-SLR, 2006 WL 1653143, *3 (D. Del. June 15, 2006) (denying

motion to transfer by Delaware corporation with principal place of business in California, stating "defendant's complaints about litigating here are outweighed by the fact that [it] has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction"); *SRU Biosystems, Inc. v. Hobbs*, C.A. No. 05-201-SLR, 2005 WL 2216889, *3 (D. Del. Sept. 13, 2005) (denying Delaware corporation's motion to transfer of Delaware corporation); *SRI Int'l, Inc. v. Internet Security Systems, Inc.*, C.A. No. 04-1199-SLR, 2005 WL 851126, *5 (D. Del. Apr. 13, 2005) (same). Because IIP and Alien are both incorporated in Delaware, this case should remain in Delaware.

> 2. The Convenience Of Witnesses And The Location Of Books And Records Do Not Provide Any Basis For Transfer In This Matter.

Alien also ignores that it carries the burden of persuading this Court that the "balance of convenience **strongly** favors a transfer." *Textron*, 2005 WL 2620196, at *1 (emphasis added). Instead, it argues generally that Delaware would be inconvenient to witnesses, and that it would suffer an "undue expense" in producing books and records in Delaware. This Court has addressed the issues in several recent cases and almost uniformly held that "discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial." *Turn of the Century*, 2006 WL 1653143, at *3; *SRU Biosystems*, 2005 WL 2216889, at *3. Despite this Court's pragmatic approach to the issues of documents and witnesses, Alien still claims that these factors weigh in favor of transfer to North Dakota. But, Alien fails to identify a single witness located in North Dakota who may be called to testify in this case (D.I. 10 at 14). Moreover, Alien has failed to identify a single witness who would be inconvenienced by proceeding with this action in

Delaware. *Id.* In the absence of any facts establishing that any witness would be unavailable for trial, the Court cannot weigh the location of the witnesses or the location of books and records in favor of transfer.

Alien's physical and financial condition do not change the fact that it has chosen to enjoy the benefits and protections of incorporation in Delaware and it cannot claim that Delaware is an inappropriate forum. Alien not only has "assets of about $84 million," but is venture-backed with $200 million of capital. *See* Printout from "About Us" Section of Alien's Corporate Website, attached to Kramer Decl. as Exhibit E. Moreover, Alien is a global company with sales offices in the U.S., Europe, and Asia. *Id.* Alien is headquartered in Morgan Hill, California, but operates facilities in Fargo, North Dakota and Dayton, Ohio. *Id.* Such an international company does not stand to be significantly inconvenienced by proceeding with litigation in Delaware. *See Turn of the Century*, 2006 WL 1653143 at *3 ("travel expenses and inconveniences incurred . . . by a Delaware defendant conducting world-wide business is not overly burdensome"). Moreover, Delaware courts repeatedly point out that discovery can occur anywhere, and that, in all likelihood, the only time anyone other than a party's attorneys will need to travel to Delaware is for trial. *Turn of the Century*, 2006 WL 1653143, at *3; *SRU Biosystems*, 2005 WL 2216889, at *3. Thus, Alien's arguments that it will be burdened more than Intermec do not provide a basis for transfer.

Even assuming that a global company like Alien could claim substantial inconvenience in proceeding with litigation in its state of incorporation, the facts do not bear out Alien's claim of inconvenience in proceeding with litigation in Delaware as opposed to Fargo, North Dakota. For example, comparing costs of air transportation, a one-stop, coach ticket from San Jose, California (the nearest airport to Alien's Morgan Hill, California headquarters) to

Philadelphia, purchased either one day or fourteen days before travel, costs between $218 and $359.  *See* Declaration of David S. Becker, attached to Kramer Decl. as Exhibit F.  A similar ticket from San Jose to Fargo, North Dakota costs between $931 and $1,013.  *Id.*  Taking into account time-zone changes, the travel times only differ by approximately two or three hours and neither venue would permit individual witnesses and party representatives to travel to either location and arrive in time to participate in a court proceeding during regular business hours on the same day.

For IIP's part, there is no convenience whatsoever in North Dakota.  As set forth above, it has no employees, facilities, documents, business, or other connections there.  Indeed, it is not even subject to jurisdiction in North Dakota.

B.      The Public Interest Factors Require Denial Of Alien's
        Motion To Transfer.

        1.      Any Judgment Entered By This Court Would Be
                Enforceable.

Because there is nothing that would prevent enforceability of a judgment entered by this Court in this case, Alien attempts to change the facts of the case.  Contrary to Alien's argument, *Nilssen v. Osram Sylvania, Inc.*, C.A. No. 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001), is inapposite.  That case was decided based on the fact that "[i]n the [co-pending] cases, *Markman* ruling[s] have already been issued and case dispositive motions have already been filed."  *Id.* at *4.  This is not the case here.  Both this action and the North Dakota Action are at the most preliminary stages.  Briefing and discovery have only occurred as to preliminary issues relating to jurisdiction and venue.  The issue of enforceability of a judgment does not play any role here.

2.    **Practical Considerations Favor Retaining This Case In Delaware.**

In arguing that practical considerations favor transfer, Alien incorrectly assumes, as it does throughout its brief, that the North Dakota Court has jurisdiction over the subject matter and parties in that case. As argued above, this assumption is wrong, and this action should be considered the first filed. *See supra* at § I. This applies equally to any suggestion that interests of judicial economy could be served by joining these claims in the North Dakota Action. No economy will be achieved because the parties cannot be joined in the North Dakota Action.

Even if jurisdiction were appropriate in the District of North Dakota, there would be no reason to transfer this case. This Court has previously dealt with three of the patents asserted in this action in a prior case. Aside from that specific experience, this Court has significant experience dealing with complex patent disputes, whereas the District of North Dakota rarely considers patent infringement cases. To date in 2006, ninety-one (91) patent cases have been filed in this Court. *See* Kramer Decl. at 11. In noticeable contrast, a total of two patent cases have been filed in the District of North Dakota in 2006 – Alien's and one other. *Id.* at 10.

3.    **Administrative Difficulty Provides No Basis For Transfer.**

Alien also attempts to argue that the parties will benefit from proceeding in North Dakota where there are fewer cases and a faster docket. However, the statistics regarding the speed of North Dakota's dockets do not support a conclusion that a trial would occur significantly more rapidly in North Dakota than in Delaware. The only statistic that provides a basis for comparison is the time to trial. Accepting the statistics cited by Alien, the median time

to trial is 10.9 months in Delaware and 7.3 months in North Dakota – a difference of 3.6 months.

The difference is not substantial, especially considering that these are only median figures (some

cases still take longer and others proceed to trial more rapidly).   Those statistics have little

significance in this case.   This case involves ten patents and three products.   Each of the patents

has numerous inventors and the parties have not even begun to determine how many others will

need to be deposed and what documents will be sought in discovery.   This case involves

complex technology and expert testimony will be required.   Taking all of these factors into

account, it would be extremely difficult to prepare this case for trial in either 7.3 or 10.9 months.

If anything can be drawn from these numbers, it is that Alien's argument that this Court's

"congestion" should support transfer is misplaced.   Each judge in this Court handles nearly three

times as many cases as the judges in the North Dakota Court – including scores of patent cases –

and this court still manages to achieve a reasonably-prompt median time to trial.   The parties

stand to benefit from the efficiency and additional patent-infringement experience of this Court.

The statistics cited by Alien do not support the motion to transfer.

4.    The Local Interest In Deciding Local Controversies
Favors Keeping This Case In The District Of
Delaware.

Alien argues that this case should be transferred to the District of North Dakota

because "Delaware has no unique interest in this controversy.   North Dakota does" (D.I. 10

at 12).   That statement ignores the case law in this district.   Patent infringement cases are not

local or state matters and cannot give rise to a local controversy or implicate local interests.

*Jones Pharma, Inc. v. KV Pharmaceutical Co.*, C.A. No. 03-786 JJF, 2004 WL 323109, *3

(D. Del. Feb. 17, 2004); *citing Stratos*, 2002 WL 500920 at *2.   Moreover, Delaware does, in

fact, have significant and unique interests in this matter.   Both IIP and Alien are corporations

organized under the laws of the State of Delaware, and "the state has an interest in litigation regarding companies incorporated within its jurisdiction." *Turn of the Century*, 2006 WL 1653143, at *3.

<u>CONCLUSION</u>

For the foregoing reasons, Alien's Motion to Dismiss or Stay, or, in the Alternative, Transfer should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
 Attorneys for Plaintiff Intermec IP Corp.


OF COUNSEL:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob Koering
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

October 2, 2006

539600

## <u>CERTIFICATE OF SERVICE</u>

I, Rodger D. Smith II, hereby certify that on October 2, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell, III
> RICHARDS, LAYTON & FINGER

I also certify that copies were caused to be served on October 2, 2006 upon the following in the manner indicated:

### <u>BY HAND</u>

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

### <u>BY FEDERAL EXPRESS</u>

Gregory P. Stone
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560


*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
rsmith@mnat.com