# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

CHAD M. SHANDLER
DIRECTOR

DIRECT DIAL NUMBER
302-651-7836
SHANDLER@RLF.COM

January 5, 2007

**BY ELECTRONIC FILING AND HAND DELIVERY**

The Honorable Gregory M. Sleet
United States District Court for
 the District of Delaware
844 King Street
Wilmington, Delaware 19801

    Re: **Intermec IP Corp. v. Alien Technology Corp.,
      C.A. No. 06-411-GMS**

Dear Judge Sleet:

    I submit this brief letter on behalf of defendant Alien Technology Corp. ("Alien"). Pending before Your Honor in the above matter is Alien's Motion to Dismiss or Stay, or, in the Alternative, Transfer (D.I. 9, 10). Alien's motion is based on the existence of an overlapping case previously filed by Alien in the United States District Court for the District of North Dakota. The North Dakota case involves six of the same patents that are in the present case. The other four patents in the present case relate to the same technology that is at issue in North Dakota.

    The plaintiff in this action, Intermec IP, and two related entities, which are all defendants in the North Dakota action, had moved to dismiss the North Dakota action on the grounds that the North Dakota court lacked subject matter and personal jurisdiction over them. On Thursday, January 4, 2007, the North Dakota court, per the Honorable Rodney S. Webb, denied the Intermec Defendants' motion to dismiss the North Dakota action. A copy of the court's Order is attached hereto. That case will now proceed, mooting Intermec's reliance on its motion to dismiss in North Dakota as a basis to deny Alien's motion pending before Your Honor. Counsel remains available at the Courts' convenience should Your Honor have any questions.

                     Respectfully submitted,

                     Chad M. Shandler (#3796)

RLF1-3101469-1

The Honorable Gregory M. Sleet
January 5, 2007
Page 2


CS:ps
Enclosure
cc:   Clerk of the Court (by electronic filing)
      Jack B. Blumenfeld, Esq. w/enclosure (by electronic filing and hand delivery)
      Carson P. Veach, Esq. w/ enclosure (by electronic mail)
      Frederick L. Cottrell, III, Esq.
      Charles Siegal, Esq.

The Honorable Gregory M. Sleet

RLF1-3101469-1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| ALIEN TECHNOLOGY CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> INTERMEC, INC., INTERMEC ) <br> TECHNOLOGIES CORPORATION, ) <br> and INTERMEC IP CORP., ) <br> ) <br> Defendants. ) | Case No. 3:06-cv-51 |

### Memorandum Opinion & Order

Intermec, Inc. ("Intermec"), Intermec Technologies Corporation ("ITC"), and Intermec IP Corporation ("IIP") (collectively "the Intermec Defendants") move for dismissal of this lawsuit. They argue that this Court does not have subject matter jurisdiction and that they are not subject to personal jurisdiction in this district. Concluding this Court does have subject matter jurisdiction and all Intermec Defendants are subject to personal jurisdiction in this district, the Intermec Defendants' Motion to Dismiss is **DENIED**.

I.   Facts

Alien Technologies Corporation ("Alien") is incorporated under the laws of Delaware with its principal place of business in Morgen Hill, California (Doc. #1). It manufactures radio frequency identification ("RFID") products. Id. It has two manufacturing facilities in Fargo, North Dakota. Id.

Intermec is incorporated under the laws of Delaware with its principal place of business in Everett, Washington (Doc. 9, Exh.

B). Intermec is purely a holding company that owns other corporations. Id. ITC, a wholly-owned subsidiary of Intermec, is incorporated under the laws of Washington and has its principal place of business in Everett, Washington. Id. ITC manufactures and sells automated identification and data collection products, systems, and services, including RFID products, systems, and services. Id. IIP, a wholly-owned subsidiary of ITC, is incorporated under the laws of Delaware and has its principal place of business in Henderson, Nevada. Id. IIP is a patent holding company that owns patents, licenses them, and collects royalties. Id. IIP is the owner of all the patents at issue in this lawsuit. Id.

During Intermec's first quarter 2006 earnings call with investors, the following exchange took place between a financial analyst and Steve Winter, Intermec's President and Chief Operations Officer:

Question

On question on RFID and royalty revenues on a go-forward basis. You have a number of non-licensed companies out there selling products, some of which are winning large size contracts. How long can you wait before needing to step in and enforce the Rapid Start program [a licensing program Intermec initiated to solicit patents licenses from its competitors]?

Answer

It's obviously disappointing if any customer were to do business with a supplier that is not licensed. But you know, we have consistently stated we will be pursuing infringers. We are putting together cases. We are looking at those who are most disruptive to the industry right now. And basically, preparations are underway with respect to unlicensed suppliers like

>   Alien and others. And we expect those enforcement actions by the end of the year, or within this year.

Doc. 9, Exh. C, Earnings Call Tr., at pp. 11-12. A short time later, the following exchange took place between a financial analyst and Larry Brady, Intermec's Chairman, President, and Chief Executive Officer:

> Question
>
> In terms of the fact that you mentioned on this call that you might be taking some legal action against folks that have not been signed up so far for Rapid Start at some point during the year, could you give us some color as to what the potential impact on your SG&A line could be of taking such action, or whether similar to the (indiscernible) settlements you might have it not impacting your expense line in the near-term?
>
> Answer
>
> The answer to the question which you asked that we have given in the past and are still comfortable with is that - A., we intended to defend ourselves; B., . . . . . I hate to be more specific about that, because we don't want to constrain our ability to defend. And I think it is also fair to say that in the past, what we have said is it's only logical that we would wait until the recovery from an action, at least would manage to pay us back our court cost, before we would launch such a program.
>
> I think given the circumstances that we are currently looking at - that is, the amazing propensity of people to take business well below cost, and the amazing publicity which such actions receive - that we are apt to move in advance of where we would have originally intended. And indeed, the limitation on when we will take action now is more related to just the [wickets] that we have to go through - that is, [get the] product, and dissemble the product and understand that infringement is occurring. Because we've got a certain obligation, before we just go out and willy nilly start filing lawsuits, to demonstrate that there's [a] cause of action. So that is the path we are currently on.

Doc. 9, Exh. C, Earnings Call Tr., at pp. 15-16.

In reaction to these statements, Alien filed this lawsuit, seeking a declaratory judgment that its products do not infringe any of the Intermec Defendants' patents or that the patents in issue are invalid. The Intermec Defendants filed the pending motion to dismiss, arguing this Court does not have jurisdiction over the case or them as defendants.

Neither party disputes the Intermec Defendants do not have any offices, facilities, other assets, or employees in North Dakota. However, ITC has had contact with the state. ITC has been registered with the North Dakota Secretary of State as a foreign business corporation in active and good standing since July 1999 (doc. #47, Exh. C). ITC has sold various products in North Dakota, although not the RFID products at issue here (doc. #9, Exh. B). In 2005, ITC sold approximately $270,000 worth of products directly to companies in North Dakota. Id. According to Alien, its discovery into other sales ITC made directly to North Dakota totaled approximately $2.1 million for 2001-2005 (doc. #46). ITC agents have traveled to North Dakota for different business purposes since 2001. Id. Finally, ITC entered into a partnership with Microsoft and Microsoft Business Solutions (doc. #46, Exh. G). According to Intermec's website, which serves all the Intermec Defendants, "Intermec is a business partner with Microsoft and Microsoft Business Solutions and has dedicated this site to providing Microsoft Business Solutions customers with the latest information related to the use and deployment of ADC technology to enhance their Microsoft Business

4

Solution products." Id. Microsoft Business Solutions' principal place of business is in Fargo, North Dakota.

II. Discussion

For this lawsuit to stand, the Court must resolve three issues: (1) whether the Intermec officers' statements at its earnings call, along with other circumstances, created an actual case or controversy for subject matter jurisdiction; (2) whether ITC's contacts with North Dakota are sufficient for personal jurisdiction over it; and (3) if so, whether ITC's contacts with North Dakota can be imputed to Intermec and IIP. Because this is a declaratory-judgment action for non-infringement or invalidity of a patent, Federal Circuit caselaw controls this Court's analysis. Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1269 (Fed. Cir. 1998).

A.  Subject Matter Jurisdiction

Title 28 U.S.C. § 2201(a) requires an "actual controversy" to maintain an action for declaratory judgment:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

This requirement is founded on the concepts of standing, ripeness, and courts not issuing advisory opinions. BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993).

5

In the context of a patent rights lawsuit, the plaintiff must prove two elements to show an actual controversy: "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." Id. at 978. The defendant's conduct must "indicate defendant's intent to enforce its patent." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988). The conduct can be a direct threat of suit or indirect conduct that, when considered within the totality of the circumstances, demonstrates a reasonable apprehension of suit. Id. In other words, the defendant cannot couch its communications in legally savvy language to make it appear that it is not seeking to enforce its patent. Id. The conduct does not have to be directed to the plaintiff but may be made to third parties that have an interest in the industry such as customers. See id. at 737. Alien has conceded that its RFID products may infringe IIP's patents. Therefore, the second prong of the test is met, leaving only whether the Intermec Defendants' conduct created a reasonable apprehension of suit.

In BP Chemicals, BP sued its competitor, Union Carbide, for a declaratory judgment of non-infringement or patent invalidity. 4 F.3d at 977. BP claimed Union Carbide's conduct toward potential licensees, licensees BP was also trying to secure, showed an actual case and controversy. Id. at 978. Union

Carbide's conduct included refusing to give BP licensees permission to use a technology Union Carbide had patented and stating to a potential licensee during negotiations that it believed it had a strong patent in a strategically advantageous technology and asking if that potential licensee had increased indemnification from BP. Id. at 978-79. The Federal Circuit noted this was a "close factual question," but the court concluded there was no objective apprehension of a lawsuit. Id. at 980.

If BP Chemicals presented a "close factual question," this case clearly presents an actual case or controversy. Intermec executives, who had authority to credibly speak on behalf of Intermec, made the statements during a quarterly conference call to a large audience with a vested interest in the industry. Intermec's statements would affect how investors viewed Intermec and its competitors. Winter stated, "And basically, preparations are underway with respect to unlicensed suppliers like Alien and others. And we expect those enforcement actions by the end of the year, or within this year." The statement referenced patent enforcement lawsuits and singled out Alien as a possible defendant. Winter's statement also provided a time line, stating Intermec would sue by the end of 2006, if not sooner. These statements sent a clear message to the audience: Alien could expect to be sued by the end of 2006.

The Intermec Defendants attempt to qualify Winter's statements by emphasizing Brady's statements, claiming Brady's

7

statements show an investigation of possible infringement and not an intent to file a lawsuit. However, even Brady said "we intended to defend ourselves" and he did not want to say more out of fear it could constrain how they defend themselves. Regarding Brady's statement that they would not "willy nilly start filing lawsuits," the Court finds this statement was a diplomatic attempt to hide Intermec's intent to sue Alien. Couching threats in legally savvy language does not resolve an objective apprehension of suit. Arrowhead Indus. Water, 846 F.2d at 736.

The record also reflects that the Intermec Defendants have recently sued at least one other competitor to enforce their RFID patents (doc. 45 & Exh. Q). Under the totality of the circumstances, this past lawsuit bolsters Alien's reasonable apprehension of suit. The Court concludes this case presents an actual case or controversy, creating subject matter jurisdiction for a declaratory judgment suit.

B.  Personal Jurisdiction Over ITC

ITC is the only Intermec Defendant that has contacts with North Dakota. To establish personal jurisdiction over ITC, Alien must show two things: "whether a forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process." Dainippon Screen Mfg. Co., 142 F.3d at 1269-70. The North Dakota Supreme Court has held North Dakota's long-arm statute is "designed to permit the state courts to exercise personal jurisdiction to the fullest

extent permitted by due process." Hebron Brick Co. v. Robinson Brick & Tile Co., 234 N.W.2d 250, 255 (N.D. 1975). Therefore, the personal jurisdiction analysis folds into one: whether exercise of personal jurisdiction would offend Due Process. Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).

To prove personal jurisdiction is within the bounds of Due Process, two elements must be met: (1) the defendant had "minimum contacts" with the forum state; and (2) the defendant could reasonably anticipate being haled into the forum state to defend itself. Id. at 1358-59 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). A minimum contacts analysis looks at the quantity and quality of the defendant's contacts with the forum state. Id. at 1359. An exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" Id. at 1359 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). When a company purposefully avails itself to the protection of the laws of a forum by conducting business there, exercising jurisdiction over that company is proper. World-Wide Volkswagen, 444 U.S. at 297.

Jurisdiction can be "specific" in that the cause of action arose through the contacts analyzed. Red Wing Shoe Co., 148 F.3d at 1359. Jurisdiction can also be "general" in that although the contacts with the forum state are not relevant to the cause of action, they were purposefully directed at the forum and are sufficiently continuous and systematic to allow the exercise of

jurisdiction. Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). Random, fortuitous, and attenuated contacts are not sufficient to meet the minimum contacts required. Id. (citing Burger King, 471 U.S. at 475). ITC never sold any RFID products in North Dakota, so Alien must establish general jurisdiction over ITC through purposeful, continuous, and systematic contacts with North Dakota.

Alien cites various contacts ITC and its agents have had with North Dakota. ITC has been registered as a foreign business corporation with the North Dakota Secretary of State since July 1999 and is currently in active and good standing (doc. #47, Exh. C). At oral argument, ITC's attorney stated ITC is registered because it pays income tax in North Dakota. That is another contact. ITC pays income tax in North Dakota because it sells products directly to North Dakota businesses (doc. #9, Exh. B). In 2005, ITC sold approximately $270,000 worth of products to companies in North Dakota. Id. According to Alien, its discovery into other sales ITC made directly to North Dakota totaled approximately $2.1 million for 2001-2005 (doc. #46). Also according to Alien's discovery, ITC agents have consistently traveled to North Dakota on business since 2001. Id. Presumably, some of these trips included contacts with Microsoft Business Solutions with which ITC had a partnership (doc. 46, Exh. G). Microsoft Business Solutions has its principal place of business in Fargo, North Dakota.

These contacts represent purposeful, consistent, and systematic contacts with North Dakota. As early as 1999, ITC contemplated doing business in North Dakota, so it registered as a foreign business corporation. ITC's sales in North Dakota, although not great, came directly from ITC, and it has consistently done business in North Dakota over the last several years. As a result of its sales, it pays North Dakota income tax. It also contracted into a partnership with Microsoft Business Solutions, a large company with a significant position in North Dakota, for strategic business reasons. Therefore, ITC has purposefully availed itself to the laws of North Dakota and is subject to personal jurisdiction in its courts.

ITC argues its direct sales to North Dakota companies are so minuscule that they cannot be considered in a minimum contacts analysis. Using 2005 as an example, North Dakota sales represent approximately 0.0571% of its total sales revenue for 2005. While the Court agrees that minuscule sales in the forum state alone would be insufficient to establish minimum contacts, ITC has sold a small amount of product in North Dakota consistently and systematically since at least 2001. Furthermore, the Court concludes that the small amount of sales ITC has made in North Dakota is not shocking when one considers that North Dakota is a small state. As the North Dakota Supreme Court has stated, albeit in a specific jurisdiction case:

> These mathematical comparisons may be sound, but we do not believe they guide the law of personal jurisdiction. If such an analysis were adopted, states

11

with smaller populations, such as North Dakota, would always be at a legal disadvantage compared to states with greater populations and larger economic markets. Simply because a State does not account for a proportionately high level of a company's orders or revenues does not foreclose a finding that the company has sufficient minimum contacts with the forum State to ground personal jurisdiction.

Beaudoin v. S. Tex. Blood & Tissue Ctr., 2005 ND 120, ¶ 17, 699 N.W.2d 421, 428.

The lines of personal jurisdiction can be grayed in the expanding global market. However, ITC cannot claim it is a stranger to North Dakota. It has purposefully availed itself to this forum through continuous and systematic contacts. Therefore, ITC is subject to personal jurisdiction in North Dakota.

**C. Personal Jurisdiction over Intermec and IIP**

Having established jurisdiction over ITC, Alien argues ITC's contacts in North Dakota can be imputed to Intermec and IIP. Alien relies on Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc. 142 F.3d 1266, 1269 (Fed. Cir. 1998). In Dainippon, the defendant CFMT was the wholly-owned subsidiary and the patent holding company of the defendant CFM. Id. at 1267. CFMT licensed CFM to use CFMT's patents in exchange for royalties. Id. The plaintiff sued CFM and CFMT for a declaratory judgment, and the defendants moved to dismiss for lack of personal jurisdiction over CFMT in the forum state, California. Id. The Federal Circuit concluded CFMT's threats to the plaintiff made in California; the licenses CFMT granted to CFM, which had sales

12

agents in California; and the royalties CFMT earned in California established sufficient minimum contacts. Id. at 1271. The court also discussed the CFM's corporate structure:

> We also agree with Dainippon that the parent-subsidiary relationship between CFM and CFMT leads to the conclusion that the imposition of personal jurisdiction over CFMT is "reasonable and fair," . . . Stripped to its essentials, CFM contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company. This argument qualifies for one of our "chutzpah" awards. . . . While a patent holding subsidiary is a legitimate creature and may provide certain business advantages, it cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction.

Id. (citations and footnotes omitted). In footnote three, the court specifically stated that it was not piercing the corporate veil, grounding its holding on due process principles. Id.

This case presents a substantially similar situation. Like the CFMT-CFM relationship, IIP is the wholly-owned patent holding company of ITC. In turn, ITC is the wholly-owned operating company of Intermec. All three Intermec Defendants operate as one entity. IIP owns all the patents. ITC operates under those patents but does not have a license from IIP because of their corporate relationship. Intermec has the benefit of both companies as the main holding company. The Intermec defendants share a common website, which is copyrighted to ITC. Intermec

13

and ITC share a principal place of business in Everett, Washington. IIP patent applications filed with the Court shows an ITC agent filed the application and listed IIP's address as Everett, Washington, not Henderson, Nevada (doc. #104, Exh. C & D). Although the parties cannot agree on a number, neither party disputes that all three companies have some overlap of officers and directors. The Intermec Defendants file joint annual reports and tax returns (doc. #88-92). Intermec officers made the patent enforcement statements at the quarterly earnings call even though IIP is technically the patent owners. Therefore, just as in Dainippon, without imputing ITC's personal jurisdiction to Intermec and IIP, Intermec and ITC would be allowed to threaten its competitors without fear of suit except where IIP is incorporated, Delaware, or where it is headquartered, Nevada. Fairness demands that Intermec and IIP be subject to jurisdiction in those fora where ITC is subject to jurisdiction.

The Intermec Defendants argue Dainippon is a specific jurisdiction case that is inapplicable to general jurisdiction cases. This is a distinction without a difference. While the Court agrees that Dainippon was a specific jurisdiction case, the same fairness principles on which the Federal Circuit ground its opinion apply whether jurisdiction is specific or general. It is just as unfair to allow the defendant in a general jurisdiction case to avoid jurisdiction because of its holding company structure as it is in a specific jurisdiction case.

Traditional notions of fair play and substantial justice are not offended by subjecting Intermec and IIP to jurisdiction in North Dakota. Venue is also proper here under 28 U.S.C. § 1391(c).

####   d.   Failure to State a Claim

Lastly, the Intermec Defendants argue Alien has not sufficiently stated a claim under Federal Rule of Civil Procedure 8 because Alien's complaint does not specifically enumerate the allegedly infringing products. Alien's complaint references RFID products, which is the technology protected by the patents in issue. All parties are experienced in this area, and the discovery process is the best method to narrow Alien's specific products. Therefore, the Court concludes Alien's complaint sufficiently states a claim upon which relief may be granted.

### III. Conclusion

The Court has subject matter jurisdiction over this case, and the Intermec Defendants are subject to personal jurisdiction in North Dakota. Therefore, the Intermec Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated this 4th day of January, 2007.

*/s/ Rodney S. Webb*
RODNEY S. WEBB, District Judge
United States District Court