IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERMEC IP CORP., a Delaware
corporation,

          Plaintiff,

v.

ALIEN TECHNOLOGY CORP., a
Delaware corporation,

          Defendant.

C. A. No. 06-411-GMS

OPENING BRIEF IN SUPPORT OF ALIEN TECHNOLOGY
CORPORATION'S MOTION TO DISMISS OR STAY, OR, IN THE
ALTERNATIVE, TRANSFER THE CLAIMS ALLEGED IN PLAINTIFF'S
FIRST AMENDED COMPLAINT

Of Counsel:
Gregory P. Stone
Charles D. Siegal
Megan M. LaBelle
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
Richards Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

Attorneys for Defendant Alien
Technology Corporation

Dated: January 23, 2007

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... iii

I.      INTRODUCTION .......................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 3

III.    SUMMARY OF THE ARGUMENT ................................................................ 4

IV.     STATEMENT OF THE FACTS ...................................................................... 5

        A.      The Technology At Issue - RFID ........................................................... 5

        B.      The Parties ........................................................................................... 6

        C.      Litigation Background .......................................................................... 7

                1.      Alien's First-Filed North Dakota Action And Intermec's
                        Second-Filed Delaware Action ................................................... 7

                2.      The Overlap Between The Actions ............................................... 7

                3.      Intermec's Motion To Dismiss The North Dakota Action .......... 8

                4.      Alien's Motions To Dismiss The Delaware Action .................... 9

                5.      Alien's Motion To Amend Its Complaint In The North
                        Dakota Action ........................................................................... 9

V.      ARGUMENT .................................................................................................. 11

        A.      The "First-Filed" Rule Requires That The Second-Filed
                Delaware Action Should Be Dismissed, Stayed Or Transferred
                To The District Of North Dakota ......................................................... 11

                1.      The First-Filed Rule Applies Where Two Cases Involve
                        "Substantial Overlap" ............................................................... 12

                2.      Although The Same Patents Need Not Be At Issue In
                        Both Cases For The First-Filed Rule To Apply, Such
                        Identity Will Exist When Alien's Second Amended
                        Complaint Is Filed In The North Dakota Action ........................ 16

        B.      If The Delaware Action Is Not Dismissed, Stayed Or Transferred
                Under The First-Filed Rule, It Should Be Transferred To The
                District Of North Dakota Under 28 U.S.C. § 1404(a) ........................... 18

                1.      Section 1404(a) Requires Consideration Of Both Private
                        And Public Interests .................................................................. 19

                2.      The Public Interests Weigh Strongly In Favor Of
                        Transferring The Delaware Action ............................................. 20

                        a.      The Enforceability Of The Judgment ............................. 20

## TABLE OF CONTENTS
(continued)

Page(s)

b.   Practical Considerations That Could Make The
     Trial Easy, Expeditious, Or Inexpensive ......................... 21

c.   The Relative Administrative Difficulty In The
     Two Fora Resulting From Court Congestion ................. 22

d.   The Local Interest In Deciding Local
     Controversies At Home ................................................. 23

3.   The Private Interests Weigh In Favor Of Transferring The
     Delaware Action. ...................................................................... 23

a.   The Convenience Of The Parties As Indicated By
     Their Relative Physical And Financial Condition ......... 23

b.   The Convenience Of The Witnesses – But Only
     To The Extent That The Witnesses May Actually
     Be Unavailable For Trial In One Of The Fora .............. 25

c.   The Location Of Books And Records (Similarly
     Limited To The Extent That The Files Could Not
     Be Produced In The Alternative Forum) ........................ 25

4.   The Intermec Transfer Brief And Its Arguments For
     Transfer Under Parallel Circumstances ..................................... 25

VI.   CONCLUSION................................................................................................ 27

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Affymetrix, Inc. v. Synteni, Inc.,*
   28 F. Supp. 2d 192 (D. Del. 1998) .................................................................. 19, 23, 25

*Airport Investors Limited Partnership, Inc. v. Neatrour,*
   2004 WL 225060 (D. Del. February 3, 2004) ........................................................... 12

*Allen v. Rohm & Haas Co. Retirement Plan,*
   2006 WL 1980174 (W.D. Ky. July 10, 2006) ........................................................... 13

*Alloc, Inc. v. Unilin Decor N.V.,*
   2006 WL 3050815 (D. Del. Oct. 26, 2006) .................................................... 22, 23, 24

*Bayer Bioscience N.V. v. Monsanto Co.,*
   2003 WL 1565864 (D. Del. Mar. 25, 2003) ....................................................... 18, 21

*Black Diamond Equipment, Ltd. v. Genuine Guide Gear,*
   2004 WL 741428 (D. Utah Mar. 12, 2004) ............................................................... 13

*Brunswick Corp. v. Precor Inc.,*
   2000 U.S. Dist. LEXIS 22222 (D. Del. Dec. 12, 2000) ............................................ 21

*Cashedge, Inc. v. Yodlee, Inc.,*
   2006 WL 2038504 (D. Del. July 19, 2006) ............................................................... 21

*Cedars-Sinai Medical Center v. Revlon, Inc.,*
   111 F.R.D. 24 (D. Del. 1986) ..................................................................................... 26

*Compagnie Des Bauxites De Guinea v. Insurance Co. of North America,*
   651 F.2d 877 (3d Cir. 1981) ....................................................................................... 12

*Corixa Corp. v. IDEC Pharmaceuticals Corp.,*
   2002 WL 265094 (D. Del. Feb. 25, 2002) ................................................................. 24

*Crosley Corp. v. Hazeltine Corp.,*
   122 F.2d 925 (3d Cir. 1941) ....................................................................................... 11

*EEOC v. University of Pennsylvania,*
   850 F.2d 969 (3d Cir. 1988) ................................................................ 11, 12, 13, 14

*Genentech v. Eli Lilly & Co.,*
   998 F.2d 931 (Fed. Cir. 1993) ......................................................................... 4, 12, 18

## TABLE OF AUTHORITIES
(continued)

Page(s)

*General Products Machine Shop Inc. v. Systematic, Inc.,*
2006 WL 2051737 (D. Idaho July 20, 2006)............................................................. 13

*Genfoot, Inc. v. Payless Shoesource, Inc.,*
2003 WL 22953183 (D. Del. Dec. 3, 2003) ............................................................. 12

*Guidant Corp. v. St. Jude Medical, Inc.,*
2004 WL 1925466 (D. Del. 2004)........................................................................... 12

*Intel Corp. v. Amberwave Systems Corp.,*
233 F.R.D. 416 (D. Del. 2005) ................................................................ 14, 15, 17

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995) ........................................................................... 5, 19

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,*
342 U.S. 180 (1952) .............................................................................................. 12

*Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.,*
102 F. Supp. 2d 518 (D.N.J 2000)......................................................................... 21

*Nilssen v. Osram Sylvania, Inc.,*
2001 WL 34368395 (D. Del. May 1, 2001) ........................................................... 20

*Pacesetter, Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir. 1982) ................................................................................... 11

*Save Power Ltd. v. Syntek Finance Corp.,*
121 F.3d 947 (5th Cir. 1997) .......................................................................... 13, 14

*Smart Techs., Inc. v. PolyVision Corp.,*
2004 U.S. Dist. LEXIS 29483 (E.D. Va. Oct. 20, 2004)............................................ 14

*Sony Electronics, Inc. v. Orion IP, LLC.,*
2006 WL 680657 (D. Del. March 14, 2006) .................................................. 11, 19, 20

*Southern Construction Co. v. Pickard,*
371 U.S. 57 (1962) ................................................................................................ 18

*Spotless Enterprises Inc. v. The Accessory Corp.,*
415 F. Supp. 2d 203 (E.D.N.Y. 2006) ..................................................................... 13

iv

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Sumito Mitsubishi Silicone Corp. v. MEMC Electronic Materials, Inc.,*
 2005 U.S. Dist. LEXIS 5174 (D. Del. March 30, 2005) ...................................... 11, 18

*Super Sack Mfg. Corp. v. Chase Packaging Corp.,*
 57 F.3d 1054 (Fed Cir. 1995) ................................................................................... 10

*Trueposition, Inc v. Allen Telecom, Inc.,*
 2002 WL 1558531 (D. Del. July 16, 2002) ............................................................... 17

*Versus Technology, Inc. v. Hillenbrand Industries, Inc.,*
 2004 WL 3457629 (W.D. Mich. Nov. 23, 2004) ................................................. 13, 14

*Walker v. Progressive Casualty Ins. Co.,*
 2003 WL 21056704 (W.D. Wash. May 9, 2003) ...................................................... 13

*Wilton v. Seven Falls Co.,*
 515 U.S. 277 (1995) ..................................................................................................... 4

## Federal Statutes

28 U.S.C. § 1404(a) .................................................................................................*passim*

## Federal Rules

Fed. R. Civ. P. 12 ............................................................................................................ 9

Fed. R. Civ. P. 15 ....................................................................................................... 4, 9

Fed. R. Civ. P. 15(a) ...................................................................................................... 1

v

## I.     INTRODUCTION

Pursuant to the first-filed rule and 28 U.S.C. § 1404(a), defendant Alien Technology Corporation ("Alien") respectfully moves to dismiss, stay, or in the alternative transfer to the District of North Dakota the claims asserted in the First Amended Complaint ("FAC") filed on January 8, 2007 by plaintiff Intermec IP Corp. ("Intermec IP"). Those claims properly belong in North Dakota, where Alien's first-filed declaratory judgment action (the "North Dakota Action") regarding its Radio Frequency IDentification ("RFID") products is proceeding against Intermec IP and its related corporations, Intermec, Inc. and Intermec Technologies Corporation (collectively "Intermec").

Intermec IP's filing of the FAC is a transparent ploy to try to avoid the North Dakota forum: Just one court day after the North Dakota court denied Intermec's motion to dismiss the first-filed North Dakota action on jurisdictional grounds, Intermec here dropped its claims of patent infringement of the six patents that are also in suit in North Dakota,[1] while retaining its claims for the four other Intermec patents not yet identified therein.[2] In a letter submitted to the Court that same day, Intermec contended

---

[1] Those six patents are U.S. Patent Nos. 5,850,181; 6,812,841; 6,400,274; 5,912,632; 5,775,561; and 5,995,019.

[2] On January 22, 2007, Alien filed a motion to amend its complaint in the North Dakota action to add declaratory relief claims regarding the four Intermec patents identified by the FAC (U.S. patents nos. 5,528,222; 6,286,762; 5,828,318; and 6,812,852). Given the liberal standard applicable to a motion for leave to amend, *see* Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires"), Alien anticipates that the North Dakota court will grant the motion.

that Alien's then-pending Motion to Dismiss or Stay, or, in the Alternative, Transfer was "moot," thus proposing to litigate the North Dakota action and this action simultaneously despite their overwhelming similarities.

In fact, however, Intermec's removal of the six North Dakota patents from this action has no impact on the merits of Alien's motion to dismiss or transfer this action to the jurisdiction where the dispute between the parties was first filed.[3]  All of the substantive arguments presented in that original motion are applicable here – the substantial overlap between the parties, the issues, and the evidence mandates dismissal of this action and/or transfer to the first-filed jurisdiction of North Dakota so as to maximize judicial economy and minimize the risk of inconsistent rulings.[4]

---

[3] Alien's original motion to dismiss is only "moot" in the technical sense that the filing of the *amended* complaint moots a motion directed to the *original* complaint.

[4] Indeed, Intermec itself has previously argued for transfer, at length and with considerable ardor, in parallel circumstances.  *See* Declaration of Daniel A. Beck ("Beck Decl."), filed simultaneously herewith, Ex. C (Intermec Technologies Corporation's memorandum in support of motion to transfer venue pursuant to 28 U.S.C. § 1404(a), filed May 18, 2005).

2

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On June 1, 2006, Alien filed a declaratory judgment action in the United States District Court for the District of North Dakota against Intermec IP and Intermec, Inc. ("North Dakota Action"), requesting a declaration that it is not infringing ten of Intermec's patents and that those patents are invalid.[5] *See* Beck Decl., ¶ 2 and Ex. A.[6]

On June 29, 2006, the Intermec Defendants moved to dismiss the North Dakota Action, arguing that Alien had no reasonable apprehension of suit and that the North Dakota court lacks personal jurisdiction. That same day, Intermec IP filed this case (the "Delaware Action") against Alien, alleging that Alien infringed ten Intermec IP patents – six of those expressly identified in the North Dakota Action and four others. All fourteen of the Intermec patents in both actions claim features or functions of RFID devices.

On August 18, 2006, Alien moved this Court to dismiss, stay, or transfer to North Dakota the claims alleged in Intermec IP's complaint, pursuant to the first-filed rule and 28 U.S.C. § 1404(a) ("First Dismissal Motion").

---

[5] It currently appears that only seven of the original ten patents will continue to be litigated in the North Dakota Action, because Intermec apparently will not pursue affirmative remedies in relation to U.S. patents nos. 5,828,693; 6,429,775; and 6,288,629. *See* Beck Decl., ¶ 5 and Ex. D.

[6] On June 26, 2006, Alien amended its Complaint to add Intermec Technologies Corporation ("ITC"), which is Intermec IP's parent and a subsidiary of Intermec, Inc. Beck Decl., ¶ 3 and Ex. B. ITC, Intermec IP, and Intermec, Inc. are collectively referred to herein as "Intermec" or "the Intermec Defendants."

3

On January 4, 2007, the North Dakota court denied Intermec's motion to dismiss the North Dakota Action, rejecting Intermec's contention that the North Dakota court lacked subject matter and personal jurisdiction. *See* Beck Decl., Ex. E.

On January 8, 2007, Intermec filed its FAC, dropping claims for the six patents that were expressly identified in the North Dakota Action, while retaining the four patents that had not yet been so identified. On January 22, 2007, Alien filed a motion in the North Dakota Action pursuant to Fed. R. Civ. P. 15, seeking leave to amend its complaint to add the four Intermec patents that remain in this matter after the filing of Intermec's FAC here. That motion is currently pending.

## III.  SUMMARY OF THE ARGUMENT

A. The North Dakota Action was filed first, has all of the parties in the Delaware Action, puts in suit the same Intermec patents or Intermec patents that involve the same RFID technology, and involves the same accused Alien RFID products.

B. Under the "first-filed" rule, the Delaware Action should be dismissed or stayed, even when the only remaining patents were not named in the original North Dakota complaint. *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *overruled in part on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).

C. Other than being the state of incorporation of the parties, this action has no connection to Delaware. Neither Alien nor Intermec IP is

4

headquartered here. None of the inventors or other potential witnesses reside in Delaware.

D.    It would waste judicial resources and create a significant risk of inconsistent legal findings for two courts to deal with the legal and factual issues involved in adjudicating claims of patent infringement and invalidity relating to the same complex technology and the same accused Alien products.

E.    Accordingly, and in the alternative, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice," transfer to the United States District Court for the District of North Dakota is appropriate. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

## IV.    STATEMENT OF THE FACTS

### A.    The Technology At Issue - RFID.

Both Alien and the Intermec Defendants manufacture and sell RFID devices. The dispute in both the North Dakota and Delaware Actions focuses on patents relating to RFID technology. RFID systems typically consist of at least one "tag," which can transmit information, and a "reader," which can receive a signal from the tag that contains information. Declaration of Glenn W. Gengel, ("Gengel Decl."), ¶ 2. (D.I. 11). The tag is placed on an object, such as a piece of merchandise. The information can identify the object to which the tag is affixed. RFID devices may be used for

5

inventory control, to identify animals, for credit cards or drivers' licenses, or a myriad other uses. Gengel Decl. ¶ 2.

### B.     The Parties.

Alien is incorporated in Delaware, but has its principal office in Morgan Hill, California.  Gengel Decl., ¶ 3.  It has a major production facility in Fargo, North Dakota, which manufactures the accused RFID tag products.  Gengel Decl., ¶ 4.

The plaintiff in this case, Intermec IP, is a Delaware corporation with a purported principal place of business in Henderson, Nevada.  Intermec IP's only business is to own and assert patents.  Intermec IP is a wholly owned subsidiary of ITC, which, in turn, is the wholly-owned operating company of Intermec, Inc.  As the North Dakota Court held: "[a]ll three Intermec Defendants operate as one entity" out of headquarters in Everett, Washington.  Beck Decl., Ex. E at 13.[7]

_____

[7] The North Dakota court explained this holding as follows:  "[Intermec IP] owns all the patents.  ITC operates under those patents but does not have a license from [Intermec IP] because of their corporate relationship.  Intermec has the benefit of both companies as the main holding company.  The Intermec defendants share a common website, which is copyrighted to ITC.  Intermec and ITC share a principal place of business in Everett, Washington.  [Intermec IP] patent applications filed with the Court shows an ITC agent filed the application and listed [Intermec IP]'s address as Everett, Washington, not Henderson, Nevada. . . . [A]ll three companies have some overlap of officers and directors.  The Intermec Defendants file joint annual reports and tax returns.  Intermec officers made the patent enforcement statements at the quarterly earnings call even though [Intermec IP] is technically the patent owners." _Id._ at 13-14.

6

### C.    Litigation Background.

#### 1.    Alien's First-Filed North Dakota Action And Intermec's Second-Filed Delaware Action.

On June 1, 2006, Alien filed the North Dakota Action, seeking declarations of non-infringement and invalidity of ten Intermec IP patents. The patents-in-suit in the North Dakota Action are U.S. Patent nos. 5,030,807; 5,828,693; 5,912,632; 6,812,841; 5,777,561; 5,995,019; 6,288,629; 5,850,181; 6,400,274; and 6,429,775.[8]

A month later, Intermec IP filed the Delaware Action, asserting ten of its patents against Alien. Those ten patents include six of the ten Intermec patents identified by Alien in the North Dakota Action ('561, '181, '632, '019, '274 and '841), plus U.S. Patent nos. 5,528,222; 6,286,762; 5,828,318; and 6,812,852.

#### 2.    The Overlap Between The Actions.

Each of the fourteen Intermec patents in the North Dakota and Delaware Actions involves technology that is used in or to manufacture RFID devices. Gengel Decl. ¶ 2. Thirteen of those patents (all except the '222 Patent) relate to the reader-tag air interface protocol. Declaration of John Stephen Smith, ("Smith Decl."), ¶ 2. (D.I. 12). That is, technology relating to communication(s) between readers and tags. This technology includes, inter alia, (i) reader commands for selection and identification of tags, (ii) tag selection states and functions, and (iii) powering of the tag by the reader and loss of that

---

[8] Alien filed its action in the federal court in North Dakota, because Alien has a 45,558 square foot facility in Fargo, which serves as Alien's manufacturing facility for its tag products, including those which are accused of infringing Intermec's patents. Gengel Decl., ¶ 4. In addition, Intermec does substantial business in North Dakota.

power during "frequency hopping." Smith Decl. ¶ 3. The '222 patent involves the manufacture and structure of a "thin flexible" RFID tag, which would necessarily incorporate air-interface protocol technology in its operation. Gengel Decl. ¶ 5.

Intermec's voluntary dismissal from this case of the six patents already at issue in North Dakota did nothing to reduce the overlap between the two cases. Of the four patents remaining here, three – the '318, '672 and '852 patents – relate to the selection of a subset of RFID tags from a larger group. RFID tag subset selection is also involved in two of the North Dakota patents – the '561 and '019 patents. Smith Decl., ¶ 4. And as mentioned above, the '222 patent, which is the fourth patent remaining in suit here, relates in its functionality to the air-interface protocol via which RFID tags and readers operate.

3.    **Intermec's Motion To Dismiss The North Dakota Action**

On June 29, 2006, the same day it initiated the Delaware Action, Intermec filed a motion to dismiss the North Dakota Action, arguing that the North Dakota court lacked both subject matter and personal jurisdiction over the Intermec Defendants. On January 4, 2007, the North Dakota Court denied the motion "[c]oncluding [that] this Court does have subject matter jurisdiction and all Intermec Defendants are subject to personal jurisdiction in this district." Beck Decl., Ex. E at 1.[9]

_____

[9] On January 5, 2007, Alien submitted a copy of the North Dakota Court's order to this Court for consideration in relation to Alien's then-pending Motion to Dismiss. For the Court's convenience, Alien resubmits that order in connection with this motion.

8

### 4.    Alien's Motions To Dismiss The Delaware Action.

Because the North Dakota Action was filed first and because of the substantial overlap of the cases, on August 18, 2006, Alien moved in this Court to dismiss, stay, or transfer this second-filed Delaware Action pursuant to the first-filed rule and 28 U.S.C. § 1404(a). (D.I. 9, 10, 18). During the pendency of that motion, and on the next court day after the North Dakota court denied Intermec's motion to dismiss the North Dakota Action, Intermec IP filed its FAC voluntarily dismissing from the Delaware Action the six patents over which the North Dakota Court had asserted jurisdiction. Although the same arguments made in Alien's original motion to dismiss are fully applicable to the FAC, the filing of the FAC necessitated the filing of the instant motion, specifically directed to the operative complaint.[10] *See* Fed. R. Civ. P. 12.

### 5.    Alien's Motion To Amend Its Complaint In The North Dakota Action.

On January 22, 2007, Alien filed a motion in the North Dakota Action seeking leave to amend its complaint to add to that action the four Intermec patents that remain at issue here after the filing of the FAC. In light of the liberal standards governing motions to amend, *see* Fed. R. Civ. P. Rule 15, Alien expects its motion to be granted.

---

[10] The day it filed its FAC, Intermec submitted a letter to the Court arguing that Alien's then-pending motion to dismiss was "moot." Of course, Alien's motion was mooted by Intermec's FAC in the technical sense that the original complaint was superceded by the amended complaint. However, as detailed below, the FAC did not moot Alien's arguments in support of its motion to dismiss, all of which are equally applicable to the FAC and are thus asserted in this motion.

9

The following chart shows the patents that will remain in each action, if Alien's motion to amend is granted. The patents with lines through them are no longer at issue in the particular action.

| Patents-in-Suit in North Dakota Action | Patents-in-Suit in Delaware Action |
|---|---|
| ~~5,828,693~~[11] | |
| ~~6,429,775~~ | |
| 5,030,807 | |
| ~~6,288,629~~ | |
| 5,850,181 | ~~5,850,181~~† |
| 6,812,841 | ~~6,812,841~~† |
| 6,400,274 | ~~6,400,274~~† |
| 5,912,632 | ~~5,912,632~~† |
| 5,775,561 | ~~5,775,561~~† |
| 5,995,019 | ~~5,995,019~~† |
| 5,528,222‡ | 5,528,222 |
| 6,286,762‡ | 6,286,762 |
| 5,828,318‡ | 5,828,318 |
| 6,812,852‡ | 6,812,852 |
| ‡ Added if Alien's motion to amend is granted | † Deleted from Intermec IP's First Amended Complaint |

---

[11] In its Answer to Alien's First Amended Complaint in the North Dakota Action, Intermec provided covenants not to sue with respect to the '693, '775 and '629 patents. To the extent those covenants comply with the legal standard set forth in *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed Cir. 1995) ("a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts") and its progeny, Alien's declaratory judgment claims as to these three patents will be dismissed from the North Dakota Action.

## V.    ARGUMENT

### A.    The "First-Filed" Rule Requires That The Second-Filed Delaware Action Should Be Dismissed, Stayed Or Transferred To The District Of North Dakota.

As described above, the North Dakota Action was filed nearly one month prior to the Delaware Action, and the two cases involve substantially overlapping questions and subject matter.  Since *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941), the Third Circuit has followed the rule that if two cases between the same parties address similar subject matter, the court with the "first-filed" case must decide it and order that the second-filed case be enjoined.  "[I]n all cases of [Federal] concurrent jurisdiction the court which first had possession of the subject must decide it."  *Id.* at 929-930 (internal quotations marks omitted).  As the Third Circuit put it 47 years after *Crosley*, the first-filed rule "encourages sound judicial administration and promotes comity among federal courts of equal rank."  *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988).  "There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  *Pacesetter, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).  This Court has followed the first-filed rule in a procession of cases.[12]  Although the law of

---

[12] *See, e.g., Sony Electronics, Inc. v. Orion IP, LLC*, 2006 WL 680657, at *1 (D. Del. 2006); *Sumito Mitsubishi Silicone Corp. v. MEMC Electronic Materials, Inc.* 2005 U.S. Dist. LEXIS 5174, at *9-*11 (D. Del. March 30, 2005) (court transferred action to

11

the Third Circuit governs this issue here, the Federal Circuit also follows the same rule.

*See Genentech*, *supra*, 998 F.2d at 937-38 (reversing dismissal of first-filed declaratory judgment case).

The first-filed rule applies to the subsequent prosecution of "'similar cases...in different federal district courts.'" *See EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988); *see also Compagnie Des Bauxites De Guinea v. Insurance Co. of North America*, 651 F.2d 877, 887 n.10 (3d Cir. 1981) (first-filed rule applies "when similar cases have been filed in different federal district courts."). The rule is pragmatic; it rests on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).

### 1. The First-Filed Rule Applies Where Two Cases Involve "Substantial Overlap."

As the Fifth Circuit has articulated in an influential ruling, "substantial overlap" of the cases, not identity, is the focus of the rule:

> Syntek argues that the "first to file" rule does not apply in this case because neither the issues nor the parties are identical to those in

---

United States District Court for the Northern District of California, where another action that involved a "similar" patent was first filed); *Guidant Corp. v. St. Jude Medical, Inc.*, 2004 WL 1925466, at *3 (D. Del. 2004) (where first-filed suit was in Delaware, and the first and second-filed suits "involve essentially the same parties and patents and involved the same legal theories," court refused to transfer case pursuant to 28 U.S.C. § 1404(a)); *Airport Investors Limited Partnership, Inc. v. Neatrour*, 2004 WL 225060, at *2 (D. Del. February 3, 2004); *Genfoot, Inc. v. Payless Shoesource, Inc.*, 2003 WL 22953183, at *1 (D. Del. Dec. 3, 2003) (court transferred infringement action to District of Kansas, where prior declaratory relief action was pending).

12

the Original Action. The rule does not, however, require that cases
be identical. The crucial inquiry is one of "substantial overlap."

*Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).[13]

It is for this precise reason that Intermec cannot evade application of the first-filed rule to dismiss, stay or transfer the Delaware Action by splitting off some of its RFID patents from this case, leaving at issue here only those which have not yet been added to the North Dakota action.[14] Indeed, the first-filed rule has been applied where no patents were in common between two actions, so long as the disputed underlying technology was sufficiently similar. *See Versus Technology, Inc. v. Hillenbrand Industries, Inc.*, 2004 WL 3457629, at *6-8 (W.D. Mich. Nov. 23, 2004). In *Versus Technology*, the court concluded that the first-filed rule applied because "while the patents may be different, they involve similar technology, i.e., locating systems for assets and personnel using infrared and radio signals, and are closely related." *Id.* at *7.

---

[13] The Fifth Circuit's description of the first-filed rule test as "substantial overlap" parallels the Third Circuit's statement in *University of Pennsylvania* that the rule applies to "similar cases." 850 F.2d at 971. The Fifth Circuit's articulation of "substantial overlap" has been approved and applied by district courts in many other circuits, including the Second, Fifth, Sixth, Ninth, and Tenth Circuits. *See, e.g.,* *Spotless Enterprises Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 206 (E.D.N.Y. 2006); *General Products Machine Shop Inc. v. Systematic, Inc.*, 2006 WL 2051737, at *1 (D. Idaho July 20, 2006); *Allen v. Rohm & Haas Co. Retirement Plan*, 2006 WL 1980174, at *1 (W.D. Ky. July 10, 2006); *Versus Technology, Inc. v. Hillenbrand Industries, Inc.*, 2004 WL 3457629 at *6-8 (W.D. Mich. Nov. 23, 2004); *Black Diamond Equipment, Ltd. v. Genuine Guide Gear*, 2004 WL 741428, at *1 (D. Utah Mar. 12, 2004); *Walker v. Progressive Casualty Ins. Co.*, 2003 WL 21056704, at *2 (W.D. Wash. May 9, 2003).

[14] As explained above, Alien has filed a motion for leave to amend its complaint in the North Dakota Action to add the four patents currently in suit here.

13

The *Versus Technology* decision was based on the district court's extensive analysis of how the first-filed rule relates to claims that are "similar," rather than strictly identical. *See id.* at *5-*8. As the *Versus Technology* court concluded from the precedents it surveyed, "[t]he claims in the two cases need not be identical; only substantial similarity of issues or substantial overlap in the cases need be shown." *Id.* at *5. *Versus Technology* reflects the controlling principle, as articulated by the courts of appeal, that *similarity* of subject matter, which has been defined as *substantial overlap*, is the fundamental test for invoking the first-filed rule.[15]

Similarly, in *Smart Techs., Inc. v. PolyVision Corp.*, 2004 U.S. Dist. LEXIS 29483 (E.D. Va. Oct. 20, 2004), the district court concluded that "[t]his Court is bound by the first-to-file rule" (*id.* at *5) because of the similarity of the patented technology in the two actions, and did not require the patents to be identical:

> [T]hese parallel cases hinge on a court's determination of the same issue: which party violated whose 'interactive whiteboard' technology patents. The patents involved in the two cases may or may not be identical. However, they are substantially similar in that all the patents at issue involve 'interactive whiteboard' technology components. Litigating this singular issue in two different courts could result in conflicting judgments, undermining the enforcement of a court's decision. Thus, judicial economy calls for the consolidation of these cases.

*Id.*, at *7-8. Accordingly, the *Smart Techs.* court granted the defendant's motion to transfer pursuant to the first-filed rule. *See id.*, at *10. *See also Intel Corp. v.*

---

[15] *See, e.g., EEOC v. University of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (citing "similar cases"); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citing "substantial overlap").

14

*Amberwave Systems Corp.*, 233 F.R.D. 416, 417, 418 (D. Del. 2005) (discussing with approval the transfer of a patent infringement case to the District of Delaware by the Eastern District of Texas on the basis of "substantial overlap" with a previously filed declaratory judgment action for patent infringement of a different patent under the first-filed rule).

The overlap between the *actions* here, even following the FAC, is more than sufficient for the North Dakota Action to be given priority over the Delaware Action under the first-filed rule:

- The same parties (Alien and Intermec IP) are involved in both actions.

- All of the patents-at-issue in both actions involve RFID technology. *See* Gengel Decl., ¶ 2.

- More specifically, all but one of the patents at issue in the two actions involve the reader-tag air interface protocol, a specific aspect of RFID technology. *See* Smith Decl., ¶ 2.

- The four patents remaining in the Delaware Action were originally included in the Complaint along with six of the patents first filed in North Dakota. Only after losing its motion to dismiss in North Dakota did Intermec IP attempt to split off these four patents by filing its FAC.

- Three of the four Intermec patents currently remaining in the Delaware Action are directed at the process of selecting a subset of tags from a larger group, which is the same subfield of RFID interface technology that is addressed by two of the patents in suit in the North Dakota Action. *See* Smith Decl., ¶ 4.

- The fourth Intermec patent currently remaining in the Delaware Action, the '222 patent, describes the structure of a flexible RFID tag. *See* Gengel Decl., ¶ 5. Any working embodiment of the '222 patent would necessarily involve the reader-tag air interface technology to which all of the other patents at issue are directed.

15

- The closely related nature of the patents at issue in the two actions will likely cause similar or identical terms, technology, and issues to be raised in claim construction proceedings.

- All of the patents at issue in both actions are included within Intermec's broad portfolio licensing program. *See* Beck Decl., Ex. F.

Given the substantial overlap of both liability and damages issues, it is likely that the relevant witnesses, experts, evidence, and discovery between the two actions will also overlap significantly. Indeed, on January 16 and 17, Alien and Intermec served on one another discovery requests and interrogatories in the North Dakota action. *See* Beck Decl., Ex. G. For Intermec's part, its requests seek exhaustive information regarding every Alien RFID product and Alien's finances, marketing and sales. The discovery requested by both sides was broad; the same information, or a subset of it, would undoubtedly be requested in this action were it to go forward separately.

The substantial overlap between the North Dakota Action and the Delaware Action leads to the inexorable conclusion that the North Dakota Action is the first filed action and is entitled to priority as between the two.

2. **Although The Same Patents Need Not Be At Issue In Both Cases For The First-Filed Rule To Apply, Such Identity Will Exist When Alien's Second Amended Complaint Is Filed In The North Dakota Action.**

As made clear above, the two cases to which the first-filed rule is applied need not be identical for the second-filed action to be dismissed or stayed in favor of the

16

action first-filed.  Yet such identity will exist here, once the District of North Dakota

grants Alien's now-pending motion for leave to file its Second Amended Complaint.

Courts regularly grant leave to amend in patent cases in order to allow claims

concerning related patents to be added to the complaint.  *E.g., Trueposition, Inc v. Allen*

*Telecom, Inc.*, 2002 WL 1558531 (D. Del. July 16, 2002).  In *Trueposition*, this Court

stated:

> [S]ince the patents which Trueposition seeks to add are
> substantially similar to the patents contained in the
> original complaint, it would be economically beneficial to
> the parties to resolve all the issues in a single
> proceeding….Moreover, granting leave to amend will
> benefit the court.  Where the additional patents are closely
> related to the already asserted patents and the patents
> involve similar technology, it is clearly in the interest of
> judicial economy to dispose of all of the claims between
> the parties in one proceeding.  Since the accused products
> are the same, the technology is the same, and the parties
> remain the same, the facts and the issues will substantially
> overlap.  Granting the motion to amend will therefore
> enable the court to address all of these related issues
> simultaneously.

*Id.* at *2.  *See also Intel Corp.*, 233 F.R.D. at 418-419 (D. Del. 2005) (granting motion

to supplement complaint to add a newly issued patent to a declaratory judgment action

for patent infringement despite the fact that the patentee had filed a suit for infringement

of that newly issued patent in another jurisdiction).

The situation in the North Dakota action is strikingly similar to that in

*Trueposition*.  Accordingly, Alien expects that the North Dakota court will grant its

motion for leave to amend.  At that time, the claims relating to the four patents at issue

remaining here will be pending in North Dakota and the actions will be identical (insofar as claims relating to those 4 patents are concerned). Irrespective of Alien's proposed amendment, however, adhering to the first-filed doctrine in this case will "achieve resolution in a single lawsuit of all disputes arising from common matters." *Genentech, supra*, 998 F.2d at 938 (quoting *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1962)). Accordingly, the Delaware Action should be dismissed, stayed or transferred to the District of North Dakota.

**B.    If The Delaware Action Is Not Dismissed, Stayed Or Transferred Under The First-Filed Rule, It Should Be Transferred To The District Of North Dakota Under 28 U.S.C. § 1404(a).**

If the first-filed rule is not applied, the interests of justice, as well as the convenience of parties and witnesses, requires transfer of this action to the District of North Dakota pursuant to 28 U.S.C. § 1404(a). Where similar patent actions are simultaneously pending, transfer of the second-filed case for consolidation with the first-filed case is appropriate. *See Sumito Mitsubishi Silicone Corp. v. MEMC Electronic Materials, Inc.* 2005 U.S. Dist. LEXIS 5174, at *9-*11 (D. Del. Mar. 30, 2005) (court transferred action to United States District Court for the Northern District of California, where another action that involved a "similar" patent was first filed); *Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, at *2 (D. Del. Mar. 25, 2003). The public and private Section 1404(a) factors strongly support transfer of this action for consolidation with the North Dakota Action. Indeed, Intermec itself argued

18

for and received a transfer under quite similar circumstances less than two years ago.[16]
Intermec's arguments for transfer in that case are equally compelling in this one.

### 1.    Section 1404(a) Requires Consideration Of Both Private And Public Interests.

The Third Circuit has explained that courts consider a spectrum of private and public interests in determining whether to transfer a case pursuant to Section 1404(a). *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878-80 (3d Cir. 1995). The private interests identified in *Jumara* and decisions that rest on it are: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *See Sony Electronics, Inc. v. Orion IP, LLC*, 2006 WL 680657, at *2 (D. Del. March 14, 2006).

However, courts in this district have followed *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 197-202 (D. Del. 1998), noting that the first three private factors result in double-counting, if, as the statutory language specifies, the Court must balance the convenience of parties and witnesses. Accordingly, those three factors are not explicitly considered.

---

[16] *See* Beck Decl., Ex. C (ITC's May 18, 2005 memorandum in support of motion to transfer pursuant to 28 U.S.C. § 1404(a)) (the "Intermec Transfer Brief").

19

The public interests are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Sony Electronics*, *supra*, at *2.

As discussed below, an analysis of this case under the standards articulated by the Third Circuit and by many decisions of this Court demonstrates that the balance strongly favors transfer to North Dakota.

### 2. The Public Interests Weigh Strongly In Favor Of Transferring The Delaware Action.

In this case, the public interest factors have somewhat more significance than the private interest factors and weigh strongly in favor of Alien. Of the public interests, several are irrelevant, such as the familiarity with local law and the familiarity of the trial judge with the applicable state law. All relevant factors point directly toward North Dakota.

### a. The Enforceability Of The Judgment.

Allowing or permitting two cases addressing the same patents to proceed virtually simultaneously obviously increases the possibility of conflicting judgments. Such a conflict will impede the enforceability of either judgment. *See Nilssen v. Osram Sylvania, Inc.*, 2001 WL 34368395, at *4 n. 10 (D. Del. May 1, 2001) ("If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern

20

District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.") Here, the Court can obviate the possibility of conflicting judgments by transferring this case to North Dakota.

> **b.    Practical Considerations That Could Make The Trial Easy, Expeditious, Or Inexpensive.**

Courts transfer matters to other jurisdictions precisely because those cases have "the same parties, and the same, or related, patent or patents." *Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, at *2 (D. Del. March 25, 2003). *See also Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504, at *2-3 (D. Del. July 19, 2006) That is the case here. As this Court has explained, "[w]here related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'" *Brunswick Corp. v. Precor Inc.*, 2000 U.S. Dist. LEXIS 22222, at *8 (D. Del. Dec. 12, 2000) (*quoting Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518 (D.N.J 2000)). All practical considerations militate in favor of one trial, before one judge. The fourteen Intermec patents currently in dispute (which are expected to soon narrow to eleven patents) all deal with aspects of RFID technology. Those patents range from one dealing with manufacturing to several dealing with tag selection to others dealing with the tag-reader interface. Each of the patents is complex; together, they will take substantial time for the judge or jury to understand. It would be a

21

colossal waste of judicial resources to ask two courts to climb that learning curve. Moreover, discovery has already commenced in the North Dakota Action, a factor that further weighs in favor of transfer. *See Alloc, Inc. v. Unilin Decor N.V.*, 2006 WL 3050815, at \*3 (D. Del. Oct. 26, 2006).[17]

**c.    The Relative Administrative Difficulty In The Two Fora Resulting From Court Congestion.**

One of the obvious reasons in favor of transferring this case to North Dakota is that there is a lighter docket in that court.  As of September 30, 2005, the number of pending cases per judge in Delaware was 463; it was 180 in North Dakota.   U.S. District Court - Judicial Caseload Profile, http://www.uscourts.gov/cgi-bin/cmsd2005.pl (last visited August 14, 2006; relevant pages attached as Exhibits H and I to the Siegal Declaration).  As of September 30, 2005, the median times to civil disposition and trial in Delaware were 10.9 and 23.4 months, respectively.  *Id.*  In North Dakota, they were 7.3 months and an unstated time.  As of September 30, 2005, the percentage of cases over 3 years old in Delaware and North Dakota was 9.1 and 2.6, respectively.  *Id.*

In sum, it seems quite possible that the time to resolve this matter will be less in North Dakota than in Delaware, based purely on the fact that North Dakota has fewer cases.

---

[17] *See* Beck Decl., Ex. G.

22

      d.      **The Local Interest In Deciding Local Controversies At Home.**

There generally is no local interest in patent cases, *see Alloc, Inc. v. Unilin Decor N.V.*, 2006 WL 3050815, at *3 (D. Del. Oct. 26, 2006), and this factor does not appear applicable.

    **3.**      **The Private Interests Weigh In Favor Of Transferring The Delaware Action.**

      **a.**      **The Convenience Of The Parties As Indicated By Their Relative Physical And Financial Condition.**

Delaware is inconvenient for both parties. Neither party has any presence in Delaware – no office, no personnel, no documents. Intermec IP is located in Henderson, Nevada. Its business appears to consist solely of owning and asserting Intermec's patents. Thus, as a physical matter, location would seem to be a matter of complete indifference to Intermec IP. Alien has its headquarters in Morgan Hill, California, and has a large manufacturing facility in Fargo, North Dakota. Thus, North Dakota is more convenient for Alien and no less convenient for Intermec IP than Delaware.

It is impossible to know Intermec IP's economic condition at this stage, since its financials are consolidated with its parents, Intermec and ITC. The former reported 2005 net earnings of $61 million and total assets of $904 million. Intermec employs approximately 2500 people full-time. Intermec is sufficiently substantial that litigating in North Dakota will not pose an undue burden. *See Affymetrix, supra,* 28 F. Supp. 2d

23

at 208 (noting that "parties are multi-million dollar corporations that can afford to litigate in a distant forum"). In contrast, as of April 1, 2006, Alien had negative net earnings and total assets of about $84 million. Gengel Decl., ¶ 6. As of that date, it employed approximately 240 people. Gengel Decl., ¶ 6.

This is not a case of two relatively equal-sized, established businesses litigating against each other. While both parties will be forced to transport witnesses and counsel to a distant destination, litigating this case in Delaware would clearly burden Alien more than Intermec IP. Permitting Intermec IP to pursue a second case in Delaware concurrently with the case in North Dakota would impose an unjustified burden on Alien. As such, the Delaware action should be transferred to North Dakota.

Finally, although it is true that Intermec chose to bring this suit in Delaware, less deference should be accorded that choice because Delaware is not Intermec's "home turf," or principal place of business. As this Court recently explained in ordering transfer, "although Alloc is incorporated in Delaware and Quick-Step was incorporated in Delaware, and should reasonably expect to litigate in this forum, there is little connection between Delaware and this action or the parties." *Alloc, Inc. v. Unilin Decor N.V.*, 2006 WL 3050815, at *3 (D. Del. Oct. 26, 2006); see also *Corixa Corp. v. IDEC Pharmaceuticals Corp.*, 2002 WL 265094, at *4 (D. Del. Feb. 25, 2002) (fact that three of the parties were Delaware corporations did not prevent this Court from transferring the case, as the technology had "far-reaching implications.").

24

       **b.**      **The Convenience Of The Witnesses – But Only To The Extent That The Witnesses May Actually Be Unavailable For Trial In One Of The Fora.**

The location of witnesses weighs against Delaware. Although Alien cannot speculate as to who Intermec IP's witnesses will be, it is likely that none of the witnesses for either of the parties resides in Delaware. As set forth in the Beck Declaration, Alien is informed and believes that none of the inventors of the patents-in-suit in the North Dakota Action or the Delaware Action resides in Delaware. Even if they say they would appear, as this Court has noted, "despite [such] assurances, the Court cannot guarantee that they will appear for trial." *Affymetrix*, *supra*, 28 F. Supp. 2d at 208.

       **c.**      **The Location Of Books And Records (Similarly Limited To The Extent That The Files Could Not Be Produced In The Alternative Forum).**

This private interest factor has relatively slight weight here, given that the parties will likely transmit their discovery responses to each other by mail (and indeed have already begun discussing discovery logistics in the North Dakota Action). To the extent it is applicable, however, the record location factor leans towards transfer, as Alien has an RFID factory in Fargo, North Dakota, while neither party appears to maintain books or records relevant to the litigation in Delaware.

       **4.**      **The Intermec Transfer Brief And Its Arguments For Transfer Under Parallel Circumstances.**

On May 18, 2005, ITC moved under Section 1404(a) to transfer a patent action filed by Symbol Technologies in the Western District of Wisconsin, on the grounds that

25

it could be consolidated with the patent litigation that was already pending between Intermec and Symbol Technologies in Delaware. *See* Beck Decl., Ex. C. ITC contended that those cases must be consolidated because they involved the same Symbol Technologies patent portfolio and accused Intermec products. *Id.* at 5-6. As ITC argued, "[c]ourts have consolidated patent infringement cases involving different but related patents even when the defendants are different." *Id.* at 6, *citing Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (D. Del. 1986). Accordingly, ITC maintained that, even though different patents involving different technologies were at issue, the Wisconsin action should still be transferred. *See id.* at 7. Noting that it was unconvinced that the patents overlapped between the actions, the Wisconsin district court nonetheless agreed with ITC's arguments regarding the manifest efficiency of consolidation, and granted transfer by order dated July 14, 2005. *See* Beck Decl., Ex. J, at 8-9 (opinion of the Wisconsin court).

The present motion parallels the situation addressed by the Intermec Transfer Brief, and should be granted for much the same reasons that Intermec ardently advanced therein.

26

## VI.    CONCLUSION

For each of the foregoing reasons, Defendant Alien Technology Corporation respectfully requests this Court to dismiss or stay this case.  Alternatively, it requests the Court to transfer this case to the United States District Court for the District of North Dakota.

|  |  |
|---|---|
|  | /s/ Chad M. Shandler |
|  | Frederick L. Cottrell, III (#2555) |
| Of Counsel: | cottrell@rlf.com |
| Gregory P. Stone | Chad M. Shandler (#3796) |
| Charles D. Siegal | shandler@rlf.com |
| Megan M. LaBelle | Richards Layton & Finger, P.A. |
| Daniel A. Beck | One Rodney Square |
| Munger, Tolles & Olson LLP | P.O. Box 551 |
| 355 South Grand Avenue, 35th Floor | Wilmington, Delaware 19899 |
| Los Angeles, California  90071-1560 | Telephone:  (302) 651-7700 |
| Telephone:  (213) 683-9100 | Facsimile:  (302) 651-7701 |
| Facsimile:  (213) 687-3702 |  |

Attorneys for Defendant Alien
Technology Corporation

Dated:  January 23, 2007

27

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19801

I hereby certify that on January 23, 2007, I have caused the foregoing to be sent by Federal Express to the following non-registered participants:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

_____
Chad M. Shandler (#3796)
shandler@rlf.com