## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**INTERMEC IP CORP., a Delaware corporation,**

          **Plaintiff,**

    v.

**ALIEN TECHNOLOGY CORP., a Delaware corporation,**

          **Defendant.**

**C.A. No. 06-411-GMS**

## DECLARATION OF DANIEL A. BECK
## IN SUPPORT OF ALIEN TECHNOLOGY CORP.'S
## MOTION TO DISMISS OR STAY, OR, IN THE ALTERNATIVE, TRANSFER THE
## CLAIMS ALLEGED IN PLAINTIFF'S FIRST AMENDED COMPLAINT

*Of Counsel:*
Gregory P. Stone
Charles D. Siegal
Megan M. LaBelle
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
(213) 683-9100

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
Richards Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

Attorneys for Defendant Alien
Technology Corporation

Dated: January 23, 2007

I, Daniel A. Beck, declare as follows:

1.    I am an attorney duly licensed to practice in the State of California. I am a member of the law firm of Munger, Tolles & Olson LLP, counsel for Alien Technology Corporation ("Alien") in the above-captioned action. The contents of this Declaration are within my personal knowledge.

2.    On June 1, 2006, Alien filed an action in the United States District Court for the District of North Dakota against Plaintiff Intermec IP Corp. ("Intermec IP") and Intermec, Inc. ("Intermec"), Intermec IP's parent ("North Dakota Action"). Attached hereto as Exhibit A is a true and correct copy of the Complaint in the North Dakota Action. The North Dakota Action was assigned to the Honorable Rodney S. Webb.

3.    On June 20, 2006, Alien amended its Complaint to add Intermec Technologies Corporation ("Intermec Technologies") as a defendant. Attached hereto as Exhibit B is a true and correct copy of the Amended Complaint in the North Dakota Action.

4.    Attached hereto as Exhibit C is a true and correct copy of Intermec Technologies Corporation's Memorandum In Support of Its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), dated May 18, 2005.

5.    On January 18, 2007, Intermec filed an answer and counterclaims in the North Dakota Action, which did not include counterclaims for U.S. Patents Nos. 5,828,693; 6,429,775; and 6,288,629. Attached hereto as Exhibit D is a true and correct copy of the Intermec Defendants' Answer to First Amended Complaint for Declaratory Judgment.

6.    Attached hereto as Exhibit E is a true and correct copy of the January 4, 2007 Memorandum Opinion & Order issued by the Hon. Judge Rodney S. Webb in the North Dakota Action.

- 1 -

7.    Attached hereto as Exhibit F is a true and correct printout of Intermec's May 5, 2005 press release regarding its Rapid Start licensing program, as taken from http://www.intermec.com/eprise/main/Intermec/Content/About/NewsPages/pressRelease?section =about&pressID=633.

8.    Attached hereto as Exhibit G are true and correct copies of the document requests and interrogatories that Alien and Intermec served on each other, respectively, on January 16 and 17, 2007 in the North Dakota Action.

9.    Attached hereto as Exhibits H and I are true and correct copies of two pages from the website http://www.uscourts.gov/cgi-bin/cmsd2005.pl.

10.    Attached hereto as Exhibit J is a true and correct copy of the July 14, 2005 Opinion and Order issued by the Hon. Barbara C. Crabb in the Western District of Wisconsin in the matter of Symbol Technologies, Inc. v. Intermec Technologies Corp.

11.    I am informed and believe that none of the inventors of any of the patents-in-suit in this action or the North Dakota Action resides in Delaware.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of January 2007, in the County of Los Angeles, State of California.

Daniel A. Beck

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19801

I hereby certify that on January 23, 2007, I have caused the foregoing to be sent by Federal Express to the following non-registered participants:

Carson P. Veach
Leland W. Hutchinson, Jr.
Jacob D. Koering
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

_____
Chad M. Shandler (#3796)
shandler@rlf.com

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

ALIEN TECHNOLOGY CORPORATION, )
               Plaintiff, )
                                 )
           v.                  )
                                   )
INTERMEC, INC., INTERMEC IP CORP., )
              Defendants. )

Civil Action No. 3:06 cv 51

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Alien Technology Corporation ("Alien"), by its undersigned attorneys, as and for its Complaint against defendants Intermec, Inc. ("Intermec") and Intermec IP Corp. ("Intermec IP") (collectively "Intermec Defendants"), alleges as follows:

### INTRODUCTION

1. This action concerns the invalidity and non-infringement of the following United States Patents, which, on information and belief, are owned by Intermec IP: U.S. Patent No. 5,030,807; U.S. Patent No. 5,777,561; U.S. Patent No. 5,828,693; U.S. Patent No. 5,850,181; U.S. Patent No. 5,912,632; U.S. Patent No. 5,995,019; U.S. Patent No. 6,288,629; U.S. Patent No. 6,400,274; U.S. Patent No. 6,429,775, and U.S. Patent No. 6,812,841 (collectively "patents-in-suit"). The Intermec Defendants have threatened to sue Alien for patent infringement and engaged in other conduct that has created in Alien an objectively reasonable apprehension of suit. Accordingly, as set forth below, Alien asks this Court to declare the patents-in-suit invalid and further to declare that, by making, using, selling, or offering to sell its products, Alien does not infringe any valid claim of the patents-in-suit.

## THE PARTIES

2.    Plaintiff Alien is a manufacturer of Radio Frequency Identification ("RFID") products, including tags and readers. Alien is incorporated under the laws of the State of Delaware, and has its principal place of business at 18220 Butterfield Blvd., Morgan Hill, California 95037.

3.    Since 2004, Alien has maintained a manufacturing facility at 1700 42nd Street SW, Fargo, North Dakota 58103. Alien contracts with numerous local businesses to support its manufacturing efforts in Fargo, including, but not limited to, IT infrastructure and networking support vendors, communications suppliers, office materials suppliers, and janitorial vendors. In addition, Alien has invested approximately $15 million in a new manufacturing facility located in the North Dakota State University Research and Technology Park in Fargo. Over the next two years, Alien plans to invest an additional $25 million to further expand the facility and intends to employ approximately 100 people, including engineers and technicians. However, in light of the Intermec Defendants' allegations of patent infringement, Alien's long-term plans regarding its Fargo facility and related operations may be in jeopardy.

4.    On information and belief, Intermec is a manufacturer of technologies that identify, track, and manage supply chain assets using RFID technology. On information and belief, Intermec is incorporated under the laws of the State of Delaware, and has its principal place of business at 6001 36th Ave. West, Everett, Washington 98203. On information and belief, Intermec IP also is incorporated under the laws of the State of Delaware, and has its principal place of business at 6001 36th Ave. West, Everett, Washington 98203.

## JURISDICTION AND VENUE

5.     This Complaint seeks declaratory relief under the Declaratory Judgment Act, Title 28, United States code, Sections 2201 and 2202. This Court has subject matter jurisdiction of the claims asserted thereunder by reason of Title 28, United States Code, Sections 1331 and 1338(a).

6.     Venue is proper in this District under Title 28, United States Code, Sections 1391(b) and 1400 (b). On information and belief, the Intermec Defendants provide supply chain information products, services, and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in this District.

7.     Venue is proper in the Southeastern Division of this District Pursuant to Local Rule 3.1(A). On information and belief, the Intermec Defendants provide supply chain information products, services, and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in the Southeastern Division of this District.

## THE PATENTS

8.     On information and belief, on July 9, 1991, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,030,807 ("the '807 patent") to Alfred R. Koelle and Jeremy Landt for their invention entitled "System for reading and writing data from and into remote tags." On information and belief, Intermec IP owns all rights and title to the '807 patent, a copy of which is attached hereto as Exhibit A.

9.     On information and belief, on July 7, 1998, the PTO issued U.S. Patent No. 5,777,561 ("the '561 patent") to Trieu Can Chieu, Thomas Anthony Cofino, Harley Kent

Heinrich, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method of grouping RF transponders." On information and belief, Intermec IP owns all rights and title to the '561 patent, a copy of which is attached hereto as Exhibit B.

10.    On information and belief, on October 27, 1998, the PTO issued U.S. Patent No. 5,828,693 ("the '693 patent") to Wesley M. Mays, Aaron J. Kam Siu, and Mike D. Fontanarosa for their invention entitled "Spread spectrum frequency hopping reader system." On information and belief, Intermec IP owns all rights and title to the '693 patent, a copy of which is attached hereto as Exhibit C.

11.    On information and belief, on December 15, 1998, the PTO issued U.S. Patent No. 5,850,181 ("the '181 patent") to Harley Kent Heinrich, Rene Dominic Martinez, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method of transporting radio frequency power to energize radio frequency identification transponders." On information and belief, Intermec IP owns all rights and title to the '181 patent, a copy of which is attached hereto as Exhibit D.

12.    On information and belief, on July 15, 1999, the PTO issued U.S. Patent No. 5,912,632 ("the '632 patent") to David E. Dieska, Daniel Joseph Friedman, Kenneth Alan Goldman, and Harly Kent Heinrich for their invention entitled "Single chip RF tag oscillator circuit synchronized by base station modulation frequency." On information and belief, Intermec IP owns all rights and title to the '632 patent, a copy of which is attached hereto as Exhibit E.

13.    On information and belief, on November 30, 1999, the PTO issued U.S. Patent No. 5,995,019 ("the '019 patent") to Trieu Can Chieu, Thomas Anthony Cofino, Harley Kent Heinrich, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method

for communicating with RF transponders." On information and belief, Intermec IP owns all rights and title to the '019 patent, a copy of which is attached hereto as Exhibit F.

      14.     On information and belief, on September 11, 2001, the PTO issued U.S. Patent No. 6,288,629 ("the '629 patent") to Thomas Anthony Cofino, Daniel Joseph Friedman, Kenneth Alan Goldman, and Harley Kent Heinrich for their invention entitled "Method of using write--ok flag for radio frequency (RF) transponders (RF Tags)." On information and belief, Intermec IP owns all rights and title to the '629 patent, a copy of which is attached hereto as Exhibit G.

      15.     On information and belief, on June 4, 2002, the PTO issued U.S. Patent No. 6,400,274 ("the '274 patent") to Dah-Weih Duan, Daniel J. Friedman, Harley Kent Heinrich, Ian Bardwell-Jones, and Lou Ruggiero for their invention entitled "High-performance mobile power antennas." On information and belief, Intermec IP owns all rights and title to the '274 patent, a copy of which is attached hereto as Exhibit H.

      16.     On information and belief, on August 6, 2002, the PTO issued U.S. Patent No. 6,429,775 ("the '775 patent") to Rene D. Martinez, Harley Kent Heinrich, Paul J. Sousa, and Li-Cheng R. Zai for their invention entitled "Apparatus for transporting radio frequency power to energize radio frequency identification transponders." On information and belief, Intermec IP owns all rights and title to the '775 patent, a copy of which is attached hereto as Exhibit I.

      17.     On information and belief, on November 2, 2004, the PTO issued U.S. Patent No. 6,812,841("the '841 patent") to Harley Kent Heinrich, Vigay Pillai, and David E. Dieska for their invention entitled "Passive RFID tag that retains state after temporary loss of power." On information and belief, Intermec IP owns all rights and title to the '841 patent, a copy of which is attached hereto as Exhibit J.

## COUNT I

(Declaratory Judgment for Invalidity and Non-Infringement of the '807 patent)

18.    The averments of paragraphs 1-17 are repeated and realleged as if fully set forth herein.

19.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

20.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

21.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '807 patent.

22.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '807 patent.

23.    The '807 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT II

(Declaratory Judgment for Invalidity and Non-Infringement of the '561 patent)

24.    The averments of paragraphs 1-23 are repeated and realleged as if fully set forth herein.

25.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

26.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

27.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '561 patent.

28.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '561 patent.

29.    The '561 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT III

(Declaratory Judgment for Invalidity and Non-Infringement of the '693 patent)

30.    The averments of paragraphs 1-29 are repeated and realleged as if fully set forth herein.

31.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

32.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

33.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '693 patent.

34.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '693 patent.

1187367 1

35.    The '693 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT IV

(Declaratory Judgment for Invalidity and Non-Infringement of the '181 patent)

36.    The averments of paragraphs 1-35 are repeated and realleged as if fully set forth herein.

37.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

38.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

39.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '181 patent.

40.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '181 patent.

41.    The '181 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT V

(Declaratory Judgment for Invalidity and Non-Infringement of the '632 patent)

42.    The averments of paragraphs 1-41 are repeated and realleged as if fully set forth herein.

43.     The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

44.     Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

45.     There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '632 patent.

46.     None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '632 patent.

47.     The '632 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT VI

(Declaratory Judgment for Invalidity and Non-Infringement of the '019 patent)

48.     The averments of paragraphs 1-47 are repeated and realleged as if fully set forth herein.

49.     The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

50.     Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

51.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '019 patent.

52.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '019 patent.

53.    The '019 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT VII

(Declaratory Judgment for Invalidity and Non-Infringement of the '629 patent)

54.    The averments of paragraphs 1-53 are repeated and realleged as if fully set forth herein.

55.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

56.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

57.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '629 patent.

58.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '629 patent.

59.    The '629 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT VIII

(Declaratory Judgment for Invalidity and Non-Infringement of the '274 patent)

60.    The averments of paragraphs 1-59 are repeated and realleged as if fully set forth herein.

61.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

62.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

63.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '274 patent.

64.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '274 patent.

65.    The '274 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT IX

(Declaratory Judgment for Invalidity and Non-Infringement of the '775 patent)

66.    The averments of paragraphs 1-65 are repeated and realleged as if fully set forth herein.

67.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

1187367 1

68.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

69.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '775 patent.

70.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '775 patent.

71.    The '775 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT X

(Declaratory Judgment for Invalidity and Non-Infringement of the '841 patent)

72.    The averments of paragraphs 1-71 are repeated and realleged as if fully set forth herein.

73.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

74.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

75.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '841 patent.

76.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '841 patent.

77.    The '841 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

WHEREFORE, ALIEN PRAYS FOR THE FOLLOWING RELIEF:

A.    A declaration that (i) Alien's products do not infringe the patents-in-suit, and (ii) the patents-in-suit are invalid.

B.    A permanent injunction enjoining and restraining the Intermec Defendants, their respective officers, agents, servants, employees, attorneys, and all persons acting in concert with them, and each of them:

1.    From making any claims to any person or entity that Alien's products infringe any of the patents-in-suit;

2.    From interfering with, or threatening to interfere with, the manufacture, sale, license, or use of Alien's products by Alien, its distributors, customers, licensees, successors or assigns, and others; and

3.    From instituting or prosecuting any lawsuit or proceeding, placing in issue the right of Alien, its distributors, customers, licensees, successors or assigns, and others to make, use, or sell Alien's products.

C.    Recovery of Alien's attorneys' fees and costs of suit incurred herein; and

D.    Any other relief the Court deems just and proper.

Dated:  June 1, 2006

DORSEY & WHITNEY LLP

Sarah Andrews Herman (03399)
51B Broadway, Suite 402
PO Box 1344
Fargo, ND 58107-1344
(701) 235-6000

and

Gregory P. Stone
Munger, Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071
(213) 683-9100

ATTORNEYS FOR PLAINTIFF ALIEN
TECHNOLOGY CORPORATION

1187367 1

# EXHIBIT B



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION



ALIEN TECHNOLOGY CORPORATION, )
    Plaintiff, )
      )
v. )
      )
INTERMEC, INC., INTERMEC )
TECHNOLOGIES CORPORATION, )
and INTERMEC IP CORP., )
    Defendants. )

Civil Action No. 3:06 CV 51 (RSW)

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Alien Technology Corporation ("Alien"), by its undersigned attorneys, as and for its First Amended Complaint against defendants Intermec, Inc. ("Intermec"), Intermec Technologies Corporation ("Intermec Technologies"), and Intermec IP Corp. ("Intermec IP") (collectively "Intermec Defendants"), alleges as follows:

### INTRODUCTION

1.      This action concerns the invalidity and non-infringement of the following United States Patents, which, on information and belief, are owned by Intermec IP: U.S. Patent No. 5,030,807; U.S. Patent No. 5,777,561; U.S. Patent No. 5,828,693; U.S. Patent No. 5,850,181; U.S. Patent No. 5,912,632; U.S. Patent No. 5,995,019; U.S. Patent No. 6,288,629; U.S. Patent No. 6,400,274; U.S. Patent No. 6,429,775, and U.S. Patent No. 6,812,841 (collectively "patents-in-suit"). The Intermec Defendants have threatened to sue Alien for patent infringement and engaged in other conduct that has created in Alien an objectively reasonable apprehension of suit. Accordingly, as set forth below, Alien asks this Court to declare the

patents-in-suit invalid and further to declare that, by making, using, selling, or offering to sell its products, Alien does not infringe any valid claim of the patents-in-suit.

## THE PARTIES

2.    Plaintiff Alien is a manufacturer of Radio Frequency Identification ("RFID") products, including tags and readers. Alien is incorporated under the laws of the State of Delaware, and has its principal place of business at 18220 Butterfield Blvd., Morgan Hill, California 95037.

3.    Since 2004, Alien has maintained a manufacturing facility at 1700 42nd Street SW, Fargo, North Dakota 58103. Alien contracts with numerous local businesses to support its manufacturing efforts in Fargo, including, but not limited to, IT infrastructure and networking support vendors, communications suppliers, office materials suppliers, and janitorial vendors. In addition, Alien has invested approximately $15 million in a new manufacturing facility located in the North Dakota State University Research and Technology Park in Fargo. Over the next two years, Alien plans to invest an additional $25 million to further expand the facility and intends to employ approximately 100 people, including engineers and technicians. However, in light of the Intermec Defendants' allegations of patent infringement, Alien's long-term plans regarding its Fargo facility and related operations may be in jeopardy.

4.    On information and belief, the Intermec Defendants manufacture technologies that identify, track, and manage supply chain assets using RFID technology. On information and belief, Intermec is incorporated under the laws of the State of Delaware, and has its principal place of business at 6001 36th Ave. West, Everett, Washington 98203. On information and belief, Intermec Technologies, a wholly-owned subsidiary of Intermec, is

incorporated under the laws of the State of Washington, and has its principal place of business at

6001 36th Ave. West, Everett, Washington 98203. On information and belief, Intermec IP, a

wholly-owned subsidiary of Intermec Technologies, is incorporated under the laws of the State

of Delaware, and has its principal place of business at 6001 36th Ave. West, Everett, Washington

98203.

## JURISDICTION AND VENUE

5.      This Complaint seeks declaratory relief under the Declaratory Judgment

Act, Title 28, United States Code, Sections 2201 and 2202. This Court has subject matter

jurisdiction of the claims asserted thereunder by reason of Title 28, United States Code, Sections

1331 and 1338(a).

6.      Personal jurisdiction exists over the Intermec Defendants because they

have continuous, systematic, and substantial contacts with the State of North Dakota. On

information and belief, the Intermec Defendants provide supply chain information products,

services, and systems to companies in hundreds of industries around the world, and the Intermec

Defendants serve thousands of customers worldwide, including customers in the State of North

Dakota.

7.      Venue is proper in this District under Title 28, United States Code,

Sections 1391(b) and 1400 (b). On information and belief, the Intermec Defendants provide

supply chain information products, services, and systems to companies in hundreds of industries

around the world, and the Intermec Defendants serve thousands of customers worldwide,

including customers in this District.

8.      Venue is proper in the Southeastern Division of this District Pursuant to Local Rule 3.1(A). On information and belief, the Intermec Defendants provide supply chain information products, services, and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in the Southeastern Division of this District.

## THE PATENTS

9.      On information and belief, on July 9, 1991, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,030,807 ("the '807 patent") to Alfred R. Koelle and Jeremy Landt for their invention entitled "System for reading and writing data from and into remote tags." On information and belief, Intermec IP owns all rights and title to the '807 patent, a copy of which is attached hereto as Exhibit A.

10.     On information and belief, on July 7, 1998, the PTO issued U.S. Patent No. 5,777,561 ("the '561 patent") to Trieu Can Chieu, Thomas Anthony Cofino, Harley Kent Heinrich, Paul Jorge Sousa, and Li-Cheng Richard Zai  for their invention entitled "Method of grouping RF transponders." On information and belief, Intermec IP owns all rights and title to the '561 patent, a copy of which is attached hereto as Exhibit B.

11.     On information and belief, on October 27, 1998, the PTO issued U.S. Patent No. 5,828,693 ("the '693 patent") to Wesley M. Mays, Aaron J. Kam Siu, and Mike D. Fontanarosa for their invention entitled "Spread spectrum frequency hopping reader system." On information and belief, Intermec IP owns all rights and title to the '693 patent, a copy of which is attached hereto as Exhibit C.

12.     On information and belief, on December 15, 1998, the PTO issued U.S. Patent No. 5,850,181 ("the '181 patent") to Harley Kent Heinrich, Rene Dominic Martinez, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method of transporting radio frequency power to energize radio frequency identification transponders." On information and belief, Intermec IP owns all rights and title to the '181 patent, a copy of which is attached hereto as Exhibit D.

13.     On information and belief, on July 15, 1999, the PTO issued U.S. Patent No. 5,912,632 ("the '632 patent") to David E. Dieska, Daniel Joseph Friedman, Kenneth Alan Goldman, and Harly Kent Heinrich for their invention entitled "Single chip RF tag oscillator circuit synchronized by base station modulation frequency." On information and belief, Intermec IP owns all rights and title to the '632 patent, a copy of which was is attached hereto as Exhibit E.

14.     On information and belief, on November 30, 1999, the PTO issued U.S. Patent No. 5,995,019 ("the '019 patent") to Trieu Can Chieu, Thomas Anthony Cofino, Harley Kent Heinrich, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method for communicating with RF transponders." On information and belief, Intermec IP owns all rights and title to the '019 patent, a copy of which is attached hereto as Exhibit F.

15.     On information and belief, on September 11, 2001, the PTO issued U.S. Patent No. 6,288,629 ("the '629 patent") to Thomas Anthony Cofino, Daniel Joseph Friedman, Kenneth Alan Goldman, and Harley Kent Heinrich for their invention entitled "Method of using write--ok flag for radio frequency (RF) transponders (RF Tags)." On information and belief,

Intermec IP owns all rights and title to the '629 patent, a copy of which is attached hereto as Exhibit G.

16.    On information and belief, on June 4, 2002, the PTO issued U.S. Patent No. 6,400,274 ("the '274 patent") to Dah-Weih Duan, Daniel J. Friedman, Harley Kent Heinrich, Ian Bardwell-Jones, and Lou Ruggiero for their invention entitled "High-performance mobile power antennas." On information and belief, Intermec IP owns all rights and title to the '274 patent, a copy of which is attached hereto as Exhibit H.

17.    On information and belief, on August 6, 2002, the PTO issued U.S. Patent No. 6,429,775 ("the '775 patent") to Rene D. Martinez, Harley Kent Heinrich, Paul J. Sousa, and Li-Cheng R. Zai for their invention entitled "Apparatus for transporting radio frequency power to energize radio frequency identification transponders." On information and belief, Intermec IP owns all rights and title to the '775 patent, a copy of which is attached hereto as Exhibit I.

18.    On information and belief, on November 2, 2004, the PTO issued U.S. Patent No. 6,812,841("the '841 patent") to Harley Kent Heinrich, Vigay Pillai, and David E. Dieska for their invention entitled "Passive RFID tag that retains state after temporary loss of power." On information and belief, Intermec IP owns all rights and title to the '841 patent, a copy of which is attached hereto as Exhibit J.

## COUNT I

(Declaratory Judgment for Invalidity and Non-Infringement of the '807 patent)

19.    The averments of paragraphs 1-18 are repeated and realleged as if fully set forth herein.

20.     The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

21.     Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

22.     There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '807 patent.

23.     None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '807 patent.

24.     The '807 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT II

(Declaratory Judgment for Invalidity and Non-Infringement of the '561 patent)

25.     The averments of paragraphs 1-24 are repeated and realleged as if fully set forth herein.

26.     The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

27.     Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

28.   There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '561 patent.

29.   None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '561 patent.

30.   The '561 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT III

(Declaratory Judgment for Invalidity and Non-Infringement of the '693 patent)

31.   The averments of paragraphs 1-30 are repeated and realleged as if fully set forth herein.

32.   The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

33.   Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

34.   There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '693 patent.

35.   None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '693 patent.

36.    The '693 patent and each of its claims are invalid, in whole or in part, for

failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT IV

(Declaratory Judgment for Invalidity and Non-Infringement of the '181 patent)

37.    The averments of paragraphs 1-36 are repeated and realleged as if fully set

forth herein.

38.    The Intermec Defendants' actions, including, but not limited to,

threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien

an objectively reasonable apprehension of suit.

39.    Alien manufactures RFID tags and readers, which, on information and

belief, the Intermec Defendants allege infringe the patents-in-suit.

40.    There is, therefore, a substantial, actual, and continuing controversy

between Alien and the Intermec Defendants as to the validity and infringement of the '181

patent.

41.    None of Alien's products, including, but not limited to, its RFID tags and

readers, infringe any valid claim of the '181 patent.

42.    The '181 patent and each of its claims are invalid, in whole or in part, for

failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT V

(Declaratory Judgment for Invalidity and Non-Infringement of the '632 patent)

43.    The averments of paragraphs 1-42 are repeated and realleged as if fully set

forth herein.

44.   The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

45.   Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

46.   There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '632 patent.

47.   None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '632 patent.

48.   The '632 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT VI

(Declaratory Judgment for Invalidity and Non-Infringement of the '019 patent)

49.   The averments of paragraphs 1-48 are repeated and realleged as if fully set forth herein.

50.   The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

51.   Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

52.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '019 patent.

53.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '019 patent.

54.    The '019 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT VII

(Declaratory Judgment for Invalidity and Non-Infringement of the '629 patent)

55.    The averments of paragraphs 1-54 are repeated and realleged as if fully set forth herein.

56.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

57.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

58.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '629 patent.

59.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '629 patent.

60.    The '629 patent and each of its claims are invalid, in whole or in part, for

failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT VIII

(Declaratory Judgment for Invalidity and Non-Infringement of the '274 patent)

61.    The averments of paragraphs 1-60 are repeated and realleged as if fully set

forth herein.

62.    The Intermec Defendants' actions, including, but not limited to,

threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien

an objectively reasonable apprehension of suit.

63.    Alien manufactures RFID tags and readers, which, on information and

belief, the Intermec Defendants allege infringe the patents-in-suit.

64.    There is, therefore, a substantial, actual, and continuing controversy

between Alien and the Intermec Defendants as to the validity and infringement of the '274

patent.

65.    None of Alien's products, including, but not limited to, its RFID tags and

readers, infringe any valid claim of the '274 patent.

66.    The '274 patent and each of its claims are invalid, in whole or in part, for

failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT IX

(Declaratory Judgment for Invalidity and Non-Infringement of the '775 patent)

67.    The averments of paragraphs 1-66 are repeated and realleged as if fully set

forth herein.

68.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

69.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

70.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '775 patent.

71.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '775 patent.

72.    The '775 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

## COUNT X

(Declaratory Judgment for Invalidity and Non-Infringement of the '841 patent)

73.    The averments of paragraphs 1-72 are repeated and realleged as if fully set forth herein.

74.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

75.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

76.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '841 patent.

77.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '841 patent.

78.    The '841 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

WHEREFORE, ALIEN PRAYS FOR THE FOLLOWING RELIEF:

A.    A declaration that (i) Alien's products do not infringe the patents-in-suit, and (ii) the patents-in-suit are invalid.

B.    A permanent injunction enjoining and restraining the Intermec Defendants, their respective officers, agents, servants, employees, attorneys, and all persons acting in concert with them, and each of them:

1.    From making any claims to any person or entity that Alien's products infringe any of the patents-in-suit;

2.    From interfering with, or threatening to interfere with, the manufacture, sale, license, or use of Alien's products by Alien, its distributors, customers, licensees, successors or assigns, and others; and

3.    From instituting or prosecuting any lawsuit or proceeding, placing in issue the right of Alien, its distributors, customers, licensees, successors or assigns, and others to make, use, or sell Alien's products.

1191166.1
4839-2392-2177\1

14

C.   Recovery of Alien's attorneys' fees and costs of suit incurred herein; and

D.   Any other relief the Court deems just and proper.

Dated: June 16, 2006

DORSEY & WHITNEY LLP

Sarah Andrews Herman (03399)
51 Broadway, Suite 402
PO Box 1344
Fargo, ND 58107-1344
(701) 235-6000

and

Gregory P. Stone
Munger, Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA  90071
(213) 683-9100

ATTORNEYS FOR PLAINTIFF ALIEN
TECHNOLOGY CORPORATION

# EXHIBIT C

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SYMBOL TECHNOLOGIES, INC.,

          Plaintiff,

v.

INTERMEC TECHNOLOGIES CORP.,

          Defendant.

Case No. 05-C-0256-C

**JURY TRIAL DEMANDED**

05 - 0 2 6

**DEFENDANT INTERMEC TECHNOLOGIES CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C., § 1404(A)**

### INTRODUCTION

This action is now the fourth lawsuit currently pending between plaintiff Symbol Technologies, Inc. ("Symbol") and defendant Intermec Technologies Corporation ("Intermec"). All three prior cases are pending in the District of Delaware. In one of those cases, Symbol has sued Intermec, claiming that the same products (bar code readers) accused of infringement in this case also infringe four other patents asserted there. *Symbol Technologies, Inc. v. Intermec Technology Corp.*, No. 05-146-SLR (D. Del. filed March 10, 2005) (hereinafter the "Symbol Delaware Action"). *See* Declaration of Arvin Danielson, ¶¶ 4-5 (copy attached to Intermec's § 1404(a) Motion as Exhibit A). *See also*, Complaint, ¶ 9 ("bar code readers"). Thus, transfer is warranted. 28 U.S.C., § 1404(a).

Symbol's choice to attack the same product group in two infringement actions raises many common issues of fact such as how Intermec's accused products function and whether sales of those products precluded any sales of Symbol products causing lost profits. These

common questions warrant transfer and consolidation. Moreover, because Symbol is not entitled to greater recovery if it proves that Intermec's products infringed multiple claims or multiple patents than it would be if it merely proves the infringement of a single claim, the failure to consolidate this action with the Symbol Delaware Action risks inconsistent damage determinations were Symbol to succeed in proving infringement in both cases.[1]

Critically, this case, the only one filed by either party outside of Delaware, has absolutely no connection with the Western District of Wisconsin. Symbol, a Delaware corporation, is based in Holtsville, New York. Complaint, ¶ 2. The two patents in suit list inventors who, at the time of patenting, resided in New York. No document or witness having knowledge pertaining to the validity or infringement of the asserted patents appears to be located in this district. *See* Danielson Declaration, ¶ 3.

Intermec is a Washington corporation based in Everett, Washington. Declaration of Robert Rainier, ¶ 3 (copy attached to Intermec's § 1404(a) Motion as Exhibit B). Intermec has no office in this district, has never sued or been sued in Wisconsin, has attended no trade shows here and does not advertise in Wisconsin based publications. Rainier Decl., ¶¶ 6-9. Intermec employs over 2,500 employees. *Id.*, ¶ 4. Only five Intermec employees reside in Wisconsin. *Id.*, ¶ 5. Only one of those resides in this district. *Id.* Virtually all of Intermec's documents relevant to its accused products and the witnesses having knowledge of those products reside outside of this district, principally in the Seattle, Washington area. *Id.*, ¶ Danielson Decl., ¶ 3.

Until recently, Intermec had an OEM purchasing agreement with Symbol under which Intermec purchased Symbol's laser scan engines for use in Intermec's bar code scanning

---

[1] Intermec, of course, denies that any of its products infringe any Symbol patent and asserts that it has a valid license from Symbol to build its products using the bar code scanning engines that Intermec purchased from Symbol. Until this defense is proven, of course, Intermec runs the risk of inconsistent results if it must defend largely the same set of accused products in two separate infringement actions. That risk warrants transfer and consolidation.

products. That agreement contained a covenant which, with certain stated exceptions, precluded patent infringement suits between the two companies. On June 7, 2004, Intermec sued Matrics, Inc—then an independent competitor of Intermec—in the District of Delaware (cause No. 04-357-GMS) for infringing certain Intermec patents on Radio Frequency Identification or "RFID" technology. In August, 2004, Symbol agreed to acquire Matrics. Thereafter, Symbol claimed that the OEM Agreement's covenant mandated Intermec's dismissal of its patent infringement claim against the former Matrics products.

When Intermec refused to dismiss its infringement claims against the Matrics products, Symbol declared the OEM Agreement terminated and began aggressively suing Intermec. On March 10, 2005, Symbol filed civil action No. 05-146-SLR seeking a declaratory judgment that it had rightly terminated the OEM Agreement because of Intermec's alleged breach arising from its continuing infringement claims against the Matrics products.

On March 10, 2005, Symbol also filed the Symbol Delaware Action asserting four patents allegedly pertaining to Intermec's bar code reader products. At least one of those patents claims aspects of bar code reading technology as an element of the claimed invention. Intermec counterclaimed for patent infringement in that action, asserting six of its own patents against Symbol. At least one of Intermec's counterclaim patents also involves bar code readers.

Thus, transfer of this action for convenience to the District of Delaware under 1404(a) is warranted, for multiple reasons. First, no material connection to this district exists. Second, this action raises common questions of law and fact with the Symbol Delaware Action. Third, judicial economy warrants transfer of this action for consolidation with the related and earlier filed Symbol Delaware Action.

3

Alternatively, transfer of this action for convenience of the parties and witnesses to the District of Washington, where Intermec is headquartered, is also warranted.

### ARGUMENT

**I.    TRANSFER OF THIS ACTION TO DELAWARE IS COMPELLED BOTH BY THE CONVENIENCE OF THE PARTIES AND BY JUDICIAL ECONOMY.**

A motion to transfer venue is governed by 28 U.S.C., § 1404(a), which provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that this action might have been brought in the District of Delaware (where the other actions between these parties are already pending) or in the District of Washington (where Intermec is located). In deciding a motion to transfer venue for convenience, this Court must consider all of the relevant circumstances using the three statutory factors as placeholders. *Coffey v. Van Doren Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986) (three statutory factors: convenience of parties, convenience of witnesses and interests of justice). In this case, each of the factors warrants transfer of this action to the District of Delaware, or, at minimum, a transfer to the District of Washington.

First, no material events relevant to this case occurred in Wisconsin. The inventions claimed in the patents in suit were not created or developed here. The accused products were not designed and are not manufactured here. Danielson Decl., ¶¶ 6-7. These products are sold nationally. *Id.* No particular concentration of sales suggests that this District offers any advantage in access to relevant proof.

Where the forum chosen is not the site of material events, the plaintiff's choice is entitled to no special weight or deference. *United States v. Payne and Dolan, Inc.*, 2003 WL 23185881 at *3 (W.D. Wis.) (plaintiff's choice "will not receive deference" absent material events);

4

*Castleberg v. Covenant Healthcare. L.L.C'.,* 2002 WL 32345613 at *2 (W.D.Wis.). In fact, the absence of material events occurring within this District weighs in favor of transfer. *Liberty Mutual Fire Inc. Co. v. The Nordic Group of Companies. Ltd.,* 2001 WL 34382016 at *7 (W.D.Wis.) ("Other than the fact that the original policy was issued and delivered in Wisconsin, no events, material or otherwise, took place in Wisconsin. This factor weighs in favor of transferring venue")

The geographic convenience of the parties and of the witnesses both favor transfer. Intermec is not aware of any potential witness who resides in this district or in the State of Wisconsin or any relevant documents which are located here. *See* Danielson Decl., ¶ 3. This case presents no question of Wisconsin law. Delaware is far closer to Symbol's New York headquarters, witnesses and documents than is Wisconsin.

Second, and more critically, litigating these infringement claims in Delaware is the only way to preserve the interests of justice. Symbol's tactic of attempting to gain leverage over Intermec by splitting its patent portfolio into multiple attacks on the same group of Intermec products filed in separate actions in different districts is wholly unfair and inappropriate. It is well recognized that "related litigation should be transferred to a forum where consolidation is feasible." *Coffey,* 796 F.2d at 221.

Consolidation is governed by Rule 42(a), F.R.Civ.P.[2] That rule only requires a common question of law or fact for cases to be consolidated. "Common questions of law and fact do not have to predominate" for consolidation to be warranted. *Saudi Basic Industries Corp. v. Exxonmobile Corp.,* 194 F.Supp.2d 378, 416 (D.N.J. 2002) (*quoting* 8 MOORE'S FEDERAL

---

[2] Under Rule 42(a), of course, a prerequisite for consolidation is that the cases be pending in the same court. Thus, it is for the transferee court to decide whether consolidation is actually warranted. Intermec argues here only that consolidation is sufficiently feasible to warrant transfer for judicial economy under 28 U.S.C., § 1404(a). *See Coffey,* 796 F.2d at 221 (related actions should be transferred for consolidation).

5

PRACTICE, § 42.10 at 42-8)    Actions "involving the same parties are apt candidates for consolidation." *Hanes Companies, Inc. v. Ronson*, 712 F.Supp. 1223, 1230 (M.D. N.C. 1988) (*quoting* C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2384, p. 263 (1971)) "Consolidation of tort actions sharing common questions of law and fact is commonplace." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).[3]

Courts have consolidated patent infringement cases involving different but related patents even when the defendants are different. *Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24 (D. Del. 1986). In *Cedars-Sinai*, the court ordered consolidation to avoid inconsistent results:

> Where a jury is the trier of fact on common issues of fact, it should be the *sole* determiner of those issues. Only consolidation, before a single jury, at least on the issues of validity, enforceability and infringement, would protect the plaintiff's constitutional rights ...

*Cedars-Sinai*, 111 F.R.D. at 32 (emphasis original). In this instance, consolidation is warranted both by the economy of deciding common issues only once and to avoid subjecting Intermec to the risk of inconsistent results. Because Intermec products accused in this Court are also accused in the Symbol Delaware Action, judicial economy is served by having only one determination of how those products—bar code readers—technically function.

The Delaware court is already well familiar with the basic technology claimed in the patents which are asserted by Symbol in the Symbol Delaware Action. Symbol just concluded an infringement claim under the same patents against another company. *Symbol Technologies, Inc. v. Proxim, Inc.*, 1:01-CV-00801-SLR. When Symbol filed the Symbol Delaware Action, it designated that case as "related" to the *Proxim* litigation, causing the infringement claim against Intermec to be assigned to the same judge.

---

[3] The infringement of a patent, of course, is a tortuous act.

6

Where the patents in two cases involve the same general technology, "consolidating the parties' dispute in front of one judge would reduce the need for duplicative time consuming tutorials…" *Broadcom Corp. v. Agere Systems, Inc.*, 2004 WL 1176168 at *1 (W.D.Wis.); *Broadcom Corp. v. Mictotune, Inc.*, 2004 WL 503942 at *4 (W.D.Wis.) (case transferred to a district "familiar with the general silicon-based tuner technology" at issue). Although there are a total of twelve patents asserted in the two cases (two by Symbol here; four by Symbol in its Delaware complaint and six by Intermec in its Delaware counterclaim) claiming many separate inventions involving several different technologies, there are sufficient technical similarities between this case and several of the patents in suit in Delaware to warrant transfer to avoid the necessity to educate two federal judges in basically the same technology.

The patents in this case address certain aspects of bar code reading and decoding technology. The Abstract of U.S. Patent No. 5,243,655 (asserted by Symbol in this case) states that the claimed invention relates to "[a] system for representing and recognizing data in machine readable graphic image form    " The Abstract of U.S. Patent No. 5,457,308 (also asserted by Symbol in this case) states that it relates to "[a] method for combining decoded scan fragments" of a bar code to permit the code to be read from the fragments.

U.S. Patent No. 5,892,971 (asserted by Intermec in Delaware) claims a portable battery-powered hand-held data processing device incorporating "an indicia reader input system" in combination with other elements. Claim 1, '971 Patent. One "indicia reader" disclosed in the '971 Patent is a bar code reader. *See* '971 Patent, Col. 23, Lns. 29-35. Because of the "all elements" rule of patent cases, it will be necessary to determine whether Symbol's products involve "an indicia reader input system" of the type claimed by Intermec in the '971 Patent. *See RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F.3d 1255, 1266 (Fed. Cir. 2003)

7

("there can be no infringement . . if even one limitation of a claim or its equivalent is not present"). Thus. Symbol may argue in Delaware that its bar code readers are sufficiently different from the "indicia reader input system" claimed in the '971 Patent to avoid infringement on that basis. If so, the workings of bar code readers will be relevant to resolving of the Symbol Delaware Action.

U.S Patent No. 5,157,687 (asserted by Symbol against Intermec in Delaware) claims a combination including "a hand-held bar code reader" having:

> a light source for directing light toward a bar code symbol to be read and a light detector responsive to reflected light from a bar code symbol to generate an electrical signal containing bar code data

'687 Patent, Claim 1  Again, understanding any differences between the reader claimed in the '687 Patent and other methods of reading bar codes that may be incorporated in Intermec's bar code reader products may be an important issue in resolving claims made under the '687 Patent Although the Symbol Delaware Action also involves other patents raising other technical issues, the technical similarities described above are uncontroverted

More importantly, however, even were this Court to determine that the patents asserted here are so different from the patents asserted in the Symbol Delaware Action that the underlying technologies have nothing material in common, transfer for consolidation would still be warranted because of common damage questions and to avoid exposing Intermec to the risk of inconsistent damage decisions  Such common questions arise whenever the same products are accused of infringing multiple patents

Regardless whether Intermec's bar code readers infringe one claim of any one of Symbol's patents or every claim of every Symbol patent, Symbol could only be entitled to one damage award  It is well-established that damages for patent infringement do not increase with the number of claims infringed. *Square Liner 360 Degrees, Inc. v Chisum*, 1981 WL 48168,

8

215 U.S.P.Q. 1110, 1119 (D. Minn. 1981) (rejecting plaintiff's argument that special verdict omitting some claims warranted overturning damages verdict as insufficient: "Damages are not affected by the number of claims infringed. Plaintiff's rationale is contrary to law ...").

The patent owner has the right to exclude an infringing product from the market. His damages for breach of that exclusion right are "the difference between his pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964). Thus, where the patent owner has multiple rights to exclude the same product from the same market (*i.e.*, the accused product infringes more than one patent claim), the patent owner still has the right to only one recovery:

> To allow recovery of a royalty on Aro's sales after receipt of the equivalent of a royalty on Ford's sales, or to allow any recovery from Aro after receipt of full satisfaction from Ford, would not only disregard the statutory provision for recovery of 'damages' only, but would be at war with virtually every policy consideration in this area of the law.

*Aro*, 377 U.S. at 510 (only "nominal damages" available against contributory infringer because full recovery already received from the direct infringer).

Thus, where a single patent owner attacks a single defendant's product or group of products with different patents in different actions—as Symbol has done here—common questions of law and fact abound. If the damages are to be measured by lost profits, the patent owner must prove what sales of its own products were lost because of the sales of the infringing products. *Karl Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 761 F.2d 649, 653 (Fed.Cir. 1985) (patent owner must prove that he "would have made the sale of a product 'but for' the infringement"). "This rule calls for a reconstruction of the way the market would have developed in the absence of infringement." *Grain Processing Corp. v. American Maize Products Co.*, 979 F.Supp. 1233, 1236 (N.D. Ind. 1997). Thus, no matter how many Symbol patents or

9

claims an Intermec scanner product may have infringed, Symbol cannot recover more than the profit value of its own lost own lost sales. *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed Cir 1989) (accepting *Panduit* test for lost profits which includes "the amount of profit [the patentee] would have made.").

As the *Aro* Court demonstrated, the same limitation applies under a reasonable royalty analysis. 377 U.S. at 510 (no additional royalty from contributory infringer where full infringement recovery from direct infringer already received). "A reasonable royalty is generally an amount which a person desiring to manufacture and sell a patented article as a business proposition would be willing to pay as a royalty to the patent owner." *Armco, Inc v. Republic Steel Corp.*, 707 F.2d 886, 891 (6th Cir. 1983) Where the patented article is protected by more than one patent, the value of a reasonable royalty on less than all of the patents required to legally make, use and sell that article is obviously zero "as a business proposition." No one would willingly pay any meaningful price for the license to one patent when licenses to additional patents are also necessary to legally manufacture and sell the (partially) licensed article Where the accused product is covered by multiple patents, the only reasonable royalty greater than zero is one paid for the right to manufacture the article free and clear of all applicable patent claims

Thus, common questions of law and fact concerning at least damages and the working of Intermec's accused products arise because Symbol has already accused the same products addressed in this action of infringing other patents in the earlier filed Symbol Delaware Action. "One of the primary objectives of consolidation is to prevent separate actions from producing conflicting results." *International Paving Systems, Inc v. Van-Tulco, Inc.*, 806 F.Supp. 17, 22 (E.D. N.Y. 1992). The only effective way to avoid conflicting results given the facts presented is

10

to grant the instant motion. *Cedars-Sinai*, 111 F.R.D. at 32 (single jury must determine common fact issues to avoid inconsistent results). These factors strongly suggest that transfer and consolidation are warranted.

Intermec recognizes that the presence of common issues, while a prerequisite to consolidation, does not automatically require consolidation. *Rohm & Haas Co., v. Mobil Oil Corp.*, 525 F.Supp. 1298, 1309 (D. Del 1981). The transferee court will also have to consider and balance any prejudice to Symbol which would result from consolidation with the Symbol Delaware Action. Intermec does suggest, however, that the presence of common issues is sufficient to warrant transfer. *See Coffey*, 796 F.2d at 221 (transfer is warranted if consolidation is shown to be "feasible"). Arguments about whether consolidation is in fact warranted under the balancing test are for the transferee court to decide.

Regardless, the possibility of prejudice to Symbol from a transfer and consolidation is obviously remote in this case. Symbol could have easily brought all infringement claims directed against the same Intermec products in a single action. Instead, it decided to forum shop. One reason for Symbol's conduct might be to gain leverage over Intermec by needlessly increasing its defense costs by multiplying pending actions. Because such a tactic is illegitimate, precluding its success cannot constitute undue prejudice to Symbol. *See* 28 U.S.C., § 1927.

Another reason might be Symbol's attempt to "end-run" the schedule of the Symbol Delaware Action by obtaining an infringement judgment from this Court (a relatively fast docket where Intermec has not yet filed any infringement counterclaims) before judgment in Delaware (where Intermec has filed infringement counterclaims and where the case may proceed more slowly because 10 patents are involved) can be rendered. Because this reason is also not a

11

legitimate concern, however, it also does not constitute the type of prejudice that would prevent

consolidation upon transfer.

### CONCLUSION

For the above stated reasons, Intermec's Motion to Transfer Venue Pursuant to 28

U.S.C., § 1404(a) must be *GRANTED*.

DATED this _18_ day of May, 2005.

Respectfully submitted:

By: _____
Attorneys for Defendant
Intermec Technologies Corp.
WHYTE HIRSCHBOECK DUDEK S.C.

Eugenia G. Carter
State Bar No. 01011447
One East Main Street, Suite 300
Madison, WI 53703-3300
(608) 255-4440 (telephone)
(608) 258-7138 (facsimile)

FREEBORN & PETERS LLP
Leland W. Hutchinson, Jr.
Carson P. Veach
Jennifer L. Fitzgerald
Jeffrey M. Hansen
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606-6677
(312) 360-6503 (telephone)
(312) 360-6572 (facsimile)

109070

12

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

---

ALIEN TECHNOLOGY CORPORATION, )
                                )
            Plaintiff,          )
                                )
v.                              )  Civil Action No. 3:06 CV 51 (RSW)
                                )
INTERMEC, INC., INTERMEC        )
TECHNOLOGIES CORPORATION,       )
And INTERMEC IP CORP.,          )
                                )
            Defendants.         )

---

## DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT

Defendants, Intermec, Inc., ("Intermec"), Intermec Technologies Corporation ("ITC"),

and Intermec IP Corp. ("IIP") (collectively, the "Intermec Defendants") hereby answer Plaintiff

Alien Technology Corporation's ("Alien") First Amended Complaint for Declaratory Judgment,

as follows:

### INTRODUCTION

1.        This action concerns the invalidity and non-infringement of the following
United States Patents, which, on information and belief are owned by Intermec IP: U.S. Patent
No. 5,030,807; U.S. Patent No. 5,777,561; U.S. Patent No. 5,828,693; U.S. Patent No.
5,850,181; U.S. Patent No. 5,912,632; U.S. Patent No. 5,995,019; U.S. Patent No. 6,288,629;
U.S. Patent No. 6,400,274; U.S. Patent No. 6,429,775, and U.S. Patent No. 6,812,841
(collectively "patents-in-suit"). The Intermec Defendants have threatened to sue Alien for patent
infringement and engaged in other conduct that has created in Alien an objectively reasonable
apprehension of suit. Accordingly, as set forth below, Alien asks this Court to declare the
patents-in-suit invalid and further to declare that, by making, using, selling, or offering to sell its
products, Alien does not infringe any valid claim of the patents-in-suit.

ANSWER:    The Intermec Defendants each admit: (i) that Alien filed this action for

declaratory judgment concerning the invalidity and non-infringement of U.S. Patents 5,030,807;

5,777,561; 5,828,693; 5,850,181; 5,912,632; 5,995,019; 6,288,629; 6,400,274; 6,429,775; and

6,812,841, (ii) that Alien has requested the Court make the declarations listed above and (iii) that

IIP is the owner of these patents. The Intermec Defendants each deny the remaining allegations

in paragraph 1 of the First Amended Complaint.

## THE PARTIES

2.    Plaintiff Alien is a manufacturer of Radio Frequency Identification ("RFID")
products, including tags and readers. Alien is incorporated under the laws of the State of
Delaware, and has its principal place of business at 18220 Butterfield Blvd., Morgan Hill,
California 95037.

**ANSWER:**    The Intermec Defendants each admit the allegations in paragraph 2 of the

First Amended Complaint.

3.    Since 2004, Alien has maintained a manufacturing facility at 1700 42nd Street
SW, Fargo, North Dakota 58103. Alien contracts with numerous local businesses to support its
manufacturing efforts in Fargo, including, but not limited to, IT infrastructure and networking
support vendors, communications suppliers, office materials suppliers, and janitorial vendors. In
addition, Alien has invested approximately $15 million in a new manufacturing facility located
in the North Dakota State University Research and Technology Park in Fargo. Over the next two
years, Alien plans to invest an additional $25 million to further expand the facility and intends to
employ approximately 100 people, including engineers and technicians. However, in light of the
Intermec Defendants' allegations of patent infringement, Alien's long-term plans regarding its
Fargo facility and related operations may be in jeopardy.

**ANSWER:**    The Intermec Defendants are each without knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 3 of the First Amended

Complaint.

4.    On information and belief, the Intermec Defendants manufacture technologies
that identify, track, and manage supply chain assets using RFID technology. On information and
belief, Intermec is incorporated under the laws of the State of Delaware, and has its principal
place of business at 6001 36th Ave. West, Everett, Washington 98203. On information and
belief, Intermec Technologies, a wholly-owned subsidiary of Intermec, is incorporated under the
laws of the State of Washington, and has its principal place of business at 6001 36th Ave. West,
Everett, Washington 98203. On information and belief, Intermec IP, a wholly-owned subsidiary
of Intermec Technologies, is incorporated under the laws of the State of Delaware, and has its
principal place of business at 6001 36th Ave. West, Everett, Washington 98203.

**ANSWER:**    The Intermec Defendants each admit that Intermec is incorporated under

the laws of the State of Delaware, and has a principal place of business at 6001 36th Ave. West,

Everett, Washington 98203, that ITC is a wholly-owned subsidiary of Intermec, Inc. that is incorporated under the laws of the State of Washington, and has its principal place of business at 6001 36th Ave. West, Everett, Washington 98203, and that IIP is a wholly-owned subsidiary of ITC that is incorporated under the laws of the State of Delaware. The Intermec Defendants each deny the remaining allegations in paragraph 4 of the First Amended Complaint.

## JURISDICTION AND VENUE

5.    This Complaint seeks declaratory relief under the Declaratory Judgment Act, Title 28, United States Code, Sections 2201 and 2202. This Court has subject matter jurisdiction of the claims asserted thereunder by reason of Title 28. United States Code, Sections 1331 and 1338(a).

**ANSWER:**    The Intermec Defendants each deny that any case of actual controversy existed between Alien and any of the Intermec Defendants at the time that this case was filed. The Intermec Defendants also each deny that this Court has subject matter jurisdiction to enter any declaratory relief.

6.    Personal jurisdiction exists over the Intermec Defendants because they have continuous, systematic, and substantial contacts with the State of North Dakota. On information and belief, the Intermec Defendants provide supply chain information products, services, and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in the State of North Dakota.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 6 of the First Amended Complaint. Each of the Intermec Defendants deny that there are sufficient minimum contacts between any Intermec Defendant and North Dakota to warrant the constitutional exercise of general personal jurisdiction in this Court. Further answering, because Alien has not alleged and cannot allege specific personal jurisdiction over any Intermec Defendant arising out of any threat of infringement against Alien made in North Dakota by an agent or representative of any Intermec Defendant, there are insufficient minimum contacts between any Intermec Defendant and North Dakota to warrant the constitutional exercise of specific personal jurisdiction over them in this Court. Further answering, because IIP is the sole

3

owner of the patents-in-suit, it is an indispensable party without whose presence complete relief may not be accorded among the other parties within the meaning of Rule 19, Fed.R.Civ.P. As set out above, this Court lacks personal jurisdiction over all of the Intermec Defendants, including IIP.

7.    Venue is proper in this District under Title 28, United States Code, Sections 1391(b) and 1400 (b). On information and belief, the Intermec Defendants provide supply chain information products, services, and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in this District.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 7 of the First Amended Complaint.

8.    Venue is proper in the Southeastern Division of this District Pursuant to Local Rule 3.I(A). On information and belief, the Intermec Defendants provide supply chain information products, services, and systems to companies in hundreds of industries around the world, and the Intermec Defendants serve thousands of customers worldwide, including customers in the Southeastern Division of this District.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 8 of the First Amended Complaint.

## THE PATENTS

9.    On information and belief, on July 9, 1991, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,030,807 ("the '807 patent") to Alfred R. Koelle and Jeremy Landt for their invention entitled "System for reading and writing data from and into remote tags." On information and belief, Intermec IP owns all rights and title to the '807 patent, a copy of which is attached hereto as Exhibit A.

ANSWER:    The Intermec Defendants each admit the allegations in paragraph 9 of the First Amended Complaint.

10.    On information and belief, on July 7, 1998, the PTO issued U.S. Patent No. 5,777,561 ("the '561 patent") to Trieu Can Chieu, Thomas Anthony Cotino, Harley Kent Heinrich, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method of grouping RF transponders." On information and belief, Intermec IP owns all rights and title to the '561 patent, a copy of which is attached hereto as Exhibit B.

4

**ANSWER:**    The Intermec Defendants each admit the allegations in paragraph 10 of the

First Amended Complaint.

11.    On information and belief, on October 27, 1998, the PTO issued U.S. Patent No.
5,828,693 ("the '693 patent") to Wesley M. Mays, Aaron 1. Kam Siu, and Mike D. Fontanarosa
for their invention entitled "Spread spectrum frequency hopping reader system." On information
and belief, Intermec IP owns all rights and title to the '693 patent, a copy of which is attached
hereto as Exhibit C.

**ANSWER:**    The Intermec Defendants each admit the allegations in paragraph 11 of the

First Amended Complaint.

12.    On information and belief, on December 15, 1998, the PTO issued U.S. Patent
No. 5,850,181 ("the '181 patent") to Harley Kent Heinrich, Rene Dominic Martinez, Paul Jorge
Sousa, and Li-Cheng Richard Zai for their invention entitled "Method of transporting radio
frequency power to energize radio frequency identification transponders." On information and
belief, Intermec IP owns all rights and title to the '181 patent, a copy of which is attached hereto
as Exhibit D.

**ANSWER:**    The Intermec Defendants each admit the allegations in paragraph 12 of the

First Amended Complaint.

13.    On information and belief, on July 15, 1999, the PTO issued U.S. Patent No.
5,912,632 ("the '632 patent") to David E. Dieska, Daniel Joseph Friedman, Kenneth Alan
Goldman, and Harly Kent Heinrich for their invention entitled "Single chip RF tag oscillator
circuit synchronized by base station modulation frequency." On information and belief,
Intermec IP owns all rights and title to the '632 patent, a copy of which is attached hereto as
Exhibit E.

**ANSWER:**    The Intermec Defendants each admit the allegations in paragraph 13 of the

First Amended Complaint.

14.    On information and belief, on November 30, 1999, the PTO issued U.S. Patent
No. 5,995,019 ("'the '019 patent") to Trieu Can Chieu, Thomas Anthony Cofino, Harley Kent
Heinrich, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method for
communicating with RF transponders." On information and belief, Intermec IP owns all rights
and title to the '019 patent, a copy of which is attached hereto as Exhibit F

**ANSWER:**    The Intermec Defendants each admit the allegations in paragraph 14 of the

First Amended Complaint.

15.    On information and belief, on September 11,2001, the PTO issued U.S. Patent No. 6,288,629 ("the '629 patent") to Thomas Anthony Cotino, Daniel Joseph Friedman, Kenneth Alan Goldman, and Harley Kent Heinrich for their invention entitled "Method of using write--ok flag for radio frequency (RF) transponders (RF Tags)." On information and belief, Intermec IP owns all rights and title to the '629 patent, a copy of which is attached hereto as Exhibit G.

ANSWER:    The Intermec Defendants each admit the allegations in paragraph 15 of the

First Amended Complaint.

16.    On information and belief, on June 4, 2002, the PTO issued U.S. Patent No. 6,400,274 ("the '274 patent") to Dah-Weih Duan, Daniel J. Friedman, Harley Kent Heinrich, Ian Bardwell-Jones, and Lou Ruggiero for their invention entitled "High-performance mobile power antennas." On information and belief, Intermec IP owns all rights and title to the '274 patent, a copy of which is attached hereto as Exhibit H.

ANSWER:    The Intermec Defendants each admit the allegations in paragraph 16 of the

First Amended Complaint.

17.    On information and belief, on August 6, 2002, the PTO issued U.S. Patent No. 6,429,775 ("the '775 patent") to Rene D. Martinez, Harley Kent Heinrich, Paul J. Sousa, and Li-Cheng R. Zai for their invention entitled "Apparatus for transporting radio frequency power to energize radio frequency identification transponders." On information and belief, Intermec IP owns all rights and title to the '775 patent, a copy of which is attached hereto as Exhibit I.

ANSWER:    The Intermec Defendants each admit the allegations in paragraph 17 of the

First Amended Complaint.

18.    On information and belief, on November 2, 2004, the PTO issued U.S. Patent No. 6,812,841 ("the '841 patent") to Harley Kent Heinrich, Vigay Pillai, and David E. Dieska for their invention entitled "'Passive RFID tag that retains state after temporary loss of power." On information and belief, Intermec IP owns all rights and title to the '841 patent, a copy of which is attached hereto as Exhibit J.

ANSWER:    The Intermec Defendants each admit the allegations in paragraph 18 of the

First Amended Complaint.

## COUNT I

(Declaratory Judgment for Invalidity and Non-Infringement of the '807 patent)

19.    The averments of paragraphs 1-18 are repeated and realleged as if fully set forth herein.

6

ANSWER:    The Intermec Defendants each repeat and re-allege their answers to said

paragraphs as if fully set forth herein.

20.    The Intermec Defendants' actions, including, but not limited to, threatening to sue
Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively
reasonable apprehension of suit.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 20 of the

First Amended Complaint.

21.    Alien manufactures RFID tags and readers, which, on information and belief, the
Intermec Defendants allege infringe the patents-in-suit.

ANSWER:    The Intermec Defendants each deny that, when this action was filed, they

had claimed that Alien's products infringe the patents-in-suit.

22.    There is, therefore, a substantial, actual, and continuing controversy between
Alien and the Intermec Defendants as to the validity and infringement of the '807 patent.

ANSWER:    The Intermec Defendants each deny that, when this suit was filed, any

substantial or actual controversy existed between the parties.

23.    None of Alien's products, including, but not limited to, its RFID tags and readers,
infringe any valid claim of the '807 patent.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 23 of the

First Amended Complaint.

24.    The '807 patent and each of its claims are invalid, in whole or in part, for failure
to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 24 of the

First Amended Complaint.

## COUNT II

(Declaratory Judgment for Invalidity and Non-Infringement of the '561 patent)

25.    The averments of paragraphs 1-24 are repeated and realleged as if fully set forth
herein.

7

ANSWER:    The Intermec Defendants each repeat and re-allege their answers to said

paragraphs as if fully set forth herein.

26.    The Intermec Defendants' actions, including, but not limited to, threatening to sue
Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively
reasonable apprehension of suit.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 26 of the

First Amended Complaint.

27.    Alien manufactures RFID tags and readers, which, on information and belief, the
Intermec Defendants allege infringe the patents-in-suit.

ANSWER:    The Intermec Defendants each deny that, when this action was filed, they

had claimed that Alien's products infringe the patents-in-suit.

28.    There is, therefore, a substantial, actual, and continuing controversy between
Alien and the Intermec Defendants as to the validity and infringement of the '561 patent.

ANSWER:    The Intermec Defendants each deny that a substantial actual controversy

between the parties concerning the infringement of this patent existed when this action was filed.

29.    None of Alien's products, including, but not limited to, its RFID tags and readers,
infringe any valid claim of the '561 patent.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 29 of the

First Amended Complaint.

30.    The '561 patent and each of its claims are invalid, in whole or in part, for failure

to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 30 of the

First Amended Complaint.

## COUNT III

(Declaratory Judgment for Invalidity and Non-Infringement of the '693 patent)

8

31.    The averments of paragraphs 1-30 are repeated and realleged as if fully set forth herein.

ANSWER:    The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

32.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 32 of the First Amended Complaint.

33.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

ANSWER:    The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

34.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '693 patent.

ANSWER:    The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

35.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '693 patent.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 35 of the First Amended Complaint.

36.    The '693 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

ANSWER:    The Intermec Defendants each deny the allegations in paragraph 36 of the First Amended Complaint.

## COUNT IV

(Declaratory Judgment for Invalidity and Non-Infringement of the '181 patent)

9

37.     The averments of paragraphs 1-36 are repeated and realleged as if fully set forth herein.

ANSWER:     The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

38.     The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

ANSWER:     The Intermec Defendants each deny the allegations in paragraph 38 of the First Amended Complaint.

39.     Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

ANSWER:     The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

40.     There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '181 patent.

ANSWER:     The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

41.     None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '181 patent.

ANSWER:     The Intermec Defendants each deny the allegations in paragraph 41 of the First Amended Complaint.

42.     The '181 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

ANSWER:     The Intermec Defendants each deny the allegations in paragraph 42 of the First Amended Complaint.

## COUNT V

10

(Declaratory Judgment for Invalidity and Non-Infringement of the '632 patent)

43.    The averments of paragraphs 1-42 are repeated and realleged as if fully set forth herein.

**ANSWER:**    The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

44.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 44 of the First Amended Complaint.

45.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

**ANSWER:**    The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

46.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '632 patent.

**ANSWER:**    The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

47.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '632 patent.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 47 of the First Amended Complaint.

48.    The '632 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

**ANSWER:**    The Intermec Defendants each deny the allegations as stated in paragraph 48 of the First Amended Complaint.

## COUNT VI

(Declaratory Judgment for Invalidity and Non-Infringement of the '019 patent)

49.    The averments of paragraphs 1-48 are repeated and realleged as if fully set forth herein

**ANSWER:**    The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

50.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 50 of the First Amended Complaint.

51.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

**ANSWER:**    The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

52.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '019 patent.

**ANSWER:**    The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

53.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '019 patent.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 53 of the First Amended Complaint.

54.    The '019 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 54 of the First Amended Complaint.

## COUNT VII

(Declaratory Judgment for Invalidity and Non-Infringement of the '629 patent)

55.    The averments of paragraphs 1-54 are repeated and realleged as if fully set forth herein.

**ANSWER:**    The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

56.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 56 of the First Amended Complaint.

57.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

**ANSWER:**    The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

58.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '629 patent.

**ANSWER:**    The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

59.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '629 patent.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 59 of the First Amended Complaint.

60.    The '629 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 60 of the First Amended Complaint.

## COUNT VIII

(Declaratory Judgment for Invalidity and Non-Infringement of the '274 patent)

61.    The averments of paragraphs 1-60 are repeated and realleged as if fully set forth herein.

**ANSWER:**    The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

62.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 62 of the First Amended Complaint.

63.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

**ANSWER:**    The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

64.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '274 patent.

**ANSWER:**    The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

65.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '274 patent.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 65 of the First Amended Complaint.

66.    The '274 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 66 of the First Amended Complaint.

14

## COUNT IX

(Declaratory Judgment for Invalidity and Non-Infringement of the '775 patent)

67.    The averments of paragraphs 1-66 are repeated and realleged as if fully set forth herein.

**ANSWER:**    The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

68.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 68 of the First Amended Complaint.

69.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

**ANSWER:**    The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

70.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '775 patent.

**ANSWER:**    The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

71.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '775 patent.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 71 of the First Amended Complaint.

72.    The '775 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 72 of the First Amended Complaint.

15

## COUNT X

(Declaratory Judgment for Invalidity and Non-Infringement of the '841 patent)

73.    The averments of paragraphs 1-72 are repeated and realleged as if fully set forth herein.

**ANSWER:**    The Intermec Defendants each repeat and re-allege their answers to said paragraphs as if fully set forth herein.

74.    The Intermec Defendants' actions, including, but not limited to, threatening to sue Alien for patent infringement on or about May 8, 2006, have created in Alien an objectively reasonable apprehension of suit.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 74 of the First Amended Complaint.

75.    Alien manufactures RFID tags and readers, which, on information and belief, the Intermec Defendants allege infringe the patents-in-suit.

**ANSWER:**    The Intermec Defendants each deny that, when this action was filed, they had claimed that Alien's products infringe the patents-in-suit.

76.    There is, therefore, a substantial, actual, and continuing controversy between Alien and the Intermec Defendants as to the validity and infringement of the '841 patent.

**ANSWER:**    The Intermec Defendants each deny that a substantial actual controversy between the parties concerning the infringement of this patent existed when this action was filed.

77.    None of Alien's products, including, but not limited to, its RFID tags and readers, infringe any valid claim of the '841 patent.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 77 of the First Amended Complaint.

78.    The '841 patent and each of its claims are invalid, in whole or in part, for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code.

**ANSWER:**    The Intermec Defendants each deny the allegations in paragraph 78 of the First Amended Complaint.

## STATEMENT OF AFFIRMATIVE DEFENSES

Defendants Intermec, ITC and IIP, for their statement of affirmative defenses pursuant to Rule 8(c), F.R.Civ.P., respectfully state as follows:

1.    IIP unconditionally covenants and agrees not to sue Alien for infringement as to any claim of U.S. Patent 5,828,693 based upon the products currently manufactured and sold by Alien.

2.    IIP unconditionally covenants and agrees not to sue Alien for infringement as to any claim of U.S. Patent 6,288,629 based upon the products currently manufactured and sold by Alien.

3.    IIP unconditionally covenants and agrees not to sue Alien for infringement as to any claim of U.S. Patent 6,429,775 based upon the products currently manufactured and sold by Alien.

4.    In light of the above, this Court lacks subject matter jurisdiction to adjudicate the declaratory relief sought by Alien in Counts III, VII, and IX of the First Amended Complaint.

## COUNTERCLAIMS

Now comes Counterclaim Plaintiff, Intermec IP Corp. ("IIP"), by its undersigned attorneys, and for its counterclaims against Counterclaim Defendant Alien Technologies Corp. ("Alien"), respectfully alleges as follows:

## JURISDICTION AND VENUE

1.    IIP continues to deny that it is subject to personal jurisdiction in North Dakota of this District. *See* Answer to First Amended Complaint, ¶ 6. Because the Court has denied IIP's Motion to Dismiss on these grounds, however, IIP must bring these compulsory counterclaims or risk collateral estoppel. *See Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347

F.3d 935 (Fed. Cir. 2003). In bringing these compulsory counterclaims, IIP is not intending to voluntarily invoke the jurisdiction of this Court with permissive claims or to subject itself to personal jurisdiction in North Dakota.

2.    These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 101 et seq. This Court has subject matter jurisdiction under 28 U.S.C. § 1338(a).

3.    This Court has personal jurisdiction over Alien to adjudicate these counterclaims because Alien has continuous, systematic and substantial contacts with the State of North Dakota.

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b), and in this Division pursuant to Local Rule 3.1(A).

## THE PARTIES

5.    Plaintiff IIP is incorporated under the laws of the State of Delaware, and has its principal place of business in Henderson, Nevada.

6.    On information and belief, Defendant Alien is incorporated under the laws of the State of Delaware, and has its principal place of business at 18220 Butterfield Blvd., Morgan Hill, CA 95037.

## ASSERTED PATENTS

7.    On July 9, 1991, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 5,030,807 ("the '807 patent") to Alfred R. Koelle and Jeremy Landt for their invention entitled "System for reading and writing data from and into remote tags." IIP owns all rights and title to the '807 patent. A copy of the '807 Patent is attached hereto as Exhibit A.

18

8.    On July 7, 1998, the PTO issued U.S. Patent No. 5,777,561 ("the '561 Patent") to Trieu Can Chieu, Thomas Anthony Cofino, Harley Kent Heinrich, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method of Grouping RF Transponders." IIP owns all right and title to the '561 Patent. A copy of the '561 Patent is attached hereto as Exhibit B.

9.    On December 15, 1998, the PTO issued U.S. Patent No. 5,850,181 ("the '181 Patent") to Harley Kent Heinrich, Rene Dominic Martinez, Paul Jorge Sousa, and Li-Cheng Richard Zai for their invention entitled "Method of Transporting Radio Frequency Power to Energize Radio Frequency Identification Transponders." IIP owns all right and title to the '181 Patent. A copy of the '181 Patent is attached hereto as Exhibit C.

10.    On June 15, 1999, the PTO issued U.S. Patent No. 5,912,632 ("the '632 Patent") to David E. Dieska, Daniel Joseph Friedman, Kenneth Alan Goldman and Harley Kent Heinrich for their invention entitled "Single Chip RF Tag Oscillator Circuit Synchronized By Base Station Modulation Frequency." IIP owns all right and title to the '632 Patent. A copy of the '632 Patent is attached hereto as Exhibit D.

11.    On November 30, 1999, the PTO issued U.S. Patent No. 5,995,019 ("the '019 Patent") to Trieu Can Chieu, Thomas Anthony Cofino, Harley Kent Heinrich, Paul Jorge Sousa and Li-Cheng Richard Zai for their invention entitled "Method for Communicating with RF Transponders." IIP owns all right and title to the '019 Patent. A copy of the '019 Patent is attached hereto as Exhibit E.

12.    On information and belief, on June 4, 2002, the PTO issued U.S. Patent No. 6,400,274 ("the '274 patent") to Dah-Weih Duan, Daniel J. Friedman, Harley Kent Heinrich, Ian Bardwell-Jones, and Lou Ruggiero for their invention entitled "High-performance mobile power

19

antennas." IIP owns all rights and title to the '274 Patent. A copy of the '274 Patent is attached hereto as Exhibit F.

13.    On November 2, 2004, the PTO issued U.S. Patent No. 6,812,841 ("the '841 Patent") to Harley Kent Heinrich, Vijay Pillai, and David E. Dieska for their invention entitled "Passive RFID Tag That Retains State After Temporary Loss of Power." IIP owns all right and title to the '841 Patent. A copy of the '841 Patent is attached hereto as Exhibit G.

14.    The '807, '561, '181, '632, '019, '274, and '841 Patents (collectively, the "IIP Patents") each relate to Radio Frequency Identification ("RFID") technology, which has many applications. The object of any RFID system is to carry data in suitable transponders, generally known as tags, and to retrieve the data, by machine-readable means, at a suitable time and place to satisfy particular application needs. Data within a tag may provide identification for an item in manufacture, goods in transit, a location and/or identity of a vehicle, an animal or individual. By including additional data, it is possible to provide applications with item specific information or instructions immediately available on reading the tag, for example, the color of paint for a car body entering a paint spray area on the production line, the set-up instructions for a flexible manufacturing cell or the manifest to accompany a shipment of goods.

15.    An RFID system requires, in addition to tags, a means of reading or interrogating the tags and some means of communicating the data to a host computer or information management system. In an RFID system, an interrogating device emits a radio signal to activate the tag and read data from it and, in some instances, write data to it.

**ACCUSED PRODUCTS**

20

16.    Alien makes, uses, sells and/or offers for sale RFID products, including RFID readers and tags, that infringe the IIP Patents.

17.    These products include, but are not limited to, Alien's RFID Reader ALR-9800, and its RFID Tags ALL-9440 "Gen2 Squiggle™" and ALL-9460 "Omni-Squiggle™". (These products are collectively referred to as "Accused Products.")

## COUNT I

### (Infringement of the '807 Patent)

18.    IIP incorporates paragraphs 1 through 17 of its Counterclaim by reference as though fully set forth herein.

19.    By virtue of its manufacture, use, sale, offer for sale and/or encouragement of others to use its RFID products, including the Accused Products, Alien has been and still is infringing, inducing the infringement of and/or contributing to the infringement of the '807 Patent.

20.    Alien's infringement of the '807 Patent has caused, and will continue to cause, IIP substantial and irreparable injury for which IIP is entitled to receive injunctive relief.

21.    Upon information and belief, Alien's infringement of the '807 patent has been willful and deliberate.

## COUNT II

### (Infringement of the '561 Patent)

22.    IIP incorporates paragraphs 1 through 17 of its Counterclaim by reference as though fully set forth herein.

23.    By virtue of its manufacture, use, sale, offer for sale and/or encouragement of others to use its RFID products, including the Accused Products, Alien has been and still is infringing, inducing the infringement of and/or contributing to the infringement of the '561 Patent.

24.    Alien's infringement of the '561 Patent has caused, and will continue to cause, IIP substantial and irreparable injury for which IIP is entitled to receive injunctive relief.

25.    Upon information and belief, Alien's infringement of the '561 patent has been willful and deliberate.

## COUNT III

### (Infringement of the '181 Patent)

26.    IIP incorporates paragraphs 1 through 17 of its Counterclaim by reference as though fully set forth herein.

27.    By virtue of its manufacture, use, sale, offer for sale and/or encouragement of others to use its RFID products, including the Accused Products, Alien has been and still is infringing, inducing the infringement of and/or contributing to the infringement of the '181 Patent.

28.    Alien's infringement of the '181 Patent has caused, and will continue to cause, IIP substantial and irreparable injury for which IIP is entitled to receive injunctive relief.

29.    Upon information and belief, Alien's infringement of the '181 patent has been willful and deliberate.

## COUNT IV

### (Infringement of the '632 Patent)

30.    IIP incorporates paragraphs 1 through 17 of its Counterclaim by reference as though fully set forth herein.

31.    By virtue of its manufacture, use, sale, offer for sale and/or encouragement of others to use its RFID products, including the Accused Products, Alien has been and still is infringing, inducing the infringement of and/or contributing to the infringement of the '632 Patent.

32.    Alien's infringement of the '632 Patent has caused, and will continue to cause, IIP substantial and irreparable injury for which IIP is entitled to receive injunctive relief.

33.    Upon information and belief, Alien's infringement of the '632 patent has been willful and deliberate.

## COUNT V

### (Infringement of the '019 Patent)

34.    IIP incorporates paragraphs 1 through 17 of its Counterclaim by reference as though fully set forth herein.

35.    By virtue of its manufacture, use, sale, offer for sale and/or encouragement of others to use its RFID products, including the Accused Products, Alien has been and still is infringing, inducing the infringement of and/or contributing to the infringement of the '019 Patent.

36.    Alien's infringement of the '019 Patent has caused, and will continue to cause, IIP substantial and irreparable injury for which IIP is entitled to receive injunctive relief.

23

37.    Upon information and belief, Alien's infringement of the '019 patent has been willful and deliberate.

## COUNT VI

### (Infringement of the '274 Patent)

38.    IIP incorporates paragraphs 1 through 17 of its Counterclaim by reference as though fully set forth herein.

39.    By virtue of its manufacture, use, sale, offer for sale and/or encouragement of others to use its RFID products, including the Accused Products, Alien has been and still is infringing, inducing the infringement of and/or contributing to the infringement of the '274 Patent.

40.    Alien's infringement of the '274 Patent has caused, and will continue to cause, IIP substantial and irreparable injury for which IIP is entitled to receive injunctive relief.

41.    Upon information and belief, Alien's infringement of the '274 patent has been willful and deliberate.

## COUNT VII

### (Infringement of the '841 Patent)

42.    IIP incorporates paragraphs 1 through 17 of its Counterclaim by reference as though fully set forth herein.

43.    By virtue of its manufacture, use, sale, offer for sale and/or encouragement of others to use its RFID products, including the Accused Products, Alien has been and still is infringing, inducing the infringement of and/or contributing to the infringement of the '841 Patent.

24

44.    Alien's infringement of the '841 Patent has caused, and will continue to cause, IIP substantial and irreparable injury for which IIP is entitled to receive injunctive relief.

45.    Upon information and belief, Alien's infringement of the '841 patent has been willful and deliberate.

## DEMAND FOR RELIEF

WHEREFORE, Counterplaintiff IIP prays that this Court enter judgment in its favor and against Alien as follows:

A.    That Alien has infringed the IIP Patents;

B.    That Alien's infringement of the IIP Patents was willful;

C.    Enjoining and prohibiting Alien, its officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with Defendant, from further infringement of the IIP Patents;

D.    Awarding IIP damages from Alien adequate to compensate IIP for Alien's infringement of the IIP Patents, as shown at trial;

E.    Awarding IIP treble damages based on the willfulness of Alien's infringement;

F.    Declaring this case exceptional pursuant to 35 U.S.C. § 285 and award Intermec its costs and reasonable attorneys' fees;

G.    Awarding IIP pre-judgment interest;

H.    Awarding IIP its costs of suit;

I.    Declaring all of the IIP Patents valid and enforceable; and

J.    Granting IIP such other and further relief as the Court deems just and proper.

25

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, IIP demands trial by jury of all issues triable of right by a

jury.

Dated: January 17, 2006          Respectfully Submitted,

INTERMEC, INC., INTERMEC TECHNOLOGIES
CORP., and INTERMEC IP CORP,

By:      _____
              One of Their Attorneys

Ronald H. McLean
Jane L. Dynes
SERKLAND LAW FIRM
10 Roberts Street
P.O. Box 6017
Fargo, ND 58108-6107
(701) 232-8957 phone
(701) 237-4049 fax

and

Carson P. Veach
Leland W. Hutchinson, Jr.
David S. Becker
Jacob D. Koering
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000 phone
(312) 360-6595 fax

THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil No.: 3:06-CV-51 |
| vs. | ) ) ) | CERTIFICATE OF SERVICE |
| INTERMEC, INC., a Delaware corporation, INTERMEC TECHNOLOGIES CORP., a Delaware corporation, and INTERMEC IP CORP., a Delaware corporation, | ) ) ) ) ) | |
| Defendant. | ) ) | |

I hereby certify that on Thursday, January 18, 2007, the following document:

**DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

was hereby electronically filed with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

| | |
|---|---|
| **Sarah A. Herman**<br>51 Broadway, Suite 402<br>PO Box 1344<br>Fargo, ND 58107-1344 | **Carson P. Veach**<br>**Freeborn & Peters LLP**<br>**311 South Wacker Drive, Suite 3000**<br>**Chicago, IL 60606-6677** |
| **Gregory P. Stone**<br>Munger, Tolles & Olson LLP<br>355 South Grand Avenue<br>35th Floor<br>Los Angeles, CA 90071 | **David S. Becker**<br>**Freeborn & Peters LLP**<br>**311 South Wacker Drive, Suite 3000**<br>**Chicago, IL 60606-6677** |

Dated January 18, 2007.

SERKLAND LAW FIRM

s/ Ronald H. McLean
Ronald H. McLean (ID# 03260)
Jane L. Dynes (ID #04495)
10 Roberts Street
P.O. Box 6017
Fargo, North Dakota 58108-6017
Tel. No. (701) 232-8957

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

ALIEN TECHNOLOGY CORPORATION,    )
                                 )
                    Plaintiff,   )
                                 )    Case No. 3:06-cv-51
v.                               )
                                 )
INTERMEC, INC., INTERMEC         )
TECHNOLOGIES CORPORATION,        )
and INTERMEC IP CORP.,           )
                                 )
                    Defendants.  )

## Memorandum Opinion & Order

Intermec, Inc. ("Intermec"), Intermec Technologies Corporation ("ITC"), and Intermec IP Corporation ("IIP") (collectively "the Intermec Defendants") move for dismissal of this lawsuit. They argue that this Court does not have subject matter jurisdiction and that they are not subject to personal jurisdiction in this district. Concluding this Court does have subject matter jurisdiction and all Intermec Defendants are subject to personal jurisdiction in this district, the Intermec Defendants' Motion to Dismiss is **DENIED**.

I.    **Facts**

Alien Technologies Corporation ("Alien") is incorporated under the laws of Delaware with its principal place of business in Morgen Hill, California (Doc. #1). It manufactures radio frequency identification ("RFID") products. Id. It has two manufacturing facilities in Fargo, North Dakota. Id.

Intermec is incorporated under the laws of Delaware with its principal place of business in Everett, Washington (Doc. 9, Exh.

B). Intermec is purely a holding company that owns other corporations. <u>Id.</u> ITC, a wholly-owned subsidiary of Intermec, is incorporated under the laws of Washington and has its principal place of business in Everett, Washington. <u>Id.</u> ITC manufactures and sells automated identification and data collection products, systems, and services, including RFID products, systems, and services. <u>Id.</u> IIP, a wholly-owned subsidiary of ITC, is incorporated under the laws of Delaware and has its principal place of business in Henderson, Nevada. <u>Id.</u> IIP is a patent holding company that owns patents, licenses them, and collects royalties. <u>Id.</u> IIP is the owner of all the patents at issue in this lawsuit. <u>Id.</u>

During Intermec's first quarter 2006 earnings call with investors, the following exchange took place between a financial analyst and Steve Winter, Intermec's President and Chief Operations Officer:

<u>Question</u>

On question on RFID and royalty revenues on a go-forward basis. You have a number of non-licensed companies out there selling products, some of which are winning large size contracts. How long can you wait before needing to step in and enforce the Rapid Start program [a licensing program Intermec initiated to solicit patents licenses from its competitors]?

<u>Answer</u>

It's obviously disappointing if any customer were to do business with a supplier that is not licensed. But you know, we have consistently stated we will be pursuing infringers. We are putting together cases. We are looking at those who are most disruptive to the industry right now. And basically, preparations are underway with respect to unlicensed suppliers like

2

Alien and others.  And we expect those enforcement
actions by the end of the year, or within this year.

Doc. 9, Exh. C, Earnings Call Tr., at pp. 11-12.  A short time
later, the following exchange took place between a financial
analyst and Larry Brady, Intermec's Chairman, President, and
Chief Executive Officer:

Question

   In terms of the fact that you mentioned on this
call that you might be taking some legal action against
folks that have not been signed up so far for Rapid
Start at some point during the year, could you give us
some color as to what the potential impact on your SG&A
line could be of taking such action, or whether similar
to the (indiscernible) settlements you might have it
not impacting your expense line in the near-term?

Answer

   The answer to the question which you asked that we
have given in the past and are still comfortable with
is that - A., we intended to defend ourselves; B., . .
. . I hate to be more specific about that, because we
don't want to constrain our ability to defend.  And I
think it is also fair to say that in the past, what we
have said is it's only logical that we would wait until
the recovery from an action, at least would manage to
pay us back our court cost, before we would launch such
a program.

   I think given the circumstances that we are
currently looking at - that is, the amazing propensity
of people to take business well below cost, and the
amazing publicity which such actions receive - that we
are apt to move in advance of where we would have
originally intended.  And indeed, the limitation on
when we will take action now is more related to just
the [wickets] that we have to go through - that is,
[get the] product, and dissemble the product and
understand that infringement is occurring.  Because
we've got a certain obligation, before we just go out
and willy nilly start filing lawsuits, to demonstrate
that there's [a] cause of action.  So that is the path
we are currently on.

Doc. 9, Exh. C, Earnings Call Tr., at pp. 15-16.

In reaction to these statements, Alien filed this lawsuit, seeking a declaratory judgment that its products do not infringe any of the Intermec Defendants' patents or that the patents in issue are invalid.  The Intermec Defendants filed the pending motion to dismiss, arguing this Court does not have jurisdiction over the case or them as defendants.

Neither party disputes the Intermec Defendants do not have any offices, facilities, other assets, or employees in North Dakota.  However, ITC has had contact with the state.  ITC has been registered with the North Dakota Secretary of State as a foreign business corporation in active and good standing since July 1999 (doc. #47, Exh. C).  ITC has sold various products in North Dakota, although not the RFID products at issue here (doc. #9, Exh. B).  In 2005, ITC sold approximately $270,000 worth of products directly to companies in North Dakota.  Id.  According to Alien, its discovery into other sales ITC made directly to North Dakota totaled approximately $2.1 million for 2001-2005 (doc. #46).  ITC agents have traveled to North Dakota for different business purposes since 2001.  Id.  Finally, ITC entered into a partnership with Microsoft and Microsoft Business Solutions (doc. #46, Exh. G).  According to Intermec's website, which serves all the Intermec Defendants, "Intermec is a business partner with Microsoft and Microsoft Business Solutions and has dedicated this site to providing Microsoft Business Solutions customers with the latest information related to the use and deployment of ADC technology to enhance their Microsoft Business

Solution products." Id. Microsoft Business Solutions' principal place of business is in Fargo, North Dakota.

## II. Discussion

For this lawsuit to stand, the Court must resolve three issues: (1) whether the Intermec officers' statements at its earnings call, along with other circumstances, created an actual case or controversy for subject matter jurisdiction; (2) whether ITC's contacts with North Dakota are sufficient for personal jurisdiction over it; and (3) if so, whether ITC's contacts with North Dakota can be imputed to Intermec and IIP. Because this is a declaratory-judgment action for non-infringement or invalidity of a patent, Federal Circuit caselaw controls this Court's analysis. Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1269 (Fed. Cir. 1998).

### A. Subject Matter Jurisdiction

Title 28 U.S.C. § 2201(a) requires an "actual controversy" to maintain an action for declaratory judgment:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

This requirement is founded on the concepts of standing, ripeness, and courts not issuing advisory opinions. BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 977 (Fed. Cir. 1993).

In the context of a patent rights lawsuit, the plaintiff must prove two elements to show an actual controversy: "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." Id. at 978. The defendant's conduct must "indicate defendant's intent to enforce its patent." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988). The conduct can be a direct threat of suit or indirect conduct that, when considered within the totality of the circumstances, demonstrates a reasonable apprehension of suit. Id. In other words, the defendant cannot couch its communications in legally savvy language to make it appear that it is not seeking to enforce its patent. Id. The conduct does not have to be directed to the plaintiff but may be made to third parties that have an interest in the industry such as customers. See id. at 737. Alien has conceded that its RFID products may infringe IIP's patents. Therefore, the second prong of the test is met, leaving only whether the Intermec Defendants' conduct created a reasonable apprehension of suit.

In BP Chemicals, BP sued its competitor, Union Carbide, for a declaratory judgment of non-infringement or patent invalidity. 4 F.3d at 977. BP claimed Union Carbide's conduct toward potential licensees, licensees BP was also trying to secure, showed an actual case and controversy. Id. at 978. Union

Carbide's conduct included refusing to give BP licensees permission to use a technology Union Carbide had patented and stating to a potential licensee during negotiations that it believed it had a strong patent in a strategically advantageous technology and asking if that potential licensee had increased indemnification from BP. _Id._ at 978-79. The Federal Circuit noted this was a "close factual question," but the court concluded there was no objective apprehension of a lawsuit. _Id._ at 980.

If BP Chemicals presented a "close factual question," this case clearly presents an actual case or controversy. Intermec executives, who had authority to credibly speak on behalf of Intermec, made the statements during a quarterly conference call to a large audience with a vested interest in the industry. Intermec's statements would affect how investors viewed Intermec and its competitors. Winter stated, "And basically, preparations are underway with respect to unlicensed suppliers like Alien and others. And we expect those enforcement actions by the end of the year, or within this year." The statement referenced patent enforcement lawsuits and singled out Alien as a possible defendant. Winter's statement also provided a time line, stating Intermec would sue by the end of 2006, if not sooner. These statements sent a clear message to the audience: Alien could expect to be sued by the end of 2006.

The Intermec Defendants attempt to qualify Winter's statements by emphasizing Brady's statements, claiming Brady's

statements show an investigation of possible infringement and not an intent to file a lawsuit. However, even Brady said "we intended to defend ourselves" and he did not want to say more out of fear it could constrain how they defend themselves. Regarding Brady's statement that they would not "willy nilly start filing lawsuits," the Court finds this statement was a diplomatic attempt to hide Intermec's intent to sue Alien. Couching threats in legally savvy language does not resolve an objective apprehension of suit. Arrowhead Indus. Water, 846 F.2d at 736.

The record also reflects that the Intermec Defendants have recently sued at least one other competitor to enforce their RFID patents (doc. 45 & Exh. Q). Under the totality of the circumstances, this past lawsuit bolsters Alien's reasonable apprehension of suit. The Court concludes this case presents an actual case or controversy, creating subject matter jurisdiction for a declaratory judgment suit.

B. Personal Jurisdiction Over ITC

ITC is the only Intermec Defendant that has contacts with North Dakota. To establish personal jurisdiction over ITC, Alien must show two things: "whether a forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process." Dainippon Screen Mfg. Co., 142 F.3d at 1269-70. The North Dakota Supreme Court has held North Dakota's long-arm statute is "designed to permit the state courts to exercise personal jurisdiction to the fullest

8

extent permitted by due process." <u>Hebron Brick Co. v. Robinson</u>
<u>Brick & Tile Co.</u>, 234 N.W.2d 250, 255 (N.D. 1975). Therefore,
the personal jurisdiction analysis folds into one: whether
exercise of personal jurisdiction would offend Due Process. <u>Red</u>
<u>Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.</u>, 148 F.3d
1355, 1358 (Fed. Cir. 1998).

　　To prove personal jurisdiction is within the bounds of Due
Process, two elements must be met: (1) the defendant had "minimum
contacts" with the forum state; and (2) the defendant could
reasonably anticipate being haled into the forum state to defend
itself. <u>Id.</u> at 1358-59 (<u>citing World-Wide Volkswagen Corp. v.</u>
<u>Woodson</u>, 444 U.S. 286, 297 (1980)). A minimum contacts analysis
looks at the quantity and quality of the defendant's contacts
with the forum state. <u>Id.</u> at 1359. An exercise of personal
jurisdiction must "comport with 'fair play and substantial
justice.'" <u>Id.</u> at 1359 (quoting <u>Burger King Corp. v. Rudzewicz</u>,
471 U.S. 462, 476 (1985)). When a company purposefully avails
itself to the protection of the laws of a forum by conducting
business there, exercising jurisdiction over that company is
proper. <u>World-Wide Volkswagen</u>, 444 U.S. at 297.

　　Jurisdiction can be "specific" in that the cause of action
arose through the contacts analyzed. <u>Red Wing Shoe Co.</u>, 148 F.3d
at 1359. Jurisdiction can also be "general" in that although the
contacts with the forum state are not relevant to the cause of
action, they were purposefully directed at the forum and are
sufficiently continuous and systematic to allow the exercise of

jurisdiction. Id. (citing Helicopteros Nacionales de Colombia,

S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). Random, fortuitous,

and attenuated contacts are not sufficient to meet the minimum

contacts required. Id. (citing Burger King, 471 U.S. at 475).

ITC never sold any RFID products in North Dakota, so Alien must

establish general jurisdiction over ITC through purposeful,

continuous, and systematic contacts with North Dakota.

   Alien cites various contacts ITC and its agents have had

with North Dakota. ITC has been registered as a foreign business

corporation with the North Dakota Secretary of State since July

1999 and is currently in active and good standing (doc. #47, Exh.

C). At oral argument, ITC's attorney stated ITC is registered

because it pays income tax in North Dakota. That is another

contact. ITC pays income tax in North Dakota because it sells

products directly to North Dakota businesses (doc. #9, Exh. B).

In 2005, ITC sold approximately $270,000 worth of products to

companies in North Dakota. Id. According to Alien, its

discovery into other sales ITC made directly to North Dakota

totaled approximately $2.1 million for 2001-2005 (doc. #46).

Also according to Alien's discovery, ITC agents have consistently

traveled to North Dakota on business since 2001. Id.

Presumably, some of these trips included contacts with Microsoft

Business Solutions with which ITC had a partnership (doc. 46,

Exh. G). Microsoft Business Solutions has its principal place of

business in Fargo, North Dakota.

These contacts represent purposeful, consistent, and systematic contacts with North Dakota. As early as 1999, ITC contemplated doing business in North Dakota, so it registered as a foreign business corporation. ITC's sales in North Dakota, although not great, came directly from ITC, and it has consistently done business in North Dakota over the last several years. As a result of its sales, it pays North Dakota income tax. It also contracted into a partnership with Microsoft Business Solutions, a large company with a significant position in North Dakota, for strategic business reasons. Therefore, ITC has purposefully availed itself to the laws of North Dakota and is subject to personal jurisdiction in its courts.

ITC argues its direct sales to North Dakota companies are so minuscule that they cannot be considered in a minimum contacts analysis. Using 2005 as an example, North Dakota sales represent approximately 0.0571% of its total sales revenue for 2005. While the Court agrees that minuscule sales in the forum state alone would be insufficient to establish minimum contacts, ITC has sold a small amount of product in North Dakota consistently and systematically since at least 2001. Furthermore, the Court concludes that the small amount of sales ITC has made in North Dakota is not shocking when one considers that North Dakota is a small state. As the North Dakota Supreme Court has stated, albeit in a specific jurisdiction case:

> These mathematical comparisons may be sound, but we do
> not believe they guide the law of personal
> jurisdiction. If such an analysis were adopted, states

11

with smaller populations, such as North Dakota, would always be at a legal disadvantage compared to states with greater populations and larger economic markets. Simply because a State does not account for a proportionately high level of a company's orders or revenues does not foreclose a finding that the company has sufficient minimum contacts with the forum State to ground personal jurisdiction.

Beaudoin v. S. Tex. Blood & Tissue Ctr., 2005 ND 120, ¶ 17, 699 N.W.2d 421, 428.

The lines of personal jurisdiction can be grayed in the expanding global market. However, ITC cannot claim it is a stranger to North Dakota. It has purposefully availed itself to this forum through continuous and systematic contacts. Therefore, ITC is subject to personal jurisdiction in North Dakota.

C. Personal Jurisdiction over Intermec and IIP

Having established jurisdiction over ITC, Alien argues ITC's contacts in North Dakota can be imputed to Intermec and IIP. Alien relies on Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc. 142 F.3d 1266, 1269 (Fed. Cir. 1998). In Dainippon, the defendant CFMT was the wholly-owned subsidiary and the patent holding company of the defendant CFM. Id. at 1267. CFMT licensed CFM to use CFMT's patents in exchange for royalties. Id. The plaintiff sued CFM and CFMT for a declaratory judgment, and the defendants moved to dismiss for lack of personal jurisdiction over CFMT in the forum state, California. Id. The Federal Circuit concluded CFMT's threats to the plaintiff made in California; the licenses CFMT granted to CFM, which had sales

12

agents in California; and the royalties CFMT earned in California established sufficient minimum contacts. Id. at 1271. The court also discussed the CFM's corporate structure:

> We also agree with Dainippon that the parent-subsidiary relationship between CFM and CFMT leads to the conclusion that the imposition of personal jurisdiction over CFMT is "reasonable and fair," . . . Stripped to its essentials, CFM contends that a parent company can incorporate a holding company in another state, transfer its patents to the holding company, arrange to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company. This argument qualifies for one of our "chutzpah" awards. . . . While a patent holding subsidiary is a legitimate creature and may provide certain business advantages, it cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction.

Id. (citations and footnotes omitted). In footnote three, the court specifically stated that it was not piercing the corporate veil, grounding its holding on due process principles. Id.

This case presents a substantially similar situation. Like the CFMT-CFM relationship, IIP is the wholly-owned patent holding company of ITC. In turn, ITC is the wholly-owned operating company of Intermec. All three Intermec Defendants operate as one entity. IIP owns all the patents. ITC operates under those patents but does not have a license from IIP because of their corporate relationship. Intermec has the benefit of both companies as the main holding company. The Intermec defendants share a common website, which is copyrighted to ITC. Intermec

13

and ITC share a principal place of business in Everett,
Washington. IIP patent applications filed with the Court shows
an ITC agent filed the application and listed IIP's address as
Everett, Washington, not Henderson, Nevada (doc. #104, Exh. C &
D). Although the parties cannot agree on a number, neither party
disputes that all three companies have some overlap of officers
and directors. The Intermec Defendants file joint annual reports
and tax returns (doc. #88-92). Intermec officers made the patent
enforcement statements at the quarterly earnings call even though
IIP is technically the patent owners. Therefore, just as in
Dainippon, without imputing ITC's personal jurisdiction to
Intermec and IIP, Intermec and ITC would be allowed to threaten
its competitors without fear of suit except where IIP is
incorporated, Delaware, or where it is headquartered, Nevada.
Fairness demands that Intermec and IIP be subject to jurisdiction
in those fora where ITC is subject to jurisdiction.

The Intermec Defendants argue Dainippon is a specific
jurisdiction case that is inapplicable to general jurisdiction
cases. This is a distinction without a difference. While the
Court agrees that Dainippon was a specific jurisdiction case, the
same fairness principles on which the Federal Circuit ground its
opinion apply whether jurisdiction is specific or general. It is
just as unfair to allow the defendant in a general jurisdiction
case to avoid jurisdiction because of its holding company
structure as it is in a specific jurisdiction case.

Traditional notions of fair play and substantial justice are not offended by subjecting Intermec and IIP to jurisdiction in North Dakota. Venue is also proper here under 28 U.S.C. § 1391(c).

    d.    Failure to State a Claim

    Lastly, the Intermec Defendants argue Alien has not sufficiently stated a claim under Federal Rule of Civil Procedure 8 because Alien's complaint does not specifically enumerate the allegedly infringing products. Alien's complaint references RFID products, which is the technology protected by the patents in issue. All parties are experienced in this area, and the discovery process is the best method to narrow Alien's specific products. Therefore, the Court concludes Alien's complaint sufficiently states a claim upon which relief may be granted.

III. Conclusion

    The Court has subject matter jurisdiction over this case, and the Intermec Defendants are subject to personal jurisdiction in North Dakota. Therefore, the Intermec Defendants' Motion to Dismiss is **DENIED**.

    IT IS SO ORDERED.

    Dated this 4th day of January, 2007.


                                    _Rodney S. Webb_
                            RODNEY S. WEBB, District Judge
                            United States District Court

15

# EXHIBIT F



Home    Industry Solutions    Products    Service & Support    Partners    About    Contact    Search

Send to
a friend    Print

**Articles**
**Brochures**
**Case Studies**
**Corporate Info**
**Employment**
**eNewsletters**
**Environmental Compliance**
**Events**
**Glossary**
**Intermec Capital**
**Investor Relations**
**News**
  ▸ Archive News
  ▸ Newsroom
  ▸ Photo Library
  ▸ Press Contacts
**RealTime**
**Standards of Conduct**
**Suppliers**
**White Papers**

**CompanyStore**

**Intermec Introduces RFID Rapid Start Licensing Program for Limited Perio Provide Industry Access to Comprehensive IP Portfolio**

- **Provides unlimited access to broad portfolio of more than 145 Intermec RFII inventions at attractive terms**
- **Spurs adoption of Generation 2 RFID technology and clarifies rapidly-devel RFID vendor marketplace**
- **Settles issues of past infringement and frees partners from risk of future infringement**
- **Offered June 1 through Aug. 31**

EVERETT, Wash , May 4, 2005 -- To spur adoption of RFID (radio frequency identificati powerful new supply chain technology, and to simplify licensing of its RFID intellectual pr portfolio, RFID pioneer Intermec Technologies Corp. today announced a limited-time Ra Licensing Program that provides RFID manufacturers access to Intermec's broad portfol RFID innovation at attractive rates  The program, which begins June 1, 2005, and conclu Aug. 31, 2005, will provide the marketplace with clear guidance about which vendors are licensed to use Intermec's RFID IP and will simplify complicated technology cross-licens issues

"Technology vendors are feeling the pressure to provide the market with the high-perforr RFID products and services customers are demanding," said Mike Wills, Intermec RFID president and general manager  "Intermec's Rapid Start Licensing Program offers subst; benefits and minimizes cross-licensing negotiation delays so our partners can rapidly de bring their products to market without concerns about IP infringement  It provides custon assurance they are looking for about who is clearly licensed by Intermec as they move a with RFID in 2005."

According to terms of the program, Intermec's 145-plus RFID patents, including continua will be available in four portfolio families to licensees who execute Rapid Start Licensing agreements through Aug. 31  Pricing includes a nominal initial fee and royalty fees of 2 ! percent  The program offers lower royalties for licensees who cross-license their IP and more favorable than traditional automatic data collection industry licensing programs

Companies must execute a licensing agreement to receive the Rapid Start Licensing Pr special rates and access to its benefits  After the program concludes, Intermec will offer license only individual patents and those patents declared on a reasonable and non-discriminatory basis (RAND) as part of standards-setting activities, at less favorable rate terms than those available in the Rapid Start Licensing Program

"Gartner advises our user clients to factor royalties for Generation 2 RFID equipment an into their business cases even though they will not directly pay them," said Jeff Woods, r vice president for enterprise and supply chain research at Gartner. "Efforts to avoid the r have only served to distract users and delay experimentation with the technology  Every that the vendors and standards community can take toward clarification and simplificatio intellectual property issues around RFID will accelerate rollouts of this important technolo

"Intermec remains committed to helping introduce the full benefits of supply chain RFID,'
Intermec President Tom Miller. "Our program addresses customers' desires for multiple :
of this technology. At the same time, we respect the years and resources invested in our
intellectual property portfolio and will take the necessary steps to protect it from use by
unlicensed technology vendors."

For more information about Intermec's Rapid Start Licensing Program, contact Intermec
Chris Kelley, 425-267-2998.

**About Intermec**
Intermec Technologies Corp , a UNOVA Inc. (NYSE:UNA) company, develops, manufac
and integrates technologies that identify, track and manage supply chain assets  Core
technologies include Intellitag® RFID, mobile computing systems, bar code printers and
media. The company's products and services are used by customers in many industries
worldwide to improve the productivity, quality and responsiveness of business operation:
further information, please visit  www.intermec.com, or call 800-347-2636. To learn more
UNOVA, visit www.unova.com.

Copyright 2007 Intermec Technologies Corporation
All rights reserved.
Legal

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORPORATION, | ) | Civil Action No. 3:06-cv-00051-RSW-KKK |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ALIEN TECHNOLOGY** |
| | ) | **CORPORATION'S FIRST SET OF** |
| INTERMEC, INC., INTERMEC | ) | **REQUESTS FOR PRODUCTION OF** |
| TECHNOLOGIES CORPORATION, | ) | **DOCUMENTS TO DEFENDANTS** |
| and INTERMEC IP CORP., | ) | |
| Defendants. | ) | **COMPLAINT FILED:  JUNE 1, 2006** |
| | ) | |

| | |
|---|---|
| **PROPOUNDING PARTY:** | **Plaintiff Alien Technology Corporation** |
| **RESPONDING PARTIES:** | **Defendants Intermec, Inc.; Intermec Technologies Corp.; and Intermec IP Corp.** |
| **SET NO.:** | **One** |

1

**TO DEFENDANTS AND THEIR COUNSEL OF RECORD:**

Pursuant to Federal Rules of Civil Procedure 26 and 34, plaintiff Alien Technology Corporation requests that defendants Intermec, Inc., Intermec Technologies Corp., and Intermec IP Corp. produce at the law offices of Munger, Tolles & Olson LLP, 355 South Grand Ave., 35th Floor, Los Angeles, California 90071, within 30 days the documents and things described in the following Rule 34 Requests.

**DEFINITIONS**

As used herein:

1.      "Alien" means plaintiff Alien Technology Corporation.

2.      "Intermec" "you" or "your" means and refers to any one or more of defendants Intermec, Inc., Intermec Technologies Corporation, and Intermec IP Corporation, and all predecessors, successors, subsidiaries, divisions, parents and affiliates thereof, past or present, joint ventures, and other legal entities that are wholly owned or controlled by the defendant(s), either directly or indirectly, and all past or present directors, principles, officers, owners, employees, agents, representatives, consultants, attorneys and others acting for or on behalf of these same entities.

3.      "Document" or "documents" is used in the broadest possible sense and means, without limitation, every writing or record of every type and description that is in your possession, control or custody and includes, but is not limited to, correspondence, files, drafts, transcripts, minutes, memoranda, telegrams, telexes, stenographic or handwritten notes, studies, analyzes, publications, books, pamphlets, pictures, photographs, films, video tapes, audio tapes, purchase orders, invoices, computer disks and printouts, drawings, diagrams, blueprints, affidavits, expense records, financial reports, journals, logs, diaries, voice recordings, tapes, maps, reports, surveys, charts, numbers or statistical computations, and every draft or copy

2

thereof, whether signed or unsigned, that is not identical to the original, or that contains any commentary or notation whatsoever that does not appear on the original. The term "document" or "documents" also includes electronic data, as defined below.

4.    "The '181 patent" means U.S. Patent No. 5,850,181 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

5.    "The '841 patent" means U.S. Patent No. 6,812,841 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

6.    "The '274 patent" means U.S. Patent No. 6,400,274 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

7.    "The '632 patent" means U.S. Patent No. 5,912,632 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

8.    "The '561 patent" means U.S. Patent No. 5,775,561 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

9.    "The '019 patent" means U.S. Patent No. 5,995,019 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

10.    "The '693 patent" means U.S. Patent No. 5,828,693 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

1236494.2
4822-9445-5041.1

11.    "The '775 patent" means U.S. Patent No. 6,429,775 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

12.    "The '807 patent" means U.S. Patent No. 5,030,807 and/or any related US. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

13.    "The '629 patent" means U.S. Patent No. 6,288,629 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

14.    "Patents-in-suit" means any one or more of the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents and/or all related patent applications as defined below.

15.    "Related patent applications" means any application cited in the prosecution history of the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents (including parent, grandparent, or other predecessor application), including but not limited to, any application which claims any priority from or is based upon any application in the prosecution history of the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents, any continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, and any other application disclosing, describing, or claiming any invention disclosed in the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents, whether or not abandoned and whether or not issued.

16.    "Intermec Patented Products(s)" mean(s) any apparatus, product, device, process, method, act, or other instrumentality that Intermec has developed, made, imported, sold, or offered for sale that incorporates, practices, or embodies any of the subject matter claimed by the patents-in-suit.

4

17.    "Licensed Products(s)" mean(s) any apparatus, product, device, process, method, act, or other instrumentality that any of Intermec's licensees have developed, made, imported, sold, or offered for sale that incorporates, practices, or embodies any of the subject matter claimed by the patents-in-suit.

18.    "Complaint" means the First Amended Complaint filed by Alien in the above-captioned action.

19.    "PTO" means the United States Patent and Trademark Office.

20.    The term "person" or "persons" shall mean and include any natural persons, any business entity, whether a corporation, partnership, limited partnership, association, unincorporated association, firm, joint venture, any governmental body or entity, whether a government agency, board, division or department, and any other entity. Further, the term "person" includes acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

21.    "Relating to" or "concerning" means relating to, concerning, pertaining to, referring to, describing, discussing, reflecting, evidencing, constituting, supporting, contradicting or resulting from the matter specified.

22.    "Third party" or "third parties" means any person other than Alien or Intermec.

23.    "Prosecution of" means the prosecution of the indicated patent or patent application in the PTO.

24.    "Prosecution history" means proceedings before the PTO, including any interviews, correspondence or other materials, whether or not included in the prosecution file history maintained at the PTO.

25.    The term "prior art" to a patent includes, but is not limited to, all publications, patents, physical devices, prototypes, and all uses, sales, offers for sale, or other activity, relating

5

to the subject matter of the patent, and having or occurring at a date such as to be relevant under any subdivision of 35 U.S.C. §§ 102 and 103 or otherwise qualifying as prior art.

26.    "EPCglobal" means EPCglobal, Inc., and includes all predecessors, successors, subsidiaries, divisions, parents and affiliates thereof, past or present, joint ventures, and other legal entities that are wholly owned or controlled by EPCglobal, Inc., either directly or indirectly, and all past or present directors, principles, officers, owners, employees, agents, representatives, consultants, attorneys and others acting for or on behalf of EPCglobal, Inc.

27.    "ISO" means the International Organization for Standardization.

## INSTRUCTIONS

The following instructions apply to the discovery requests below and should be considered as a part of each such request:

1.    If any information is withheld under a claim of privilege, state the nature of the privilege claimed and provide sufficient information to permit a full determination of whether the claim is valid. For alleged privileged documents, include: an identification of the sender and the recipients of the document; the document identification number, the date of the document; a general description of the contents or nature of the document; and a statement of the basis for the asserted claim of privilege.

2.    If Intermec objects to any subpart or portion of a request for information or objects to providing certain information requested, state Intermec's objection and answer the unobjectionable subpart(s) of the request for information and/or supply the unobjectionable information requested.

3.    If any of the following requests for information cannot be responded to in full after exercising reasonable diligence to secure the information, please state so, supply the information for those portions Intermec is able to answer, and supply whatever information

6

Intermec has concerning the portion of the request which cannot be answered in full. If Intermec's response is qualified in any particular respect, set forth the details of such qualification.

     4.     The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

     5.     The words "and" and "or" should be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed to be outside its scope.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

     All documents concerning or relating to the conception of any subject matter claimed in any one or more of the patents-in-suit, including, but not limited to, all reports, drawing schematics, computer program code, object code, source code, flow charts, design specifications, test results, laboratory notebooks, manuals, presentations, seminar materials, slides, overheads and transparencies.

### REQUEST FOR PRODUCTION NO. 2:

     All documents concerning or relating to the reduction to practice of any subject matter claimed in any one or more of the patents-in-suit, including, but not limited to, all reports, drawing schematics, computer program code, object code, source code, flow charts, design specifications, test results, laboratory notebooks, manuals, presentations, seminar materials, slides, overheads and transparencies.

7

**REQUEST FOR PRODUCTION NO. 3:**

All of the files of the named inventors for the patents-in-suit that relate to one or more of such patents.

**REQUEST FOR PRODUCTION NO. 4:**

All of the files of each attorney involved in the prosecution of any one or more of the patents-in-suit relating to one or more of such patents.

**REQUEST FOR PRODUCTION NO. 5:**

All documents concerning or relating to the testing, experimentation, research and/or development of any subject matter claimed in any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 6:**

All documents concerning or relating to the decision to file any patent applications, including, but not limited to any original, divisional, continuation, continuation-in-part applications relating to the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 7:**

All documents concerning or relating to the prosecution of any patent applications from which the patents-in-suit issued, including, but not limited to, abandoned applications, pending applications, office actions, responses to office actions, invention disclosures, and notes of telephonic communications or meetings between the PTO and Intermec, International Business Machines Corporation, or Amtech Corporation.

**REQUEST FOR PRODUCTION NO. 8:**

All documents concerning or relating to the determination of the proper inventors of any one or more of the patents-in-suit, including, but not limited to, documents concerning or relating to any allegation that the named inventors are not the correct inventors of any one or more of the patents-in-suit.

8

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning or relating to the ownership, assignment, acquisition, transfer, offer to sell, offer to buy, or offer to assign any interest in any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 10:**

All publications, patents, and patent applications that have been identified, reviewed or studied by, or on behalf of, Intermec in connection with: (a) the prosecution of any one or more of the patents-in-suit; (b) any attempt or effort to enforce the patents-in-suit; (c) any licensing or attempts to license any one or more of the patents-in-suit; or (d) any allegations regarding the infringement, validity, or enforceability of any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 11:**

All documents sufficient to identify any and all persons who have been involved in the prosecution of any of the patents-in-suit, including, but not limited to, documents sufficient to identify any and all persons involved in the preparation, drafting, review, study or evaluation of any applications, responses to office actions or invention disclosures relating to any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 12:**

All documents relating to or concerning the preparation, drafting, review, study, or evaluation of any applications, responses to office actions or invention disclosures relating to any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 13:**

All documents concerning or relating to the background of one of ordinary skill in the art with respect to the subject matter claimed in any one or more of the patents-in-suit.

1236494.2
4822-9445-5041.1

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning or relating to any search or evaluation or analysis, whether done by Intermec or any third party, of any prior art or alleged prior art to any subject matter claimed in any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 15:**

All documents concerning or relating to any secondary considerations of non-obviousness of any subject matter claimed in any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 16:**

All documents concerning or relating to any alleged long-felt need for any subject matter claimed in any one or more of the patents-in-suit and/or the failure of others to meet that need.

**REQUEST FOR PRODUCTION NO. 17:**

All documents concerning or relating to any alleged commercial success of any subject matter claimed in any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 18:**

All documents concerning or relating to any skepticism regarding any subject matter claimed in any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 19:**

All documents concerning or relating to any professional approval expressed regarding any subject matter claimed in any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 20:**

All documents concerning or relating to any near simultaneous invention by others of any subject matter claimed in any one or more of the patents-in-suit.

10

**REQUEST FOR PRODUCTION NO. 21:**

All documents concerning or relating to the best mode of each invention claimed in any one or more of the patents-in-suit known to the named inventors at the time of the filing of the patent applications for each such invention.

**REQUEST FOR PRODUCTION NO. 22:**

All documents concerning, relating to, or transmitted to or from any patent office of any country in connection with the application for or prosecution of any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 23:**

All documents concerning or relating to the abandonment of any of the applications for any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 24:**

All documents concerning or relating to addition, modification or withdrawal of any claims in any of the applications for the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 25:**

All documents concerning or relating to, or forming, to any extent, the basis of, Intermec's allegations or claims that Alien has infringed and/or is infringing the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 26:**

All documents concerning or relating to Intermec's allegations or claims that any third party has infringed and/or is infringing the patents-in-suit, including, but not limited to, demand letters, letters to or from counsel, and cease and desist letters.

**REQUEST FOR PRODUCTION NO. 27:**

All documents concerning or relating to allegations or claims made by any entity other than Intermec that any person has infringed and/or is infringing the patents-in-suit.

11

**REQUEST FOR PRODUCTION NO. 28:**

All documents concerning any communications between Intermec and any other person regarding Alien's alleged infringement of any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 29:**

All documents concerning or relating to Intermec's allegations that Alien or any third party has induced and/or is inducing others to infringe any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 30:**

All documents concerning or relating to Intermec's allegations that Alien has contributed to the infringement by third parties of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 31:**

All documents concerning or relating to the construction of any claim terms of any of the patents-in-suit, including, but not limited to, documents prepared in connection with litigation involving Symbol Technologies, Inc.; Matrics, Inc.; Transcore, LP; Transcore Holdings, Inc.; Single Chips Systems Corporation; or Neology, S. de R.L. de C.V.

**REQUEST FOR PRODUCTION NO. 32:**

All documents concerning or relating to any suggestion and/or allegation by any person that any of the claims of any one or more of the patents-in-suit are invalid.

**REQUEST FOR PRODUCTION NO. 33:**

All documents concerning or relating to any suggestion and/or allegation by any person that the patents-in-suit are unenforceable.

**REQUEST FOR PRODUCTION NO. 34:**

All documents concerning any communications between Intermec and any third party relating to the prosecution, validity, scope and/or enforceability of any one or more of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 35:**

All documents constituting, referring to or reflecting any legal or technical opinion, advice or consultation concerning the validity, scope, unenforceability or infringement of any of the claims of the patents-in-suit, or the propriety of their acquisition or enforcement.

**REQUEST FOR PRODUCTION NO. 36:**

All documents identified during any patentability search or prior art search performed with respect to any proposed or actual invention claimed in any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 37:**

All documents and things that you consider support any belief or contention of Intermec's concerning infringement, validity, or enforceability of the patents in suit.

**REQUEST FOR PRODUCTION NO. 38:**

All document and things that Intermec considers to undermine any belief or contention of Intermec's concerning the infringement, validity, or enforceability of the patents in suit.

**REQUEST FOR PRODUCTION NO. 39:**

All documents constituting, referring to or reflecting any agreements, draft or final, for the licensing of patents, technology or know-how relating to the patents-in-suit and/or to RFID technology.

**REQUEST FOR PRODUCTION NO. 40:**

All documents constituting, referring to or reflecting any inquiries, requests or proposals for licensing of patents, technology or know-how relating to the patents-in-suit and/or to RFID technology.

**REQUEST FOR PRODUCTION NO. 41:**

All documents concerning or relating to the negotiation of any potential or actual license agreement or any other form of agreement, including, but not limited to offers or inquiries to

13

license, letters of intent, and term sheets, concerning any one or more of the patents-in-suit

and/or to RFID technology.

## REQUEST FOR PRODUCTION NO. 42:

All documents constituting, referring to or reflecting Intermec's policies,

practices or procedures on licensing of intellectual property, including, but not limited to, the

licensing of the patents-in-suit and/or licensing of patents related to RFID technology and/or

Intermec's Rapid Start program

## REQUEST FOR PRODUCTION NO. 43:

All documents concerning or relating to the termination or suspension of any license,

sublicense, or assignment relating to the patents-in-suit.

## REQUEST FOR PRODUCTION NO. 44:

All documents concerning or relating to any communication with any licensee or

prospective licensee relating to any of the patents-in-suit.

## REQUEST FOR PRODUCTION NO. 45:

All documents referring or relating to Intermec's strategies, policies, practices, terms or

procedures regarding its acquisition of intellectual property relating to RFID technology.

## REQUEST FOR PRODUCTION NO. 46:

All documents referring or relating to Intermec's strategies, policies, practices, terms or

procedures regarding its enforcement of intellectual property relating to RFID technology.

## REQUEST FOR PRODUCTION NO. 47:

All documents concerning or relating to the evaluation or valuation of any licenses

relating to any of the patents-in-suit.

14

**REQUEST FOR PRODUCTION NO. 48:**

All documents concerning or relating to any advertising, marketing plans or efforts, promotional programs, and/or commercialization strategies for any of the patents-in-suit or any subject matter claimed in any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 49:**

All documents constituting, referring to or reflecting the quarterly and annual financial statements, including, but not limited to, balance sheets and income statements, for Intermec from 2000 to the present.

**REQUEST FOR PRODUCTION NO. 50:**

Documents sufficient to show Intermec's actual licensing revenues or royalties for each quarter and year from 2000 through the present, by licensee, product, nature of technology, country and region.

**REQUEST FOR PRODUCTION NO. 51:**

All documents showing any actual licensing revenues, including those obtained by third parties, related to RFID technology.

**REQUEST FOR PRODUCTION NO. 52:**

All documents showing any actual licensing revenues Intermec has paid to any third party.

**REQUEST FOR PRODUCTION NO. 53:**

All documents relating to the royalty rate(s) set forth in any of Intermec's RFID and/or Rapid Start licenses.

**REQUEST FOR PRODUCTION NO. 54:**

All documents relating to an evaluation of the meaning of reasonable and non-discriminatory ("RAND") license terms, including, but not limited to, any attempted, proposed, or actual quantification of the terms and conditions of a RAND license.

**REQUEST FOR PRODUCTION NO. 55:**

All documents relating to any financial analysis of the RFID market.

**REQUEST FOR PRODUCTION NO. 56:**

Documents sufficient to show the way in which Intermec accounts for the value of its licenses and/or cross-licenses.

**REQUEST FOR PRODUCTION NO. 57:**

All documents constituting, referring to or reflecting Intermec's estimated, forecasted or projected licensing revenues or royalties for each quarter and year from 2006 through 2015, by licensee, product, nature of technology, country and region.

**REQUEST FOR PRODUCTION NO. 58:**

All documents constituting, referring to or reflecting any Intermec company's estimated, forecasted or projected licensing revenues or royalties related to RFID technology for each quarter and year from 2000 through 2015, by licensee, product, nature of technology, country and region.

**REQUEST FOR PRODUCTION NO. 59:**

All documents constituting, referring to or reflecting any Intermec company's estimated, forecasted or projected licensing revenues or royalties related to the Rapid Start program and/or Rapid Start licensees for each quarter and year from 2000 through 2015, by licensee, product, nature of technology, country and region.

**REQUEST FOR PRODUCTION NO. 60:**

All documents relating to Intermec's Rapid Start program, including, but not limited to, all correspondence with Intermec licensees or prospective licensees relating to RFID technology and/or patents.

**REQUEST FOR PRODUCTION NO. 61:**

All licenses that Intermec has ever characterized as being part of its Rapid Start program.

16

**REQUEST FOR PRODUCTION NO. 62:**

All documents relating to all licenses that Intermec has ever characterized as being part of its Rapid Start program, including, but not limited to draft license agreements and correspondence relating to the licenses.

**REQUEST FOR PRODUCTION NO. 63:**

All licenses pertaining to RFID technology.

**REQUEST FOR PRODUCTION NO. 64:**

All documents relating to any valuation of Intermec's patent portfolio.

**REQUEST FOR PRODUCTION NO. 65:**

All documents relating to any valuation of Intermec's Rapid Start program.

**REQUEST FOR PRODUCTION NO. 66:**

All documents relating to any analysis or valuation of any of the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 67:**

All documents relating to any analysis of any of the patents that have ever been within Intermec's Rapid Start program.

**REQUEST FOR PRODUCTION NO. 68:**

All documents constituting, referring to or reflecting Intermec's licensing revenues or royalties as a percentage of its estimated, forecasted, or projected gross profit and gross profit, by licensee, product, nature of technology, country and region, for each quarter and year from 2000 through the present.

**REQUEST FOR PRODUCTION NO. 69:**

All documents relating to, referring to or reflecting the market for RFID devices.

**REQUEST FOR PRODUCTION NO. 70:**

All documents relating to, referring to, or reflecting any submarkets for RFID devices.

17

**REQUEST FOR PRODUCTION NO. 71:**

All documents relating to, referring to or reflecting the market for the licensing of RFID technology.

**REQUEST FOR PRODUCTION NO. 72:**

All documents constituting, referring to or reflecting the impact or effect of royalty rates on sales of products bearing the royalty, including, but not limited to, the sensitivity of the RFID market to price effects of royalties.

**REQUEST FOR PRODUCTION NO. 73:**

All documents constituting, referring to or reflecting the quarterly and annual dollar amount of sales of RFID devices in the United States, whether actual, estimated or projected.

**REQUEST FOR PRODUCTION NO. 74:**

All documents constituting, referring to or reflecting the quarterly and annual dollar amount of sales of RFID devices worldwide, whether actual, estimated or projected.

**REQUEST FOR PRODUCTION NO. 75:**

All documents constituting, referring to or reflecting the quarterly and annual dollar amounts of revenues or profits from licensing RFID technology received by any entity or entities not affiliated with Intermec.

**REQUEST FOR PRODUCTION NO. 76:**

All documents constituting, referring to or reflecting draft or final strategic or business plans or forecasts of Intermec from 2000 to the present.

**REQUEST FOR PRODUCTION NO. 77:**

All minutes taken of, and documents distributed in connection with, any meeting concerning the patents-in-suit.

1236494.2
4822-9445-5041 1

**REQUEST FOR PRODUCTION NO. 78:**

All minutes taken of, and documents distributed in connection with, any meeting of Intermec's Board of Directors or committee thereof concerning the patents-in-suit.

**REQUEST FOR PRODUCTION NO. 79:**

All documents constituting, referring to or reflecting Intermec's antitrust compliance manuals, practices or policies to comply with federal and state antitrust laws.

**REQUEST FOR PRODUCTION NO. 80:**

All pleadings, hearing transcripts, deposition transcripts, and correspondence relating to Intermec's patent litigation in the District of Delaware against Symbol Technologies, Inc.

**REQUEST FOR PRODUCTION NO. 81:**

All pleadings, hearing transcripts, deposition transcripts, and correspondence relating to Intermec's patent litigation in the Western District of Wisconsin against Symbol Technologies, Inc.

**REQUEST FOR PRODUCTION NO. 82:**

All pleadings, hearing transcripts, deposition transcripts, and correspondence relating to Intermec's patent litigation in the Southern District of California against Single Chip Systems Corporation.

**REQUEST FOR PRODUCTION NO. 83:**

All business, marketing, and strategic plans concerning Licensed Products and/or the markets in which the Licensed Products are used or sold.

**REQUEST FOR PRODUCTION NO. 84:**

Documents sufficient to show how the claims of the patents-in-suit are implemented in the Licensed Products, to the extent Intermec believes the claims are so implemented.

19

**REQUEST FOR PRODUCTION NO. 85:**

Documents sufficient to show how the claims of the patents-in-suit are implemented in the Intermec Patented Products, to the extent Intermec believes the claims are implemented in its products.

**REQUEST FOR PRODUCTION NO. 86:**

Each document that concerns actual or projected costs, including standard cost reports and cost variance reports, concerning the research, development, testing, manufacture, sales, or marketing of any Intermec RFID product.

**REQUEST FOR PRODUCTION NO. 87:**

Each document that concerns actual or projected profits or losses, including gross and net profits or gross and net losses, from the manufacture, use, sale, or marketing of any of Intermec's RFID products.

**REQUEST FOR PRODUCTION NO. 88:**

Each document that concerns the advertising or promotion of Intermec's RFID products, including advertisements, presentations, press releases, announcement letters, bulletins, flyers, catalogs, brochures, letters, sales literature, sales videos, sales charts, sales aids, and policy or procedure manuals given to sales representatives or marketing personnel concerning RFID products.

**REQUEST FOR PRODUCTION NO. 89:**

All documents constituting, referring to or reflecting any damages to Intermec that Intermec contends have been caused or will be caused by Alien's alleged infringement.

**REQUEST FOR PRODUCTION NO. 90:**

All documents constituting, referring to or reflecting organizational charts or the organizational structure for Intermec in effect at any time from January 1, 1990 to the present.

**REQUEST FOR PRODUCTION NO. 91:**

All documents constituting, referring to or reflecting the document retention or destruction policies or procedures of Intermec at any time since January 1, 1990, for any documents, category of documents or subject matter of documents.

**REQUEST FOR PRODUCTION NO. 92:**

All documents constituting, referring to or reflecting press releases, published information or public statements made by Intermec relating to Alien, including, but not limited, to drafts thereof.

**REQUEST FOR PRODUCTION NO. 93:**

All documents concerning any communications between Intermec and any persons or third parties regarding the subject matter of this action.

**REQUEST FOR PRODUCTION NO. 94:**

All documents constituting, referring to or reflecting any agreements, settlements or understandings with Symbol Technologies, Inc., including, but not limited to, investment positions, implementation of Intermec's claimed RFID technology, and/or resolution of any dispute or disagreement over the scope or coverage of any patent or license.

**REQUEST FOR PRODUCTION NO. 95:**

All documents arising from or relating to Intermec's membership or participation in EPCglobal and/or ISO.

**REQUEST FOR PRODUCTION NO. 96:**

All documents constituting, referring to or reflecting any communication by Intermec to, from, or with EPCglobal and/or ISO, or any member or participant thereof.

1236494.2
4822-9445-5041.1

**REQUEST FOR PRODUCTION NO. 97:**

All documents constituting, referring to or reflecting any information regarding RFID technology discussed at any time at EPCglobal and/or ISO, including, but not limited to notes taken at one or more EPCglobal or ISO meetings.

**REQUEST FOR PRODUCTION NO. 98:**

All documents constituting, referring to or reflecting any policy, procedure or practice of EPCglobal and/or ISO concerning the disclosure or licensing of intellectual property or technology by participants or members.

**REQUEST FOR PRODUCTION NO. 99:**

All documents constituting, referring to or reflecting any disclosure by Intermec to any member or participant of EPCglobal and/or ISO of any proposed, pending or issued patent or patent application.

**REQUEST FOR PRODUCTION NO. 100:**

All documents constituting, referring to or reflecting any communication by Intermec with EPCglobal and/or ISO or any member or participant of such organization relating to any proposed, pending or published standard, specification, or certification (including but not limited to the EPCglobal Gen 1 specification and/or EPGglobal Gen 2 standard for RFID, and the ISO standard for RFID).

**REQUEST FOR PRODUCTION NO. 101:**

All documents concerning or relating to rules, policies and/or procedures of EPCglobal and/or ISO, including, but not limited to, those relating to the disclosure of patents or pending patent applications by organization members or to licensing patents that cover or implicate EPGglobal or ISO standards.

**REQUEST FOR PRODUCTION NO. 102:**

As to each patent claim Intermec contends is infringed by Alien, all documents that support Intermec's declaration(s) to EPCglobal and/or ISO characterizing those patent claims as "necessary claims."

**REQUEST FOR PRODUCTION NO. 103:**

As to each patent claim Intermec contends is infringed by Alien, all documents that could be viewed as undermining, in whole or in part, Intermec's declaration(s) to EPCglobal and/or ISO characterizing those patent claims as "necessary claims."

**REQUEST FOR PRODUCTION NO. 104:**

All documents concerning or relating to Intermec's participation in the EPCglobal and/or ISO RFID standard setting organizations, including, but not limited to, documents relating to consideration of whether to join the organization, the decision to join the organization, consideration of the pros and cons of membership, and consideration of whether to depart from the organization.

**REQUEST FOR PRODUCTION NO. 105:**

All documents constituting, referring to or reflecting any disclosure by Intermec to any member or participant of Auto ID Center of any proposed, pending or issued patent or patent application.

**REQUEST FOR PRODUCTION NO. 106:**

All documents constituting, referring to or reflecting any communication by Intermec with ISO or any member or participant of Auto ID Center relating to any proposed, pending or published standard.

**REQUEST FOR PRODUCTION NO. 107:**

All documents identified or referred to, either explicitly or implicitly, in Intermec's response to Alien's First Set of Interrogatories.

1236494 2
4822-9445-5041 1

Dated:  January 16, 2007

*Sarah Andrews Herman*

Sarah Andrews Herman
Bar Number 03399
DORSEY & WHITNEY LLP
51 North Broadway, Suite 402
P.O. Box 1344
Fargo, ND 58107-1344
Telephone:  (701) 235-6000
Fax:  (701) 235-9969

and

Gregory P. Stone
Andrea Weiss Jeffries
Megan M. La Belle
MUNGER TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9100
Fax:  (213) 687-3701

ATTORNEYS FOR PLAINTIFF ALIEN
TECHNOLOGY CORPORATION

24

Re:    Alien Technology Corporation vs. Intermec, Inc., et al.
       Case No. 3:06-cv-51

STATE OF NORTH DAKOTA    )
                         ) ss    **AFFIDAVIT OF PERSONAL SERVICE**
COUNTY OF CASS           )

Frances Hamby, being first duly sworn on oath deposes and says that on January 16, 2007, she served the attached:

1.    **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF INTERROGATORIES TO DEFENDANTS; and**

2.    **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS.**

on Ronald H. McLean, by leaving copies of the above documents at his office address which is 10 Roberts Street, Fargo, North Dakota 58102.

_____
Frances Hamby

Subscribed and sworn to before me on January 16, 2007.

_____
Notary Public

GAIL L SMITH
Notary Public
State of North Dakota
My Commission Expires Feb. 26, 2008

Alien Technology Corporation v. Intermec, Inc., et al.
Case No. 3:06-cv-50

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NORTH DAKOTA  )
                       ) ss
COUNTY OF CASS         )

Gail L. Smith, being first duly sworn, on oath, deposes and states that on January 16, 2007, she served via facsimile true and correct copies of the following documents:

1. **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF INTERROGATORIES TO DEFENDANTS; and**

2. **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS.**

upon:

Carson P. Veach                    **Facsimile No. 312-360-6595**
Freeborn & Peters LLP
311 S. Wacker Drive
Suite 300
Chicago, IL  60606

the last known facsimile number of said addressee

_Gail L. Smith_
Gail L. Smith

Subscribed and sworn to before me this 16th day of January, 2007.

_Laurie A. Grimm_
Notary Public

> LAURIE A. GRIMM
> Notary Public
> State of North Dakota
> My Commission Expires July 18, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORPORATION,<br>Plaintiff, | ) ) ) | Civil Action No. 3:06-cv-00051-RSW-KKK |
| v. | ) ) ) | **ALIEN TECHNOLOGY<br>CORPORATION'S FIRST SET OF<br>INTERROGATORIES TO DEFENDANTS** |
| INTERMEC, INC., INTERMEC<br>TECHNOLOGIES CORPORATION,<br>and INTERMEC IP CORP.,<br>Defendants. | ) ) ) ) ) ) | **COMPLAINT FILED:  JUNE 1, 2006** |

**PROPOUNDING PARTY:**     **Plaintiff Alien Technology Corporation**

**RESPONDING PARTIES:**     **Defendants Intermec, Inc.; Intermec Technologies**

**Corp.; and Intermec IP Corp.**

**SET NO.:**     **One**

**TO DEFENDANTS AND THEIR COUNSEL OF RECORD:**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the local rules for North Dakota, plaintiff Alien Technology Corporation ("Alien") hereby propounds these Interrogatories, to which defendants Intermec, Inc., Intermec Technologies Corp., and Intermec IP Corp. (collectively, "Intermec") shall respond, in writing, within the time prescribed by the Federal Rules of Civil Procedure and the Local Rules, in accordance with the Instructions and Definitions set forth hereinafter. These requests are continuing and impose upon you the obligations stated in Fed. R. Civ. P. 26.

## DEFINITIONS

As used herein:

1. "Alien" means plaintiff Alien Technology Corporation.

2. "Intermec" "you" or "your" means and refers to any one or more of defendants Intermec, Inc., Intermec Technologies Corporation, and Intermec IP Corporation, and all predecessors, successors, subsidiaries, divisions, parents and affiliates thereof, past or present, joint ventures, and other legal entities that are wholly owned or controlled by the defendant(s), either directly or indirectly, and all past or present directors, principles, officers, owners, employees, agents, representatives, consultants, attorneys and others acting for or on behalf of these same entities.

3. "Document" or "documents" is used in the broadest possible sense and means, without limitation, every writing or record of every type and description that is in your possession, control or custody and includes, but is not limited to, correspondence, files, drafts, transcripts, minutes, memoranda, telegrams, telexes, stenographic or handwritten notes, studies, analyses, publications, books, pamphlets, pictures, photographs, films, video tapes, audio tapes, purchase orders, invoices, computer disks and printouts, drawings, diagrams, blueprints,

affidavits, expense records, financial reports, journals, logs, diaries, voice recordings, tapes, maps, reports, surveys, charts, numbers or statistical computations, and every draft or copy thereof, whether signed or unsigned, that is not identical to the original, or that contains any commentary or notation whatsoever that does not appear on the original. The term "document" or "documents" also includes electronic data, as defined below.

    4.    "The '181 patent" means U.S. Patent No. 5,850,181 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

    5.    "The '841 patent" means U.S. Patent No. 6,812,841 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

    6.    "The '274 patent" means U.S. Patent No. 6,400,274 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

    7.    "The '632 patent" means U.S. Patent No. 5,912,632 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

    8.    "The '561 patent" means U.S. Patent No. 5,775,561 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

    9.    "The '019 patent" means U.S. Patent No. 5,995,019 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

10.  "The '693 patent" means U.S. Patent No. 5,828,693 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

11.  "The '775 patent" means U.S. Patent No. 6,429,775 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

12.  "The '807 patent" means U.S. Patent No. 5,030,807 and/or any related US. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

13.  "The '629 patent" means U.S. Patent No. 6,288,629 and/or any related U.S. or foreign patents or patent applications, including abandoned applications, continuations, continuations-in-part, or divisionals with a common priority date.

14.  "Patents-in-suit" means any one or more of the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents and/or all related patent applications as defined below.

15.  "Related patent applications" means any application cited in the prosecution history of the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents (including parent, grandparent, or other predecessor application), including but not limited to, any application which claims any priority from or is based upon any application in the prosecution history of the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents, any continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, and any other application disclosing, describing, or claiming any invention disclosed in the '181, '841, '274, '632, '561, '019, '693, '775, '807, and '629 patents, whether or not abandoned and whether or not issued.

16.  "Intermec Patented Products(s)" mean(s) any apparatus, product, device, process, method, act, or other instrumentality that Intermec has developed, made, imported, sold, or

offered for sale that incorporates, practices, or embodies any of the subject matter claimed by the patents-in-suit.

17.    "Licensed Products(s)" mean(s) any apparatus, product, device, process, method, act, or other instrumentality that any of Intermec's licensees have developed, made, imported, sold, or offered for sale that incorporates, practices, or embodies any of the subject matter claimed by the patents-in-suit.

18.    "Complaint" means the First Amended Complaint filed by Alien in the above-captioned action.

19.    "PTO" means the United States Patent and Trademark Office.

20.    The term "person" or "persons" shall mean and include any natural persons, any business entity, whether a corporation, partnership, limited partnership, association, unincorporated association, firm, joint venture, any governmental body or entity, whether a government agency, board, division or department, and any other entity. Further, the term "person" includes acts and knowledge of directors, officers, employees, agents, representatives, and attorneys acting on behalf of such "person."

21.    "Relating to" or "concerning" means relating to, concerning, pertaining to, referring to, describing, discussing, reflecting, evidencing, constituting, supporting, contradicting or resulting from the matter specified.

22.    "Third party" or "third parties" means any person other than Alien or Intermec.

23.    "Prosecution of" means the prosecution of the indicated patent or patent application in the PTO.

24.    "Prosecution history" means proceedings before the PTO, including any interviews, correspondence or other materials, whether or not included in the prosecution file history maintained at the PTO.

25.    The term "prior art" to a patent includes, but is not limited to, all publications, patents, physical devices, prototypes, and all uses, sales, offers for sale, or other activity, relating to the subject matter of the patent, and having or occurring at a date such as to be relevant under any subdivision of 35 U.S.C. §§ 102 and 103 or otherwise qualifying as prior art.

26.    "EPCglobal" means EPCglobal, Inc., and includes all predecessors, successors, subsidiaries, divisions, parents and affiliates thereof, past or present, joint ventures, and other legal entities that are wholly owned or controlled by EPCglobal, Inc., either directly to indirectly, and all past or present directors, principles, officers, owners, employees, agents, representatives, consultants, attorneys and others acting for or on behalf of EPCglobal, Inc.

27.    "Auto-ID Center" means Auto-ID Center, Massachusetts Institute of Technology, and includes all predecessors, successors, subsidiaries, divisions, parents and affiliates thereof, past or present, joint ventures, and other legal entities that are wholly owned or controlled by Auto-ID Center, Massachusetts Institute of Technology either directly to indirectly, and all past or present directors, principles, officers, owners, employees, agents, representatives, consultants, attorneys and others acting for or on behalf of Auto-ID Center, Massachusetts Institute of Technology.

28.    "ISO" means the International Organization for Standardization and includes all predecessors, successors, subsidiaries, divisions, parents and affiliates thereof, past or present, joint ventures, and other legal entities that are wholly owned or controlled by International Organization for Standardization, either directly to indirectly, and all past or present directors, principles, officers, owners, employees, agents, representatives, consultants, attorneys and others acting for or on behalf of International Organization for Standardization.

29.    "Accused Instrumentality" means each apparatus, product, device, process, method, act, or other instrumentality that Intermec alleges in this action infringes any claim of the patents-in-suit.

30.    "Asserted Claim" means a patent claim that Intermec, in this action, accuses Alien of infringing.

31.    "Intermec RAND Patents" means the patents and patent applications that Intermec at any time stated that it would seek royalties for in connection with the practice or implementation of RFID standards under development or issued by EPCglobal or ISO, specifically including, but not limited to, the "RAND patents" that Intermec identified in correspondence with EPCglobal and ISO, U.S. Patent Nos. 5,030,807, 5,828,693, 5,850,181, 5,012,632, 6,429,775, 6,288,629, 4,739,328, 5,777,561, 5,995,019, 5,942,987, 6,812,841, and 6,400,274.

## INSTRUCTIONS

The following instructions apply to the discovery requests below and should be considered as a part of each such request:

1.    Each person responding to an interrogatory is required to furnish responsive information within that person's personal knowledge or the personal knowledge of its agents, employees or other representatives.

2.    Each objection, if any, shall be set forth with specificity and shall be accompanied by a statement of the grounds for the objection.

3.    When asked to identify or provide the identity of a natural person, provide the full name of the person, the present employer of the person, including the address and telephone number of the employer, and, if different from above, the employer (including address and telephone number) of and position held by the person at the time of the events discussed in the pertinent interrogatory answer.

4.    If any interrogatory cannot be answered in full, respond to the extent possible, specifying the reasons for the inability to respond to the remainder of the interrogatory, and state whatever information or knowledge is available concerning the unanswered portion.

5.    The singular form of a word should be interpreted as plural wherever necessary to bring within the scope of the request any information that might otherwise be construed to be outside its scope.

6.    The words "and" and "or" should be construed either disjunctively or conjunctively wherever necessary to bring within the scope of this request any information that might otherwise be construed to be outside its scope.

## INTERROGATORIES

### INTERROGATORY NO. 1:

For each patent claim you contend is infringed by Alien, identify the specifics of your contention, by providing a claim chart that identifies with particularity where each element of the Asserted Claim is found within each Accused Instrumentality, including for each element that Intermec contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function, along with whether each such element is met by the Accused Instrumentality literally or under the doctrine of equivalents.

### INTERROGATORY NO. 2:

Identify each patent license, assignment, settlement agreement, or other agreement by which Intermec received or granted any right or rights with respect to any of the patents-in-suit, any application related to the patents-in-suit, or any foreign counterpart to the patents-in-suit.

### INTERROGATORY NO. 3:

Explain in detail the basis for Intermec's position that the patents and patent applications disclosed in its August 9, 2004 EPCglobal declaration (attached as Exhibit H to the Declaration of David Aaron In Support of Alien Technology Corporation's Opposition to Defendants' Motion to Dismiss) under the heading "RAND Patents," "Published Patent Applications" or "Unpublished Materials" contain "Necessary Claims required by the Referenced Specification,"

including an explanation of how each element of each of the "necessary claims" was believed by Intermec to read on the "Referenced Specification," or a product developed in accordance with the "Referenced Specification."

**INTERROGATORY NO. 4:**

For each patent claim Intermec contends is infringed by Alien, identify the priority date to which it is entitled and a description of the reasons to support the priority date identified.

**INTERROGATORY NO. 5:**

For each claim of the patents-in-suit that Intermec contends is embodied, practiced, or implemented by a Licensed Product and/or an Intermec Patented Product, describe in claim chart format the way in which each element of the claim is present in the product, and identify the date on which that product was first offered for sale in the United States.

**INTERROGATORY NO. 6:**

To the extent Intermec intends to seek damages in this action, explain your claim for damages by identifying the amount of damages Intermec contends have been caused or will be caused by Alien, explaining the manner in which those identified damages have been or would be calculated, and identifying all documents that you relied upon or would rely upon in making the damages calculation(s).

**INTERROGATORY NO. 7:**

Identify the three persons who Intermec believes are most knowledgeable about Intermec's patent licensing policies and practices.

**INTERROGATORY NO. 8:**

Identify the three persons who Intermec believes are most knowledgeable about the terminology used in Intermec's accounting and financial records.

**INTERROGATORY NO. 9:**

Identify the three persons who Intermec believes are most knowledgeable about the

design, structure, and function of the Intermec Patented Products.

Dated:  January 16, 2007

Sarah Andrews Herman (by)

Sarah Andrews Herman
Bar Number 03399
DORSEY & WHITNEY LLP
51 North Broadway, Suite 402
P.O. Box 1344
Fargo, ND 58107-1344
Telephone:  (701) 235-6000
Fax:  (701) 235-9969

and

Gregory P. Stone
Andrea Weiss Jeffries
Megan M. La Belle
MUNGER TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9100
Fax:  (213) 687-3701

ATTORNEYS FOR PLAINTIFF ALIEN
TECHNOLOGY CORPORATION

Re:    Alien Technology Corporation vs. Intermec, Inc., et al.
        Case No. 3:06-cv-51

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA | ) | |
| | ) ss | **AFFIDAVIT OF PERSONAL SERVICE** |
| COUNTY OF CASS | ) | |

Frances Hamby, being first duly sworn on oath deposes and says that on January 16, 2007, she served the attached:

1.    **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF INTERROGATORIES TO DEFENDANTS; and**

2.    **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS.**

on Ronald H. McLean, by leaving copies of the above documents at his office address which is 10 Roberts Street, Fargo, North Dakota 58102.

_____
Frances Hamby

Subscribed and sworn to before me on January 16, 2007.

_____
Notary Public

GAIL L SMITH
Notary Public
State of North Dakota
My Commission Expires Feb. 26, 2008

Alien Technology Corporation v. Intermec, Inc., et al.
Case No. 3:06-cv-50

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NORTH DAKOTA ）
                         ） ss
COUNTY OF CASS           ）

Gail L. Smith, being first duly sworn, on oath, deposes and states that on January 16, 2007, she served via facsimile true and correct copies of the following documents:

1.   **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF INTERROGATORIES TO DEFENDANTS; and**

2.   **ALIEN TECHNOLOGY CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS.**

upon:

> Carson P. Veach              **Facsimile No. 312-360-6595**
> Freeborn & Peters LLP
> 311 S. Wacker Drive
> Suite 300
> Chicago, IL  60606

the last known facsimile number of said addressee

_____
Gail L. Smith

Subscribed and sworn to before me this _16th_ day of January, 2007.

_____
Notary Public

> LAURIE A. GRIMM
> Notary Public
> State of North Dakota
> My Commission Expires July 18, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORP., a | ) | |
| Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:06-CV-51 |
| | ) | |
| v. | ) | |
| | ) | Judge Rodney S. Webb |
| INTERMEC, INC., a Delaware corporation, | ) | |
| INTERMEC TECHNOLOGIES CORP., a | ) | |
| Delaware corporation, and INTERMEC IP | ) | |
| CORP., a Delaware corporation, | ) | Magistrate Judge Karen K. Klein |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' FIRST SET OF REQUESTS FOR DOCUMENTS DIRECTED TO PLAINTIFF ALIEN TECHNOLOGY CORP.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Intermec, Inc., Intermec Technologies Corp., and Intermec IP Corp. hereby request that Plaintiff Alien Technology Corp. ("Alien") produce each of the documents requested below within thirty (30) days of service of Defendants' First Set of Requests for Documents Directed to Plaintiff Alien Technology Corp. (the "Requests"), or at such other time as may be agreed upon by the parties or ordered by the Court, at the offices of Freeborn & Peters LLP, 311 South Wacker Drive, Suite 3000, Chicago, Illinois 60606.

### DEFINITIONS

1.    "Alien" means Plaintiff Alien Technology Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing, including, by way of example but not limitation, any person,

entity, group of persons, or group of entities, that attempted to obtain the financing necessary to form Alien, regardless of the name under which they operated prior to the time Alien was formed.

2. "Intermec" means Defendant Intermec, Inc., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

3. "ITC" means Defendant Intermec Technologies Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

4. "IIP" means Defendant Intermec IP Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

5. The "Intermec Defendants" shall describe, collectively, Intermec, ITC, and IIP.

6. "Amtech" means Amtech Corporation, and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

7. "IBM" means International Business Machines Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries,

2

divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

8.    A person that is or has been "employed by" a particular entity shall describe any person who has performed any manner of work at the behest of, or for the benefit of, that entity, regardless of the designation used to characterize the relationship between that entity and the individual performing the work, and shall include, by way of example but not limitation, independent contractors and consultants.

9.    "First Complaint" refers to Alien's original Complaint for Declaratory Judgment in this matter, filed on June 1, 2006.

10.    "Amended Complaint" refers to Alien's First Amended Complaint for Declaratory Judgment in this matter, filed on June 16, 2006.

11.    "The '561 Patent" means U.S. Patent No. 5,777,561.

12.    "The '181 Patent" means U.S. Patent No. 5,850,181.

13.    "The '632 Patent" means U.S. Patent No. 5,912,632.

14.    "The '019 Patent" means U.S. Patent No. 5,995,019.

15.    "The '841 Patent" means U.S. Patent No. 6,812,841.

16.    "The '274 Patent" means U.S. Patent No. 6,400,274.

17.    The term "Intermec Patents" shall mean, collectively, the '561, '181, '632, '019, '841, and '274 Patents.

18.    "Counterpart," when used in reference to any patent, means any United States or foreign patent or patent application directed to the invention of that patent, including without limitation any patent or patent application claiming priority therefrom.

3

19. "Alien RFID Products" means all products required to be identified in Alien's Responses to Interrogatories No. 1 and 2 in Intermec IP Corp.'s First Set of Interrogatories Directed to Alien.

20. "Equity Financing," means any funds received by Alien from a person or entity in exchange for some manner of ownership interest in Alien, or some other interest that might, upon the occurrence of a certain contingency, entitle such person or entity to obtain an ownership interest in Alien.

21. "Document(s)" is used in the same manner as that term is defined in Fed. R. Civ. P. 34(a) and shall include, without limitation, things, project proposals, memos, notes, inventor notebooks, invention disclosures, source code (including comments if any), object code, communications regarding product development, revision histories, flowcharts, drawings, specifications, documents related to testing, status reports or summaries, computer simulations, logic diagrams, and preliminary technical documentation, along with every draft or non-identical copy of the foregoing. The term "documents" also includes Electronic Data, as defined below.

22. "Electronic Data" means data stored in, or accessible through, computer or other information retrieval systems and includes all non-identical copies of such data. Electronic Data includes, but is not limited to, electronic spreadsheets, databases with all records and fields and structural information (including Lotus Notes Discussion Databases and other online dialogs), charts, graphs and outlines, arrays of information and all other information used or produced by any software. Thus, Alien must produce documents that exist in electronic form, including data stored in personal computers, portable computers, workstations, minicomputers, personal data assistants, Blackberry or other similar devices, instant messaging text files, archival voice storage systems, group and collaborative tools, electronic messaging devices, mainframes,

4

servers, backup disks and tapes, archive disks and tapes, portable hard drives, memory cards, zip drives, iPods or other similar devices, cellphones and any other forms of online or offline storage. Further, Electronic Data responsive to the Requests herein must be made (and if necessary, translated by you) in reasonably useable form and produced.

23.    The terms "concerning," "regarding," "related to," and "relating to" are used in their broadest sense and include all matters referring to, describing, evidencing or constituting the referenced subject(s).

24.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any information or documents that might otherwise be construed to be outside of its scope.

25.    The use of the singular form of any word includes the plural and vice versa.

26.    The use of any tense of a verb shall be construed to include also within its meaning all of the tenses of that verb.

27.    The terms "any," "all," and "every" mean each and every.

### STATEMENT

To the extent any Request seeks documents also covered by any other Request(s), it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

### INSTRUCTIONS

1.    These Requests extended to all documents in the possession, custody, and/or control of Alien, as well as all documents in the possession, custody, or control of persons or entities under Alien's control.

5

2.    In the event that more than one copy of a document exists, Alien should produce the original and each non-identical copy of each document or other tangible thing requested herein which is in Alien's possession, custody or control, or the control of its agents, attorneys, accountants, or employees.

3.    Alien should comply with the Requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

4.    These Requests shall be deemed to be continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of Alien or its attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## REQUESTS FOR DOCUMENTS

1.    All documents and things required to be listed or described in Alien's mandatory initial disclosures pursuant to Rule 26(a)(1).

2.    All documents consulted, referred to, or used to answer Intermec IP Corp.'s First Set of Interrogatories Directed to Alien.

3.    All documents identified in Alien's response to Intermec IP Corp.'s First Set of Interrogatories Directed to Alien.

4.    All documents concerning any of the Intermec Defendants, as well as the companies' respective businesses, customers, and/or products.

5    Ten (10) physical samples of every Alien RFID Product.

6.    All documents relating to the structure, function and/or operation of each Alien RFID Product including, by way of example but not limitation, user's manuals, specifications, technical overviews, marketing documents, engineering notebooks, laboratory research

6

notebooks, memoranda, drawings, diagrams, schematics, software listings, source code, design reports, project meeting notes, and progress reports.

7.    All documents relating to the design and/or development of each Alien RFID Product including, by way of example but not limitation, user's manuals, specifications, technical overviews, marketing documents, engineering notebooks, laboratory research notebooks, memoranda, drawings, diagrams, schematics, software listings, source code, design reports, project meeting notes, and progress reports.

8.    All documents relating to the testing of each Alien RFID Product including, by way of example but not limitation, user's manuals, specifications, technical overviews, marketing documents, engineering notebooks, laboratory research notebooks, memoranda, drawings, diagrams, schematics, software listings, source code, design reports, project meeting notes, and progress reports.

9.    All documents relating to the manufacture, fabrication, and/or assembly of each Alien RFID Product including, by way of example but not limitation, user's manuals, specifications, technical overviews, marketing documents, engineering notebooks, laboratory research notebooks, memoranda, drawings, diagrams, schematics, software listings, source code, design reports, project meeting notes, and progress reports.

10.    All documents concerning any promotional, marketing, sales, and/or advertising activities with respect to each Alien RFID Product including, by way of example but not limitation, e-mails, correspondence, marketing memoranda, catalogs, customer and/or sales presentations, product and/or sales brochures, speeches, press releases, new product releases, marketing literature, advertisements and other promotional materials.

11.    All documents relating to any meeting of Alien's management or board of directors, or any meeting of any committee constituted or appointed by any member(s) of Alien's management or board of directors, relating to any of the Intermec Defendants, any of the Intermec Patents, or the subject matter of this suit.

12.    All documents and things referred to or relied upon by Alien, or any person or entity working at its behest, during its investigation, if any, regarding its claims of non-infringement and invalidity of all of the Intermec Patents prior to filing both its First Complaint and Amended Complaint in this matter.

13.    For each of the Intermec Patents, all documents relating to the patent, including, by way of example but not limitation:

  a.  All correspondence concerning the patent;

  b.  All internal memoranda concerning the patent;

  c.  All documents concerning awareness, validity, patentability, enforceability, and/or infringement of any claim of the patent;

  d.  All documents concerning any opinion, report, and/or memoranda, whether legal or non-legal in nature, prepared by or at the request of, or otherwise presented to, Alien, or of which Alien is otherwise in possession, concerning any claim of the patent including, by way of example but not limitation, opinions, reports, or memoranda relating to the validity, patentability, enforceability, or infringement by Alien of any claim of the patent;

  e.  All documents concerning the interpretation or construction of any claim term in the patent;

f. All documents concerning any of the technology disclosed and/or claimed in the patent;

g. All documents concerning any of the "secondary considerations" of obviousness or nonobviousness of the type described in *Graham v. John Deere* and its progeny, for the subject matter described or claimed in the patent; and

h. All documents that relate to the utility or advantages of the products or processes described in the Intermec Patents.

14. All documents relating to Alien's contention that each of the Intermec Patents, as well as each claim of each individual Intermec Patent, are invalid, in whole or in part, for failure to satisfy the conditions of patentability in Title 35 of the United States Code, including, by way of example but not limitation, all prior art that Alien believes supports this contention.

15. All documents relating to Alien's contention that none of Alien's products, including its RFID tags and readers, infringe any "valid" claim of any of the Intermec Patents, including, by way of example but not limitation, any opinion, memoranda, or other report that Alien believes supports this contention.

16. All documents concerning any attempt or effort by Alien to avoid infringement of any one or more of the Intermec Patents in designing, developing, and/or implementing any of Alien's products, including products that are no longer offered for sale, as well as those currently in development and not yet in production.

17. All documents concerning any attempt or effort by any third party to avoid infringement of any one or more of the Intermec Patents in designing, developing, and/or implementing any product.

18.    All documents concerning any comparison of the design, structure, function, or operation of any product, device, technology, or system against the specification and/or any claim of any of the Intermec Patents.

19.    All documents comparing any Alien RFID Product to any other product, including any product sold by ITC.

20.    All documents concerning whether or not any Alien RFID Product complies with any publicly available RFID standard or specification, including, by way of example but not limitation, the EPC Global Class 1 Gen 2 RFID Specification.

21.    All documents relating to any agreement or contract to which Alien is a party concerning any Alien RFID Product.

22.    All documents and things concerning publications, articles, or abstracts related to any Alien RFID Product.

23.    All documents concerning any Alien patent or patent application related to Alien's RFID Products or operations.

24.    All documents relating to any litigation involving any Intermec patent.

25.    All documents relating to any knowledge, opinion, critique, or analysis of the technology referenced in or related to the Intermec Patents.

26.    All documents concerning actual or potential liability by any third party, in whole or in part, for indemnification of Alien against infringement of any Intermec Patent or any counterpart thereof, including, by way of example but not limitation, all agreements, licenses, correspondence, and contracts, whether or not the document mentions the patent or a counterpart of the patent.

27.    Documents sufficient to show the organizational structure of Alien (from the earliest date of the development and/or production of any Alien RFID Product) including its constituent departments, divisions, units, parent companies, subsidiaries, related entities, and the identity of all officers and directors of Alien.

28.    Documents sufficient to describe any and all of Alien's policies relating to document destruction and/or document retention from the earliest date of the development and/or production of any Alien RFID Product.

29.    All documents relating to any communications between Alien and any of the Intermec Defendants.

30.    All of Alien's annual reports since 1999.

31.    All documentation sufficient to identify all sales of any Alien RFID Product since 2000.

32.    All documents concerning any proposed or actual business or marketing plan related to any Alien RFID Product.

33.    All documents concerning any current or projected market share or market potential for any Alien RFID Product.

34.    All documents concerning any marketing analysis, study, or survey with respect to any Alien RFID Product.

35.    All documents concerning any communications with any outside vendor or consultant with respect to any Alien RFID product.

36.    All documents concerning any communication with any third party regarding any of the Intermec Defendants, the Intermec Patents, or this action, including, by way of example but not limitation, communications with any former employee of any of the Intermec

11

Defendants, Amtech, or IBM, and any documents exchanged in connection with such communications.

37.    All documents related to any attempt by Alien, whether or not successful, to obtain any manner of equity or debt financing, including, by way of example but not limitation, all documents prepared to provide to the person or entity from whom such financing was sought, all documents provided to Alien by the person or entity from whom the financing was sought, and all correspondence related to the attempt by Alien to obtain such financing.

38.    All documents that Alien prepared with the expectation that it might seek some manner of equity or debt financing from a person or entity, regardless of whether such financing was actually sought.

39.    All documents related to any attempt by a person or entity to provide some manner of equity or debt financing to Alien.

40.    All documents provided by Alien to any person or entity that has an equity interest in Alien, or that had such an interest at the time the documents were provided, along with all documents provided to Alien by the person or entity holding such interest.

41.    All documents related to any attempt by Alien, whether or not successful, to obtain any form of loan or debt financing, including, by way of example but not limitation, all documents prepared to provide to the person or entity from whom the loan or debt financing was sought, all documents provided to Alien by the person or entity from whom the loan or debt financing was sought, and all correspondence related to the attempt by Alien to obtain the loan or debt financing.

12

42. All documents that Alien prepared with the expectation that it might seek a loan or debt financing to fund some aspect of its operations, regardless of whether such loan or debt financing was actually sought.

43. All documents related to any attempt by a person or entity to loan money to Alien or provide Alien with any form of debt financing.

44. All documents provided by Alien to any person or entity that is, or was at the time the documents were provided, a creditor of Alien, or otherwise had a debt interest in Alien, along with all documents provided by that person or entity to Alien.

45. All documents concerning any proposed or actual marketing materials for any Alien RFID product.

46. All documents concerning projected sales (in units and dollars), costs, profits or margin, pricing, marketing, market share, sales volumes, or market projections or analyses with respect to any Alien RFID Product since 2000.

47. All documents concerning projected sales (in units and dollars), costs, profits or margin, pricing, marketing, market share, sales volumes, or market projections or analyses with respect to any Alien product other than the Alien RFID Products since 2000.

48. All documents relating to any agreement, including, by way of example but not limitation, license agreements to which Alien is or was a party involving or concerning any patent.

49. All documents that Alien intends to offer as evidence at trial.

50. All documents that Alien or its attorneys, agents, or representatives have shown to, provided to, sent to, made available to, or which have otherwise been viewed by any expert or

13

consultant who has been retained to evaluate any matter at issue in this case, or to testify in the trial of this case.

51.    All documents generated by or on behalf of any expert or consultant who has been retained to evaluate any matter at issue in this case, or to testify in the trial of this case.


Dated: January 17, 2006                    Respectfully Submitted,


                                           INTERMEC, INC., INTERMEC TECHNOLOGIES
                                           CORP., and INTERMEC IP CORP,

                                           By: _____
                                                         One of Their Attorneys

                                           Ronald H. McLean
                                           Jane L. Dynes
                                           SERKLAND LAW FIRM
                                           10 Roberts Street
                                           P.O. Box 6017
                                           Fargo, ND  58108-6107
                                           (701) 232-8957 phone
                                           (701) 237-4049 fax

                                           and

                                           Carson P. Veach
                                           Leland W. Hutchinson, Jr.
                                           David S. Becker
                                           Jacob D. Koering
                                           FREEBORN & PETERS LLP
                                           311 S. Wacker Drive, Suite 3000
                                           Chicago, Illinois  60606
                                           (312) 360-6000 phone
                                           (312) 360-6595 fax


1265341v2


14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ALIEN TECHNOLOGY CORP., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:06-CV-51 |
| v. | ) ) ) | Judge Rodney S. Webb |
| INTERMEC, INC., a Delaware corporation, INTERMEC TECHNOLOGIES CORP., a Delaware corporation, and INTERMEC IP CORP., a Delaware corporation, | ) ) ) ) ) | Magistrate Judge Karen K. Klein |
| Defendants. | ) | |

### DEFENDANT INTERMEC IP CORP.'S
### FIRST SET OF INTERROGATORIES
### DIRECTED TO PLAINTIFF ALIEN TECHNOLOGY CORP.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Intermec IP Corp., directs the following First Set of Interrogatories to Plaintiff Alien Technology Corp. (the "Interrogatories"), and hereby requests that Plaintiff provide complete and accurate answers to the same, in writing and under oath, within thirty (30) days of service hereof.

### DEFINITIONS

When used in these Interrogatories, the following terms shall have the meanings provided below:

1. "Alien" means Plaintiff Alien Technology Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing, including, by way of example but not limitation, any person, entity, group of persons, or group of entities, that attempted to obtain the financing necessary to

form Alien, regardless of the name under which they operated prior to the time Alien was formed.

2.      "Intermec" means Defendant Intermec, Inc., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

3.      "ITC" means Defendant Intermec Technologies Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

4.      "IIP" means Defendant Intermec IP Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

5.      The "Intermec Defendants" shall describe, collectively, Intermec, ITC, and IIP.

6.      "Amtech" means Amtech Corporation, and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

7.      "IBM" means International Business Machines Corp., and includes any and all of its predecessors, predecessors in interest, successors, successors in interest, subsidiaries, divisions, affiliates, and affiliated entities, as well as the officers, directors, agents, employees, and representatives of the foregoing.

8.    "First Complaint" refers to Alien's original Complaint for Declaratory Judgment in this matter, filed on June 1, 2006.

9.    "Amended Complaint" refers to Alien's First Amended Complaint for Declaratory Judgment in this matter, filed on June 16, 2006.

10.    "The '561 Patent" means U.S. Patent No. 5,777,561.

11.    "The '181 Patent" means U.S. Patent No. 5,850,181.

12.    "The '632 Patent" means U.S. Patent No. 5,912,632.

13.    "The '019 Patent" means U.S. Patent No. 5,995,019.

14.    "The '841 Patent" means U.S. Patent No. 6,812,841.

15.    "The '274 Patent" means U.S. Patent No. 6,400,274.

16.    The term "Intermec Patents" shall mean, collectively, the '561, '181, '632, '019, '841, and '274 Patents.

17.    To "identify" a natural person means to state the natural person's name, occupation, job title, and current business address. If the current business address is unknown, Alien should state the last-known business and home addresses.

18.    To "identify" a corporation or other business entity means to state the entity's official name, its popular name (if different), its state or country of incorporation or organization, and the address of its principal executive offices.

19.    To "identify" a document or thing means:

    a)    to provide a brief description of such document or thing, including date, author, recipient, and content or substance;

    b)    to identify the custodian of the document or thing;

    c)    to identify the place where the document or thing is located;

3

d)   if a copy of the document has been produced, so state, and identify the copy produced by production numbers;

e)   if the particular document or thing was once, but is no longer, in Alien's possession, custody, or control, state what disposition was made of such document or thing.

20.   To "identify" a product means to state the trade name, model number, and other applicable designation of each type, model or variation of such product and to state the dates of its introduction and availability for sale.

21.   A person that is or has been "employed by" a particular entity shall describe any person who has performed any manner of work at the behest of, or for the benefit of, that entity, regardless of the designation used to characterize the relationship between that entity and the individual performing the work, and shall include, by way of example but not limitation, independent contractors and consultants.

22.   "Most knowledgeable" shall describe the person or persons with the most thorough and comprehensive understanding of the referenced subject.

23.   "Document(s)" is defined in the same manner as that term is defined in the Intermec Defendants' First Requests for Documents Directed to Plaintiff Alien Technology Corp.

24.   The term "person" means any natural person in any capacity, and all entities of every description including, but not limited to, associations, organizations, companies, partnerships, joint ventures, corporations, trusts and estates, and all divisions, departments and other such units thereof.

4

25.    The terms "concerning," "regarding," "related to," and "relating to" are used in their broadest sense and include all matters referring to, describing, evidencing or constituting the referenced subject(s).

26.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request any information or documents that might otherwise be construed to be outside of its scope.

27.    The use of the singular form of any word includes the plural and vice versa.

28.    The use of any tense of a verb shall be construed to include also within its meaning all of the tenses of that verb.

29.    The terms "any," "all," and "every" mean each and every.

## INSTRUCTIONS

1.    Each Interrogatory should be answered separately, fully, and under oath.

2.    These Interrogatories shall be deemed to be continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of Alien or its attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

3.    Alien should comply with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

# INTERROGATORIES

## INTERROGATORY NO. 1

Identify each product of the following types manufactured, used, sold, and/or offered for sale in the United States by Alien that is compliant with the EPC Global Generation 2 RFID Specification: base stations, readers, tags, transponders, and RFID systems.

## INTERROGATORY NO. 2

Identify each product of the following types manufactured, used, sold, and/or offered for sale in the United States by Alien that is not compliant with the EPC Global Generation 2 RFID Specification: base stations, readers, tags, transponders, and RFID systems.

## INTERROGATORY NO. 3

For each of the products required to be identified in response to Interrogatories No. 1 and 2, identify the three persons currently or formerly employed by Alien who are most knowledgeable concerning the design, development, structure, operation, and performance of each identified product, as well as the areas of knowledge for each such person.

## INTERROGATORY NO. 4

Identify any person who was formerly employed by any of the Intermec Defendants, Amtech, and/or IBM that is currently employed by Alien, or was previously employed by Alien subsequent to the person's employment with Intermec, Amtech, and/or IBM.

## INTERROGATORY NO. 5

Identify every individual who was formerly employed by any of the Intermec Defendants, Amtech, and/or IBM with whom Alien has had any contact or communication

6

regarding any of the Intermec Defendants, the Intermec Patents, or any matter related to the present action.

## INTERROGATORY NO. 6

Describe the circumstances under which Alien first became aware of each one of the Intermec Patents, identify the three most knowledgeable persons regarding these circumstances, and produce all documents concerning the same.

## INTERROGATORY NO. 7

State whether Alien has sought or obtained any opinion of counsel concerning the infringement or non-infringement, validity or invalidity, or enforceability or unenforceability of any of the Intermec Patents, and, if so, identify each such opinion by date, author, and recipient.

## INTERROGATORY NO. 8

Identify every person or entity that currently has or has ever had any manner of ownership interest in Alien, or has otherwise held an instrument by which some manner of ownership could be obtained, including, by way of example but not limitation, any holders of any class of stock, options, warrants, convertible debentures, or other instrument that might, upon the occurrence of a certain contingency, entitle the holder to obtain some manner of ownership interest in Alien.

## INTERROGATORY NO. 9

Identify every person or entity that has ever loaned money to, provided any manner of investment in, or has otherwise been a creditor of, Alien, including, by way of example but not limitation, banks, venture capitalists, private equity firms, partnerships, or individuals.

7

## INTERROGATORY NO. 10

Identify, to the extent not already identified in Interrogatories No. 8 or 9, every person or entity with whom Alien has sought, or is currently seeking, to enter into any manner of transaction whereby such person or entity would provide funding for any aspect of Alien's formation, development, or operations, regardless of whether such transaction or potential transaction is or was one involving debt or equity.

## INTERROGATORY NO. 11

Identify all persons providing information used to answer the above Interrogatories.

Dated: January 17, 2006              Respectfully Submitted,

                                     INTERMEC IP CORP,

                                     By: _____
                                             One of Its Attorneys

                                     Ronald H. McLean
                                     Jane L. Dynes
                                     SERKLAND LAW FIRM
                                     10 Roberts Street
                                     P.O. Box 6017
                                     Fargo, ND  58108-6107
                                     (701) 232-8957 phone
                                     (701) 237-4049 fax

                                     and

                                     Carson P. Veach
                                     Leland W. Hutchinson, Jr.
                                     David S. Becker
                                     Jacob D. Koering
                                     FREEBORN & PETERS LLP
                                     311 S. Wacker Drive, Suite 3000
                                     Chicago, Illinois  60606
                                     (312) 360-6000 phone
                                     (312) 360-6595 fax

8

CASE NAME OR NUMBER:          3:06-CV-51

## Alien Technology Corp., a Delaware corporation
### v.
## Intermec, Inc., a Delaware corporation, Intermec Technologies Corp., a Delaware corporation, and Intermec IP Corp., a Delaware corporation,

STATE OF NORTH DAKOTA     )
                          ) ss.     AFFIDAVIT OF SERVICE
COUNTY OF CASS            )          BY HAND DELIVERY

The undersigned, being first duly sworn, deposes and says that he served the attached

### Defendant Intermec IP Corp.'s First Set of Interrogatories
### Directed to Plaintiff Alien Technology Corp.; and
### Defendants' First Set of Requests for Documents
### Directed to Plaintiff Alien Technology Corp.

on January 17, 2007, by personally delivering a copy of same to the offices of:

Sarah A. Herman
51 Broadway, Suite 402
PO Box 1344
Fargo, ND 58107-1344

To the best of affiant's knowledge, the address above given is the actual street address of the party intended to be so served. The above documents were hand delivered in accordance with the provisions of the NORTH DAKOTA Rules of Civil Procedure.

Gary Rockne

Subscribed and sworn to before me this 17th day of January, 2007.

(SEAL)
ROBYN MAXWELL
Notary Public
State of North Dakota
My Commission Expires Apr. 5, 2012

Notary Public
Cass County, North Dakota
My Commission Expires: 4.5.12

# EXHIBIT H

Judicial Caseload Profile Report                                                                                     Page 1 of 1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| DELAWARE | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,190 | 1,797 | 1,362 | 2,028 | 1,004 | 1,303 | | |
| | Terminations | | 1,448 | 1,516 | 1,507 | 1,478 | 1,020 | 955 | | |
| | Pending | | 1,853 | 2,085 | 1,836 | 1,999 | 1,477 | 1,502 | | |
| | % Change in Total Filings | Over Last Year | -33.8 | | | | | | 91 | 6 |
| | | Over Earlier Years | | | -12.6 | -41.3 | 18.5 | -8.7 | 70 | 5 |
| | Number of Judgeships | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 1.9 | 3.1 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 298 | 449 | 340 | 507 | 251 | 326 | 81 | 5 |
| | | Civil | 264 | 414 | 306 | 462 | 233 | 307 | 70 | 5 |
| | | Criminal Felony | 28 | 29 | 25 | 38 | 18 | 19 | 91 | 6 |
| | | Supervised Release Hearings** | 6 | 6 | 9 | 7 | - | - | 88 | 4 |
| | Pending Cases | | 463 | 521 | 459 | 500 | 369 | 376 | 26 | 3 |
| | Weighted Filings** | | 422 | 534 | 424 | 516 | 379 | 389 | 59 | 4 |
| | Terminations | | 362 | 379 | 377 | 370 | 255 | 239 | 71 | 4 |
| | Trials Completed | | 20 | 19 | 23 | 18 | 16 | 19 | 44 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.4 | 9.1 | 8.3 | 9.8 | 8.0 | 6.6 | 58 | 1 |
| | | Civil** | 10.9 | 14.0 | 11.2 | 8.2 | 12.6 | 10.9 | 68 | 5 |
| | From Filing to Trial** (Civil Only) | | 23.5 | 26.0 | 24.0 | 22.5 | 21.0 | 24.0 | 47 | 2 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 156 | 65 | 66 | 99 | 77 | 70 | | |
| | | Percentage | 9.1 | 3.4 | 3.9 | 5.4 | 5.5 | 4.9 | 77 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.2 | 1.2 | 1.3 | 1.1 | 1.3 | 1.2 | | |
| | Jurors | Avg. Present for Jury Selection | 39.82 | 38.50 | 34.98 | 33.84 | 32.68 | 35.75 | | |
| | | Percent Not Selected or Challenged | 22.8 | 20.9 | 24.0 | 24.4 | 19.9 | 28.5 | | |

| 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1055 | 28 | 5 | 252 | 7 | 3 | 36 | 50 | 149 | 149 | 63 | 221 | |
| Criminal* | 110 | 1 | 27 | 16 | 23 | 20 | 6 | ** | 5 | 4 | - | 6 | 2 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# EXHIBIT I

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **NORTH DAKOTA** | | | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 590 | 576 | 540 | 519 | 435 | 500 | | |
| | Terminations | | 553 | 585 | 483 | 480 | 423 | 494 | | |
| | Pending | | 359 | 329 | 367 | 355 | 327 | 328 | | |
| | % Change in Total Filings | Over Last Year | | 2.4 | | | | | 26 | 5 |
| | | Over Earlier Years | | | 9.3 | 13.7 | 35.6 | 18.0 | 22 | 6 |
| | Number of Judgeships | | 2 | 2 | 2 | 2 | 2 | 2 | | |
| | Vacant Judgeship Months** | | .0 | .0 | 7.2 | 21.0 | 12.0 | 8.8 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 296 | 289 | 270 | 260 | 218 | 250 | 82 | 10 |
| | | Civil | 135 | 145 | 144 | 161 | 139 | 166 | 90 | 10 |
| | | Criminal Felony | 136 | 119 | 108 | 87 | 79 | 84 | 11 | 4 |
| | | Supervised Release Hearings** | 25 | 25 | 18 | 12 | - | - | 36 | 5 |
| | Pending Cases | | 180 | 165 | 184 | 178 | 164 | 164 | 89 | 10 |
| | Weighted Filings** | | 305 | 284 | 288 | 246 | 270 | 269 | 82 | 10 |
| | Terminations | | 277 | 293 | 242 | 240 | 212 | 247 | 85 | 10 |
| | Trials Completed | | 18 | 20 | 19 | 13 | 13 | 13 | 53 | 7 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 5.1 | 4.8 | 5.9 | 4.9 | 5.4 | 4.8 | 6 | 1 |
| | | Civil** | 7.3 | 7.7 | 9.8 | 9.7 | 8.7 | 9.0 | 8 | 1 |
| | From Filing to Trial** (Civil Only) | | - | - | - | - | - | - | - | - |
| OTHER | Civil Cases Over 3 Years Old** | Number | 6 | 4 | 6 | 13 | 7 | 4 | | |
| | | Percentage | 2.6 | 1.8 | 2.4 | 5.1 | 2.8 | 1.6 | 13 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.3 | 1.2 | 1.2 | 1.3 | 1.4 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 33.56 | 34.89 | 37.96 | 33.88 | 32.86 | 33.06 | | |
| | | Percent Not Selected or Challenged | 22.9 | 25.6 | 29.5 | 20.8 | 21.4 | 35.1 | | |

| 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 269 | 15 | 11 | 33 | 13 | 51 | 12 | 36 | 34 | 10 | 28 | | 26 |
| Criminal* | 271 | - | 41 | 74 | 42 | 33 | 27 | 30 | 3 | 3 | 2 | 3 | 13 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# EXHIBIT J

05 - 528

DOCKET # **27**
U.S. DISTRICT COURT
WEST DIST. OF WISC.
JUL 1 4 2005
THEREAF...
CASE #

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| SYMBOL TECHNOLOGIES, INC., | OPINION AND ORDER |
| Plaintiff, | |
| | 05-C-256-C |
| v. | |
| INTERMEC TECHNOLOGIES CORP., | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Symbol Technologies, Inc. seeks declaratory, injunctive and monetary relief against defendant Intermec Technologies Corp. for infringing U.S. Patents Nos. 5,243,655 and 5,457,308, relating to bar code technology. The case is before the court on defendant's motion to transfer the case under 28 U.S.C. § 1404(a) and plaintiff's motion to file a sur-reply declaration in response to defendant's reply brief in support of its motion to transfer. Subject matter jurisdiction is present under 28 U.S.C. §§ 1331 and 1338.

I will grant plaintiff's motion to file a sur-reply and consider the parties' arguments concerning the applicability of a purchasing agreement between them and whether the need for a consistent interpretation of that agreement warrants a transfer. Although I am not convinced that the patents in dispute overlap those pending in suits filed in the District

1

A TRUE COPY, Certified
JUL 1 9 2005
Theresa M. Owens, Clerk
U.S. District Court
Western District of Wisconsin
By: _____ Clark
Deputy Clerk

Copy of this document has been
provided to: _COUNSEL_
this _14_ day of July 20_05_
by _____
S. Vogel, Secretary to
Judge Barbara B. Crabb

Court for the District of Delaware, it does appear that it will be necessary in this case and in the Delaware cases to interpret the parties' purchasing agreement in order to determine whether and to what extent the parties agreed to forgo infringement suits against each other. I conclude therefore that the interests of justice would be served by transferring this case to the district court in Delaware.

From the facts alleged in the complaint, the exhibits attached to defendant's reply brief in support of its motion to transfer venue and the facts averred in the affidavits submitted by the parties, I find for the sole purpose of deciding this motion that the following facts are undisputed and material.

## FACTS

Plaintiff Symbol Technologies, Inc. is a Delaware corporation with its headquarters in Holtsville, New York. Plaintiff is a global leader in secure mobile information systems that integrate application-specific hand-held computers with wireless networks for data, voice and bar code data capture. Plaintiff's product lines include items such as bar code scanners, advanced data capture products, radio frequency identification technology, hand-held and fixed mount mobile computers and wireless local and wide-area networks. Plaintiff is registered to do business in the state of Wisconsin.

Defendant Intermec Technologies Corp. is incorporated in the state of Washington

2

and has its principal place of business in Everett, Washington. Defendant designs, manufactures and sells portable data collection equipment, including bar code scanning and reading devices. Defendant is registered to do business in Wisconsin and regularly transacts business in Wisconsin.

In addition to suing defendant in this court, plaintiff has sued defendant for infringement of four different patents in the District of Delaware, U.S. Patent Nos. 5,029,183, 5,479,441, 5,157,687, and 6,473,449, all of which relate to power saving modes of operation for wireless local area networks and techniques developed for sending data from point to point in a wireless network. Although the technologies that are the subject of the lawsuits in both Wisconsin and Delaware may be used together, as for example, by incorporating a bar code reader in a wireless network, they are distinct, just as a car radio's technology is wholly different from a car engine's technology, notwithstanding the fact that they are both used in a car.

Plaintiff and defendant entered into a purchasing agreement regarding plaintiff's bar code reader and scanner products. The agreement includes a forum selection clause under which the parties agree to try all disputes relating to the agreement in Delaware. For purposes of this decision, the crucial section is § 18(k), which reads:

> Covenants. During the Term of the Agreement each Party shall not sue (or
> bring a counterclaim against) the other party for any claim of infringement
> . . . of any patent, whether now or hereinafter in existence, against or relating

3

to any product except for (i) bar code readers to the extent that they use CCD sensor technology, and (ii) RFID Reader Products and RFID Tags except to the extent that they read bar codes.

The parties' agreement is specified to last from January 1, 2004 to December 31, 2006. In § 9(d), it provides that accrued rights and obligations survive termination.

## OPINION

### A.  Plaintiff's Motion for Leave to File Sur-reply

As a general rule, arguments not raised until the reply brief are deemed waived. Carter v. Tennant Co., 383 F.3d 673, 679 (7th Cir. 2004) (arguments presented for first time in reply brief are deemed waived) (citing Aps Sports Collectibles, Inc. v. Sports Time, Inc., 299 F.3d 624, 631 (7th Cir. 2002)).  In this case, however, I can consider the new arguments raised by defendant, because I am granting plaintiff's request to file a sur-reply brief, giving plaintiff an opportunity to explain why it believes that the new arguments are without merit.

### B.  Defendant's Motion for Change of Venue

Defendant has moved to transfer this case to the District of Delaware because plaintiff has suits pending in that district against defendant for infringement of four different patents. Plaintiff has asked the court in Delaware to declare that plaintiff was entitled to

4

terminate the purchasing agreement between the parties, thus permitting it to file suits for patent infringement despite the covenant in the agreement not to sue; defendant has filed a counterclaim in that suit for breach of contract. According to defendant, the products at issue in the Delaware action overlap the products at issue in this action and both cases will involve certain provisions of the purchasing agreement, such as the provisions addressing immunity from infringement suits and the forum selection clause. Defendant argues that transfer is justified to obtain consistent determinations regarding the applicability of the purchasing agreement and of the covenant not to sue in particular. Plaintiff agrees that the purchasing agreement provides defendant immunity from infringement for products that use scan engines purchased from plaintiff. Decl. of Aaron Bernstein, dkt. #17, at ¶5. However, plaintiff contends that such products are not at issue in this case, so the purchasing agreement and its forum selection clause do not apply.

In a motion to transfer venue brought pursuant to 28 U.S.C. § 1404(a), the moving party bears the burden of establishing that the transferee forum is "clearly more convenient." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir. 1986). In weighing the motion, a court must decide whether the transfer serves the convenience of the parties and witnesses and will promote the interest of justice. 28 U.S.C. 1404(a); Coffey, 796 F.2d at 219-20; Roberts & Schaefer Co. v. Merit Contracting, Inc., 99 F.3d 248, 254 (7th Cir. 1996) (question is whether plaintiff's interest in choosing forum is outweighed by either

5

convenience concerns of parties and witnesses or interest of justice). The court should view these factors as placeholders among a broader set of considerations and evaluate them in light of all the circumstances of the case. Coffey, 796 F.2d at 219 n.3. Other courts have found that such broader considerations include the situs of material events, ease of access to sources of proof and plaintiff's choice of forum. Harley-Davidson, Inc. v. Columbia Tristar Home Video, 851 F. Supp. 1265, 1269 (E.D. Wis. 1994); Kinney v. Anchorlock Corp., 736 F. Supp. 818, 829 (N.D. Ill. 1990). "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system," Coffey, 796 F.2d at 221, such as whether a transfer would help the litigants receive a speedy trial and whether a transfer would facilitate consolidation of related cases. Id.

It is unclear why Wisconsin would be more convenient to try this case than Delaware; defendant contends that Delaware is geographically closer to plaintiff's New York headquarters, witnesses and documents. Plaintiff points out that its choice of forum is entitled to great deference. However, courts have held that if plaintiff's chosen forum is not the situs of material events, a plaintiff's choice has weight equal to the other factors and will not receive deference. Chicago, Rock Island & Pacific Railroad Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955) (plaintiff's choice of forum given less deference if few operative facts occurred in that forum); see also Carillo v. Darden, 992 F. Supp. 1024, 1026 (N.D. Ill. 1998); Sanders v. Franklin, 25 F. Supp. 2d 855, 858 (N.D. Ill. 1998). Nothing in the record

6

suggests that material events occurred in Wisconsin. Because it is questionable that Wisconsin is particularly convenient to either party, I will focus on the interest of justice factor exclusively in deciding whether to transfer this case to the District of Delaware.

It is undisputed that plaintiff has sued defendant for infringement of U.S. Patent Nos. 5,029,183, 5,479,441, 5,157,687, and 6,473,449 in the District of Delaware. Defendant is adamant about the possibility of overlap between the technologies at issue in both the Wisconsin and Delaware actions. It suggests, for example that a bar code reader (the technology at issue in Wisconsin) may be incorporated into a wireless network (the technology at issue in Delaware). Given this overlap, the court in the Delaware action will most likely have to address the importance of the bar code technology in that action and in doing so, decide whether the terms of the purchasing agreement apply. I find this argument dubious, given plaintiff's statement that it is not suing defendant on any of defendant's products using plaintiff's scan engines but I need not decide whether it is correct because the deciding factor is the need to construe the purchasing agreement. Some court will have to determine whether the agreement has been terminated validly, whether the covenant between the parties survives termination and if it does, whether the covenant applies to the technology at issue in this case. It would be best for the parties and for the resources of the federal courts, considered as a whole, to have one construction applicable to all the disputes between the parties. Thus, I conclude that the interests of justice weigh heavily in favor of

7

a transfer, particularly because the agreement contains a forum selection clause. See, e.g., Stephan v. Goldinger, 325 F.3d 874, 878-79 (7th Cir. 2003) (contractual venue clauses generally are valid) (citing Carnival Cruise Lines v. Shute, 499 U.S. 585, 593-95 (1991)); Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1290-91 (7th Cir. 1989) (forum selection clause does not offend due process so long as it is freely negotiated and is not unreasonable and unjust). Although the Delaware court will be free to consolidate the cases or not, a transfer of the case to that court will would allow consolidation if the court should deem it appropriate. Coffey, 796 F.2d at 221 ("related litigation should be transferred to a forum where consolidation is feasible").

## ORDER

IT IS ORDERED that

1. Plaintiff Symbol Technologies, Inc.'s motion to file a sur-reply is GRANTED;

2. Defendant Intermec Technologies Corp.'s motion to transfer the case to the

8

United States District Court for the District of Delaware is GRANTED.

Entered this 14th day of July, 2005.

BY THE COURT:

*Barbara B. Crabb*

BARBARA B. CRABB
District Judge

9